FILED
JAMES BONINI
CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION 03 DEC -8 PM 1:27

| | | |
|---|---|---|
| MILDRED W FINCH et. al.<br>individually and as representatives<br>of a class consisting of residents of<br>Ohio, Kentucky, and Indiana<br>who at various times purchased<br>through Defendant George Fiorini<br>and others promissory notes issued<br>by Guardian Investments LLC | : <br><br>: <br><br>: <br><br>: | Case No. C-1-02-132<br><br>( Judge Beckwith) |
| Plaintiffs | : | |
| V. | | |
| GEORGE FIORINI, DBA<br>THE FIORINI AGENCY, et. al. | :<br><br>: | PLAINTIFFS' RENEWED<br>MOTION FOR CLASS<br>CERTIFICATION |
| Defendants | : | |

Plaintiffs hereby move for certification of this action as a class action in accordance with Rule 23, Federal Rules of Civil Procedure., with the following class description:

All persons who at various times purchased through the defendant George Fiorini and others promissory notes issued by Guardian Investments LLC or Standard Trust.

MEMORANDUM

This action was commenced February 25, 2002 by the filing of the original class action complaint herein, and an amended class action complaint and second amended class action complaint were filed and served after that date. The original class action complaint contains all of the allegations necessary to establish this cause as a class action under Rule 23, F R Civ P. The second amended class action complaint contains the allegations necessary for the Court to understand the present factual context of this case.

In particular, Plaintiffs request the Court to note the allegations upon which the defendants Terrance Lee Quatkemeyer and Sanitec Ltd. have been brought into this case: that is, that Quatkemeyer caused much of the $13.5 million raised by George Fiorini to be transferred to Guardian Investments LLC, and then directed the application of those funds to the acquisition for his own account of Sanitec Ltd., eventually moving that company from West Caldwell, New Jersey, to Encino, California. Thus, it is alleged that a substantial part of the funds obtained by Fiorini from the original Plaintiff Class herein was transferred to Guardian Investments, resulting in the issuance of promissory notes to the revised Plaintiff Class by that entity. Since the money used to purchase control of Sanitec Ltd. belonged to the revised Plaintiff Class, the class are entitled to a have a constructive trust imposed upon Sanitec Ltd. for their benefit, in order to assure the return to them of some portion of the funds wrongfully obtained by Fiorini Standard Trust and Guardian Investments, and converted by Quatkemeyer. Indeed, it is apparent that this Class Action is the only suit in which a remedy against Sanitec Ltd. has been pursued.

Rule 23(a) sets forth the prerequisites to a class action, providing that a class action may be maintained only if:

1. The class is so numerous that joinder of all members is impracticable.
2. There are questions of law or fact common to the class.
3. The claims or defenses of the representative parties are typical of the claims or defenses of the class, and
4. The representative parties will fairly and adequately protect the interest of the class.

These prerequisites are generally summarized by the terms "numerosity," "commonality," "typicality," and "adequate representation." In this case, the class

consists of approximately 160 members, which is the number of names contained in a list of investors provided by the Defendant Stephen Ventre on behalf of Guardian Investments LLC to counsel representing them in the lawsuit transferred from the Central District of California to the Northern District of Ohio, of which this Court is aware. Numbers of this order are certainly too numerous to join as plaintiffs in a separate civil action, or would unduly burden the Court if they all filed single civil actions.

The Plaintiff Finch, the other named Plaintiffs, and all members of the proposed class have at least one common question of law or fact among them: to wit, that they were solicited for "investments" by George Fiorini or others acting for him in a so called "10% income plus plan," which was represented by Fiorini and his cohorts as "guaranteed" to produce an income of 10% per annum for the rest of their lives; that in or about the year 2000 they all began to receive correspondence, subscription agreements, and promissory notes from Guardian Investments, and further communications regarding their investments from Steven Ventre; that the named plaintiffs and all members of the Plaintiff Class received promissory notes or similar instruments in return for their investments issued by Guardian Investments LLC; and that the representative Plaintiffs and all members of the class have not received income payments in return for their invesments, or have requested and been denied refunds of their investments. Indeed, these common questions of law or fact, if proven, would establish common law fraud claims common to all members of the Plaintiff Class and the individual named plaintiffs.

The "typicality" requirement of Rule 23(a)(3) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This typicality requirement is met if the claims of the representative plaintiffs arise from the same course of conduct as the claims of all the class members. The requirement of

3

typicality is not demanding, and does not require that the claims of the representative parties be identical in all respects with the claims of the members of the class. <u>Bittinger vs. Tecumseh Products Company</u> (Sixth Circuit, 1987), 123 F 3rd 877. Thus, minor differences of fact, such as the identity of the solicitor, the amount invested by each person, whether promissory notes were used, and the identity of the note maker, may vary among the representative plaintiffs and the members of the plaintiff class without destroying typicality.

The final prerequisite, stated in Rule 23(a)(4) is that "the representive parties will fairly and adequately protect the interest of the class." In determining whether this prerequisite is met,

> The Court reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another. Interests are antagonistic where there is evidence that the representative plaintiffs appear unable to "vigorously prosecute the interests of the class." <u>Stout et. al. vs J. D. Byrider, aka Docherty Motors Inc.</u>, et. al (Sixth Circuit, 2000) unreported case No. 99-3854, a copy attached @ page 6.

The Court has expressed concern about the requirements of Rule 23 (a) (4) in this case being met, in that Plaintiffs' counsel lacked adequate clerical assistance on the one hand, and on the other had expressed no interest in accepting a settlement proposed by attorney John Climaco, former trial counsel for defendant Sanitec Ltd. The Court noted that some members of the proposed class, who had filed separate actions in state and Federal courts, had through counsel been negotiating to settle their claims, while plaintiffs' counsel in this case had not sooooought to participate in those negotiations. The Court deserves an explanation of the circumstances, and an explanation follows.

On January 30, 2003, in Mr. Climaco's office in Cleveland, a settlement proposal was presented which provided for (1) assignment of all patents and other intellectual

4

property rights in the Sanitec technology to a company called Sanitec West, 80% of whose shares were owned by a Dr. Mary Riedinger, who apparently had a personal relationship with Terrance Quatkemeyer/Quinn, and 20% wereowned by one James Harkess; (2) appointment of a trustee for the benefit of the class of investors ("noteholders"), who would be given a lien on the patented intellectual property of Sanitec; (3) an undertaking by Sanitec West to pay 2% of its gross quarterly revenue derived from the use of the Sanitec technology in processing medical waste in California; (4) a royalty of $50,000 on the sale of each unit of Sanitec processing equipment sold by Sanitec West; (5) a total payment of $3.5 million to the trustee for the investors through such payments; (6) immediate releases of all claims by all parties, including claims of the investor class against Sanitec Ltd. and Quatkemeyer/Quinn, before the payment of any money. These terms, particularly the last, were unacceptable to Plaintiffs' counsel, and he so indicated to Mr. Climaco by e-mail.

At a scheduled conference with this Court in February 2003, Mr. Climaco appeared uninvited, and began to try to convince this Court that he was presenting a reasonable settlement proposal. Thereafter, Mr. Climaco contacted a group of other attorneys who had filed other lawsuits in state and Federal courts against Fiorini, Ventre, and Guardian Investments LLC. On March 26, 2003 a meeting was held which was attended by this Plaintiffs' counsel, and all the other attorneys who had been contacted by Climaco. At that meeting, Mr. Climaco explained the settlement to all present. Thereafter, the attorneys other than this Plaintiffs' counsel agreed to allow Timothy Fischer and Douglas Haman to act as their spokesmen in negotiating with Mr. Climaco.

Thereafter, alternative proposals on terms more favorable to investors were proposed by Messrs Fischer and Haman, but turned down by Mr. Climaco. In May,

2003, Plaintiffs' counsel herein was invited by attorney Patrick Hanley, along with Messrs Fischer and Haman, to a meeting in which Messrs Hanley, Fischer and Haman sought to convince Plaintiffs' counsel herein that the settlement offered by Mr. Climaco was the only hope any investors had of realizing any return out of the Santec technology. At that point, this Plaintiffs' counsel reluctantly agreed to go along with the Climaco settlement, with the hope expressed by all at that meeting that it would proceed to fruition expeditiously.

Contrary to that hope, a memorandum of understanding regarding that settlement remained with Mr. Climaco for weeks without any response, other than to file with this Court motions for extensions of time for reponses to the Second Amended Complaint by Sanitec Ltd.

In July and August, 2003, this Plaintiffs' counsel was contacted by Jeffrey Weinsten and James Smith, who asserted that they had obtained lawful control over Sanitec Ltd., and were prepared to offer a more favorable settlement to the investors. Both men asserted that they were motivated to pursue the marketing of the Sanitec technology by their belief that Mr. Smith, as one who had been chief cxecutive officer of many large corporations, was better qualified than Mr. Harkess to profitably exploit the Sanitec technology. In fact, they both asserted that Mr. Harkess was both incompetent and untrustworthy. This seemed plausible to Plaintiffs' counsel, due to Mr. Harkess's flat refusal on January 30, 2003 to agree to provide financial statements of Sanitec West to buttress his credibility. On August 18, 2003, Plaintiffs' counsel informed the Court and other counsel participating in a telephone conference that a proposal from Messrs. Smith and Weinsten was to be forthcoming, which promised to be more favorable to the investors than that being proposed by Mr. Climaco. Mr. Climaco vigorously expressed

6

his skepticism of Messrs. Smith and Weinsten, and at the end of that conference this Court expressed the intention to de-certify the Plaintiff Class which had been previously certified.

This Plaintiffs' counsel was under no obligation to continue negotiating with Mr. Climaco over an illusory settlement which bore scant hope of producing any recovery for the investors. If Messrs. Fischer and Haman wanted to do so on behalf of their group, so be it. It was further seriously disturbing to this Plaintiffs' counsel to learn, at the Court's conference on November 18, 2003 that Messrs Makee and Oparil had been negotiating with Messers Fischer and Haman and were appearing on behalf of a party which they styled "Sanitec Ltd. CA" which presumably meant "Sanitec Ltd. California," and which had no standing in this lawsuit (assuming perhaps that a California corporation different from the original Sanitec Ltd. had been incorporated recently under that name). Plaintiffs' counsel received a copy of the settlement proposed by Messrs. Makee and Oparil by fax by Mr. Fischer the same day. In all its essential terms, that proposal is identical to the one which was advanced by Mr. Climaco. The Court should be aware that, when asked why he had not sought to include Plaintiffs' counsel in his negotiations, Mr. Oparil replied that he was under "marching orders" not to negotiate a settement of the "Finch case." Plaintiffs' counsel thus had no opportunity to particpate in the negotiation of the settlement which apparently Messrs Fischer and Haman have now agreed to, as indicated by them in the Court's conference of December 2, 2003.

Plaintiffs' counsel has always been ready to negotiate a fair and reasonable settlement on behalf of the investors. He should not be faulted for exercising his professional judgment that the settlement promoted by Mr. Climaco was worthless. He

will continue to negotiate with Messrs Smith and Weinsten, however, because, at the very least, their proposal offers more money than the Climaco and the Oparil proposals.

It is hoped that this Court will bear in mind that a comprehensive settlement of this matter with respect to Sanitec Ltd. and its technology can only be achieved with a class which includes all investors. Messrs. Fischer and Haman and their group clearly do not represent all investors, but only a number of individual investors. If Messrs Fischer and Haman notify all investors of their proposed settlement, and more investors wish to jump on their cwagon, so be it. That should not preclude certification of a class in this case. It should also be born in mind that performance of a settlement by James Harkess and performance of a settlement by James Smith would perforce be mutually exclusive. Both settlementc could not proceed in tandem.

Responses to the other concerns expressed by this Court with respect to adequacy of Plaintiffs' counsel are contained in the affidavit filed herein on August 25, 2003.

After determining whether the four prerequisites under Rule 23(a) have been met the Court must then determine whether the proposed class fits any of the categories of class action specified under Rule 23(b). These categories include cases in which separate litigation poses the risk of imposing inconsistent obligations upon the Defendants [23(b)(1)(A)]; cases in which declaratory or injunctive relief is sought against a party or parties who have acted or refused to act on grounds generally applicable to the class [23(b)(2)]; and cases in which the questions of law or fact common to the members of the class predominate over any questions affecting only individual members [23(b)(3)]. The third category is the one most often applied to class action lawsuits, and it is the one which applies to this case: the questions of law or fact which are common to the class predominate over any questions affecting only individual members. Here, the

8

factual core of this case is the same for all class members: all were induced by the false representations of George Fiorini to enter into this so called "10% income plus plan"; all transferred substantial sums of money to Fiorini for such investments; all of their investments were transferred to Guardian Investments LLC, for which they received Guardian promissory notes; and all have been denied refunds or timely periodic interest payments on those investments. The factual differences, if any, among the claims of individual class members have to do with incidental matters only, such as whether they were solicited personally by Fiorini or by some agent of his; whether they received some, but not all periodic interest payments when they became due; whether they received promissory notes in return for their investments; whether the identity of the maker of any promissory notes was the same in all cases; or the varying amounts of losses incurred by each of the members of the class. "As long as a sufficient constellation of common issues binds class members together," variations with respect to such incidental matters should not foreclose class certification under Rule 23(b)(3). Waste Management Holdings vs Mowbray (Third Circuit, 2000), unreported case No. 99-8015, copy attached, at page 6.

Finally, as also required by Rule 23(b)(3) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy" in this case. Only a few members of the Class, *viz* the named plaintiffs in this case, have pursued litigation against all of the defendants in this case, including Sanitec Ltd. and Quatkemeyer/Quinn, although the total losses of all of Fiorini's victims are on the order of $13.5 million. If the majority of class members are to obtain any justice *vis a vis* these defendants, their claims must be adjudicated in this class action. On the other hand, some class members whose claims may be in the range of $30,000 or less may find it

uneconomical to pursue their claims separately, and may be able to obtain relief only through this class action. Those class members who may have already filed actions in state or Federal courts against these defendants based upon the "10% income plus plan" will be less likely to receive a reasonable settlement of their claims than can reasonably be expected in this class action, because of the fact that the class action will enable the defendants to achieve a global settlement of the claims against them arising out of the same set of facts and circumstances and thus result in a more favorable settlement. It is desirable to concentrate the litigaiton of claims arising from the "10% income plus plan" in this Court, since this Court is in the geographic center of the area in which the defendants' fraud was perpetrated, and claims arising within three different states can reasonably be adjudicated by a class action in this Court. It is not likely that there will be great difficulties involved in the management of this Class Action, due to the predominant commonality of the issues among the claims of the class, together with the fact that all class members are located within one relatively small geographic area, as are most of the defendants.

For the foregoing reasons, this case can and should be certified to proceed as a class action under Federal Rule of Civil Procedure 23.

Respectfully submitted,

William B. Singer (0019323)
Trial Attorney for Plaintiff
621 E. Mehring Way, #1609
Cincinnati, Ohio 45202
(513) 721-0778

CERTIFICATE OF SERVICE

## CERTIFICATE OF SERVICE

I certify that copies of the foregoing motion for class certification were served by ordinary mail upon George Fiorini dba The Fiorini Agency, 7641 Wesselman Road, Cleves, Ohio 45001; Patrick J. Hanley, Esq. attorney for Steven R. Ventre and Guardian Investments LLC, 214 E. 4TH Street Covington, Kentucky 41011; upon Richard J. Oparil Esq. Counsel of record for Sanitec Ltd. Patton Boggs LLP, 2250 M.Street NW, Suite 500, Washington DC, 20037-1350 on the _____ day of December 2003.