## No. 99-3854 (6th Cir.) Stout v. Byrider

Federal Appellate District: 6th
UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

James D. Stout; Shirley A. Brown, Plaintiffs-Appellants,
v.
J.D. Byrider, a/k/a Docherty Motors, Inc.; T & J Acceptance Corporation, d/b/a Carnow Acceptance Company, Defendants-Appellees.

No. 99-3854

Appeal from the United States District Court for the Northern District of Ohio at Akron.

No. 98-02830--James S. Gwin, District Judge.

Argued: June 23, 2000

Decided and Filed: September 8, 2000

Before: SILER and CLAY, Circuit Judges; STAFFORD, District Judge.(fn*)

**COUNSEL**

ARGUED: Sylvia M. Antalis, MURRAY & MURRAY, Sandusky, Ohio, for Appellants. Gary W. Johnson, WESTON, HURD, FALLON, PAISLEY & HOWLEY, Cleveland, Ohio, for Appellees. ONBRIEF: Sylvia M. Antalis, John T. Murray, MURRAY & MURRAY, Sandusky, Ohio, for Appellants. Gary W. Johnson, John A. Albers, WESTON, HURD, FALLON, PAISLEY & HOWLEY, Cleveland, Ohio, William F. Kolis, Jr., WICKENS, HERZER & PANZA, Lorain, Ohio, for Appellees.

**OPINION**

CLAY, Circuit Judge.

Plaintiffs James D. Stout and Shirley A. Brown appeal the denial of their motion for class certification and dismissal of this action for fraud and violations of the Ohio Consumer Sales Practices Act and the federal Truth in Lending Act arising from Plaintiffs' purchases of used motor vehicles from Defendants J.D. Byrider, a.k.a. Docherty Motors, Inc., and T & J Acceptance Corporation. For the following reasons, we **AFFIRM**.

**I.**

Docherty Motors is a closely held Ohio corporation which has sold used motor vehicles since 1995, and which advertises itself as providing financing to consumers with imperfect credit records. The corporation owns three J.D. Byrider franchises in northern Ohio. Each franchise has a manager who reports to Docherty Motors' executive vice-president.

Each franchise has a service department which performs repairs only on vehicles purchased at J.D. Byrider; the service department does both warranty and nonwarranty work. Prior to sale, each vehicle is inspected by Docherty Motors employees who perform a "safety check;" Docherty Motors also permits customers to take vehicles for a pre-purchase inspection at a mechanic of their choice.

Docherty Motors offers financing through T & J Acceptance Corporation to those individuals who may not qualify for traditional financing such as banks or credit unions. T & J owns three CarNow Acceptance Corporation ("CNAC") franchises, located at each J.D. Byrider dealership. CNAC provides standardized guidelines for the procedure for closing a sale and loan. Byrider personnel are trained to handle sales and financing transactions in a uniform manner. A CNAC representative handles the closing on each customer's purchase, which includes individual presentation of a power of attorney for vehicle registration and license, federal odometer statement, Ohio temporary registration application, Best Extended Service Agreement (if applicable), Buyer's Order, Retail Installment Contract and Security Agreement, insurance responsibility form, Buyer's guide, check list, and customer survey questionnaire. Closings at the Sandusky dealership are videotaped by a wall mounted camera for training and quality assurance purposes. The CNAC representative provides a brief explanation of each document, answers questions about the documents, and gives buyers an opportunity to review the paperwork prior to signing. After late 1997, customers were also presented with arbitration agreements which are separate, written agreements in normal and bold-faced type.

Vehicles purchased at Docherty Motors come with a limited warranty for three months or 3,000 miles. Customers may purchase an extended service agreement which covers the same items as the limited warranty, or they may decline it. There is no financial incentive for Defendants' employees if a customer purchases an extended service agreement. The extended service agreement is presented at the same time as the other documents as part of closing.

The videotapes of Plaintiffs' transactions show that the documents were individually presented to Plaintiffs for their review and signature. The CNAC representative provided a hypothetical example to Stout of how the arbitration agreement might work. Brown also reviewed the arbitration agreement prior to signing. Under Brown's agreement, the only dispute not subject to arbitration is a claim by Defendants that she failed to make payments on a timely basis in compliance with the contracts; her arbitration is to be conducted through the Better Business Bureau. Under Stout's agreement, the only claims not subject to arbitration are claims under $10,000, and claims relating to repossession and replevin of the vehicle; his arbitration is to be conducted through the American Arbitration Association. Both Plaintiffs purchased extended service agreements lasting eighteen months or 18,000 miles for $895. Brown utilized the extended service agreement for replacing the engine in a car she had purchased.

On December 7, 1998, Plaintiffs James D. Stout and Shirley A. Brown, individually and on behalf of all similarly situated individuals, filed a class action complaint in the United States District Court for the Northern District of Ohio against J.D. Byrider, a.k.a. Docherty Motors, Inc., and T & J Acceptance Corporations, d.b.a. CarNow Acceptance Company. The complaint alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01, and common law fraud.

Defendants moved to strike the class action allegations, to stay the proceedings and to compel arbitration under the parties' arbitration agreement. Plaintiffs moved to certify the proposed class. The district court denied Plaintiffs' motion for class certification, holding that Plaintiffs' claims were not typical of the putative class, that insufficient commonality existed amongst the putative class members, and that Plaintiffs were inadequate representatives for the class.

Defendants moved for summary judgment on all of Plaintiffs' claims; Plaintiffs moved for partial summary judgment on their TILA claim. The district court denied Defendants' motion to stay the proceedings but granted Defendants' motion to compel arbitration, holding after review of the record including the videotape of Plaintiffs' transactions, that the arbitration agreements were enforceable under Ohio and federal law and dismissing Plaintiffs' amended complaint "without prejudice to reinstatement

should further proceedings be needed after arbitration." The district court did not rule on either party's motion for summary judgment.

Plaintiffs appealed to this Court.

**II.**

This Court reviews the ruling of the district court compelling arbitration de novo. See Ferro Corp. v. Garrison Indus., 142 F.3d 926, 931 (6th Cir. 1998).

Under the Federal Arbitration Act, 9 U.S.C. § 2, ("FAA"), a written agreement to arbitrate disputes which arises out of a contract involving transactions in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation. See Allied-Bruce Terminx Cos. v. Dobson, 513 U.S. 265, 270, 280 (1995); Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 52-54 (1995). When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). Claims relating to fraud in the making of the arbitration agreed are determined by the court. See C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin and Jenrette Sec. Corp., 912 F.2d 1563, 1566 (6th Cir. 1990). Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. See Soler Chrysler-Plymouth, 473 U.S. at 626; Arnold v. Arnold, 920 F.2d 1269, 1281 (6th Cir.1990). Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration. See Soler Chrysler-Plymouth, 473 U.S. at 626.

When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. See Compuserve, Inc. v. Vigny Int'l Finance, Ltd., 760 F.Supp. 1273, 1278 (S.D.Ohio 1990).

Plaintiffs argue that the district court incorrectly found that the parties had agreed to arbitrate the dispute and that under the FAA, Congress intended Plaintiffs to arbitrate their claims. Plaintiffs first contend that there was no agreement to arbitrate. However, the record indicates that the parties did agree to arbitrate: the videotape shows Plaintiffs reviewing the documents, engaging in discussions concerning them, and reading them prior to signing. "One who signs a contract is presumed to know its contents, and ... if he has had an opportunity to read the contract which he signs he is bound by its provisions." Sears, Roebuck & Co. v. Lea, 198 F.2d 1012, 1015 (6th Cir.1952). This Court applies "the cardinal rule that, in the absence of fraud or wilful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions." Allied Steel and Conveyers, Inc. v. Fort Motor Co., 277 F.2d 907, 913 (6th Cir. 1960). Plaintiffs seem to argue that there is fraud in the transaction, but point to no actual evidence that either they were deceived into signing something they believed to be other than an agreement to arbitrate, or that they had not in fact signed the arbitration agreement. Absent any evidence contrary to that evident in the record - that the arbitration agreements were set forth in separate documents in regular and bold-print type, that Plaintiffs read and reviewed the arbitration agreements, that Plaintiffs had an opportunity to ask the CNAC representative about the agreements but did not do so, and that Plaintiffs signed the agreements - we find that Plaintiffs clearly agreed to resolve their disputes through binding arbitration.

Plaintiffs also argue that Congress did not intend Plaintiffs to arbitrate the claims raised against Defendants, arguing that the Truth in Lending Act is a remedial consumer protection statute which would be usurped by imposing a requirement for arbitration.

It is settled authority that doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration. See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); Ferro, 142 F.3d at 932. If parties contract to resolve their disputes in arbitration rather than in the courts, a party may not renege on that contract absent the most extreme circumstances. See Southland Corp. v. Keating, 465 U.S. 1, 24 (1984); Dean Witter Reynolds, Inc. v. McCoy, 995 F.2d 649 (6th Cir. 1993). A district court's duty to enforce an arbitration agreement under the FAA is not diminished when a party bound by the agreement raises claims arising from statutory rights. See Shearson/American Express v. McMahon, 482 U.S. 282 (1987) (RICO); Dorsey v. H.C.P. Sales, Inc., 46 F.Supp.2d 804, 808 n.5 (N.D.Ill. 1999) (TILA); Goodwin v. Ford Motor Credit Co., 970 F. Supp. 1007 (M.D.Ala. 1997) (TILA). Plaintiffs cite the Eleventh Circuit Court of Appeals case of Randolph v. Green Tree Financial Corporation, 178 F.3d 1149 (11th Cir. 1999), cert. granted, 120 S. Ct. 1552 (2000), which the Supreme Court has recently granted certiorari to consider, in support of their argument. In Randolph, the Eleventh Circuit determined that an arbitration agreement "fail[ed] to provide the minimum guarantees required to ensure that [the plaintiff's] ability to vindicate her statutory rights will not be undone by steep filing fees, steep arbitrators' fees, or other high costs of arbitration." 178 F.3d at 1158. Defendants argue, not without merit, that Randolph is distinguishable from this case in that Randolph involved a showing that the arbitration provided in those agreements was an ineffective and inaccessible forum with the potential for substantively unfair arbitration fees or procedures. In this case, the arbitration agreements clearly specify the established organization whose rules will govern the arbitration. We find Defendants' argument on this point persuasive.

Plaintiffs also argue that the arbitration agreements are unconscionable and unenforceable as against Ohio public policy. But this Court and the Supreme Court have disagreed, seeing "nothing in the act indicat[ing] that the broad principle of enforceability is subject to any additional limitations of state law." Ferro Corp., 142 F.3d at 932 (citing Southland Corp., 465 U.S. at 10-11). The FAA governs all aspects of arbitration procedure and preempts inconsistent state law. See Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 688 (1996); Moses H. Cone, 460 U.S. at 24.

In this case, Plaintiffs' claim for fraud, violations of OCSPA, and TILA relate to the purchase of their vehicles and arise under their purchase and finance contracts with Defendants. Because we previously found that the parties fairly agreed to arbitrate these types of claims, we find that neither this Court nor the Ohio courts have the ability to mandate judicial resolution of these disputes in violation of the parties' agreement.(fn1) Plaintiffs point to the Ohio Supreme Court decision of Williams v. Aetna Financial Company, 700 N.E.2d 859 (Ohio 1998), cert. denied, 119 S.Ct. 1357 (1999), in support of their argument. However, we note that Williams considers Ohio's obligation to compel arbitration under the Ohio Arbitration Act, Ohio Rev. Code Ann. § 2711.01 (Anderson 1999), and not under the FAA as in this case. Even if Williams were relevant, we find it distinguishable, as Plaintiffs have not established that these agreements, like those in Williams, are unenforceable adhesion contracts. Under Ohio law, in order for an arbitration provision to be unconscionable, it must be one-sided, deny the less advantaged party meaningful choice in accepting the terms of the contract, and involve a situation such that the less advantaged party cannot obtain their desired product or services except by acquiescing to the form contract. See Williams, 700 N.E.2d at 872-73 (Cook, J. dissenting). Plaintiffs have presented no evidence beyond their speculations that Defendants would have refused to sell the vehicles had they refused to sign the arbitration agreements, nor do they demonstrate that they could only purchase similar vehicles by agreeing to the arbitration agreements. Furthermore, the district court found, and we agree, that the arbitration provisions are not so one-sided as to be unconscionable: no evidence shows that the legitimate arbitration organizations will fail to fairly and equally oversee Plaintiffs' claims. In the

absence of any factual evidence that these agreements were entered into fraudulently or mistakenly, and absent any showing by Plaintiffs that the arbitration arrangements are themselves one-sided or unfair, we affirm.

**III.**

We turn to the issue of the district court's denial of class certification. We note first that as we have found that the district court correctly compelled arbitration, this issue is relevant only to the extent that it may be asserted in arbitration as a basis for damages or attorneys' fees.

This Court reviews a district court's ruling on class certification for an abuse of discretion, as the district court retains broad discretion in determining whether an action should be certified as a class action. See Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1198 (6th Cir. 1988).

Under governing law, a court may certify a class if it performs "rigorous analysis" of the requirements of Federal Rule of Civil Procedure 23. General Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982); accord Sprague v. General Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998). Rule 23(a) sets forth four prerequisites to class certification: (1) the class must be so numerous that "joinder of all members is impracticable;" (2) there must be "questions of law or fact common to the class;" (3) the claims of the representative party must be "typical" of the class; and (4) the representative party must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Rule 23(b) requires that the court find that common questions of law or fact predominate over individual issues in the case.

Plaintiffs seek to certify a class comprising all persons who purchased an automobile from Docherty Motors that was financed by CNAC between 1993 and the present. They allege that Defendants defrauded every member of this class by selling them used vehicles with concealed damage and that every member has incurred substantial repair costs in order to remedy that damage.

The district court found that Plaintiffs' claims were not typical of the class under Rule 23(a)(3); that Plaintiffs were not adequate representatives of the proposed class under Rule 23(a)(4); and that neither Stout nor Brown showed a sufficient relationship between their experiences and the experiences of putative class members. Rule 23(a)(3) typicality "determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." Sprague, 133 F.3d at 399. This Court has summarized this standard: "[a]s goes the claim of the named plaintiff, so go the claims of the class." Id.

We find that the district court did not abuse its discretion in its finding, noting that the district court identified discrepancies between Plaintiffs and the ostensible class members ranging from the type of car, the degree of repairs necessitated, the response to those repairs, the purpose for which the car was purchased, the individual circumstances and transactions surrounding each purchase including each class member's understanding of the terms and conditions of their purchase agreements, and the extent of the injury suffered. Because Plaintiffs' claims rest on their understanding of the purchasing transaction and each buyer's understanding of the terms, and because some buyers did not purchase the extended service agreement, we find that the district court did not abuse its discretion. See Peters v. Cars to Go, 184 F.R.D. 270 (W.D.Mich. 1998) (finding under similar facts that a customer's individual decision to purchase an extended service agreement militates against class certification).

Similarly, we agree that the district court did not abuse its discretion in determining that Plaintiffs

are not adequate representatives of the putative class. See Fed. R. Civ. P. 23(a)(4). Under Rule 23(a)(4), a plaintiff seeking to represent the class must demonstrate that he or she will fairly and adequately represent and protect the interests of the class. See In re American Med. Sys., Inc., 75 F.3d 1069, 1083 (6th Cir. 1996). The court reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another. See id. Interests are antagonistic when there is evidence that the representative plaintiffs appear unable to "vigorously prosecute the interests of the class." Id. The district court determined that Stout and Brown had interests antagonistic to the remainder of the putative class because Stout had already filed and voluntarily dismissed a separate individual action in state court against the same Defendants, thus preserving his right to pursue that suit should the class action claim be dismissed; the named Plaintiffs obtained repairs or alternative proposed resolutions from Defendants which differ from other class members - Brown received a complete engine replacement, and Defendants offered to fully refund to Stout the purchase price of his vehicle; and the named Plaintiffs' claims arise from different transactions and alleged injury, therefore causing absent class members to potentially lose the benefit of having the facts of their separate cases adequately presented. We find that the district court's decision, based on these considerations, not to constitute an abuse of its discretion.

We similarly agree with the district court's conclusion that Plaintiffs failed to meet the requirement of Rule 23(b) that common issues predominate over individual issues. See Fed. R. Civ. P. 23(b). In this case, the district court determined that the factual core of the case was whether each putative class member relied upon false representations or failures to disclose, and if so, what damages were proximately caused by that reliance. We find that this determination did not constitute an abuse of discretion by the district court in light of the fact that any resolution of the fraud or the TILA claims requires an individual assessment of what documents the customer reviewed and in what manner, what representations Defendants made to each customer, and whether the customer selected the extended service agreement. See Castano v. American Tobacco Co., 84 F.3d 734, 745 (5th Cir. 1996) ("[A] fraud class action cannot be certified when individual reliance will be an issue.").

As we find that the district court correctly compelled arbitration and that the district court's refusal to certify a class did not constitute an abuse of discretion, we **AFFIRM** the orders of the district court.

---

Footnotes

\* The Honorable William Stafford, Senior United States District Judge for the Northern District of Florida, sitting by designation.

1. We note that Plaintiffs are not asserting that their claims fall under the exceptions from arbitration determined by the language of the arbitration agreement itself.

© Lawriter Corporation. All rights reserved.

The Casemaker™ Online database is a compilation exclusively owned by Lawriter Corporation. The database is provided for use under the terms, notices and conditions as expressly stated under the online end user license agreement to which all users assent in order to access the database.