**No. 99-8015 (1st Cir.) Waste Management Holdings v. Mowbray**

Federal Appellate District: 1st

United States Court of Appeals
For the First Circuit

No. 99-8015

WASTE MANAGEMENT HOLDINGS, INC., Petitioner,
v.
ROBERT MOWBRAY, ON HIS OWN BEHALF AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, Respondent.

PETITION TO APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS GRANTING CLASS CERTIFICATION

[Hon. William G. Young, U.S. District Judge]

Before Selya, Stahl and Lipez, Circuit Judges, James R. Carroll, with whom William P. Frank, Mark L. Keene, and Skadden, Arps, Slate, Meagher & Flom LLP were on brief, for petitioner.

Edward F. Haber, with whom Michelle H. Blauner, Christine E. Morin, and Shapiro, Haber & Urmy LLP were on brief, for respondent.

March 31, 2000

SELYA, Circuit Judge.

This is a petition for leave to appeal from a class certification order. It provides us with our first real opportunity to delineate the circumstances in which a court of appeals should exercise its discretion to allow an interlocutory appeal under Fed. R. Civ. P. 23(f). Seizing that opportunity, we offer some general guidance and limn three types of cases in which we will be inclined to grant such applications.

We then move from the general to the particular. While the petition at hand does not present an especially compelling case for interlocutory review, we nonetheless grant it (largely because the merits already have been fully briefed by able counsel, pursuant to our express direction). Having thus drilled down to the core issues that underlie the petition, we affirm the district court's class certification order.

## I. BACKGROUND

The facts relevant to this proceeding are uncontroversial. On July 31, 1992, Robert Mowbray sold his business to a predecessor of Waste Management Holdings, Inc. (WMH), in exchange for shares of WMH's common stock. The asset sale agreement, which stipulated that Illinois law was to govern any disputes arising thereunder, contained two provisions that have particular pertinence here. The first listed several securities filings that had been furnished to Mowbray. These filings contained audited financial statements for the years 1989, 1990, and 1991, and an unaudited statement for the first quarter of 1992. The second provision warranted that these filings "did not contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading," and that the audited financial statements "have been prepared in accordance with generally accepted accounting

principles applied on a consistent basis . . . and fairly present the financial position of [WMH] as at the dates thereof and the results of its operations and changes in financial position for the periods then ended."

Several years later, the bubble burst. On February 24, 1998, WMH announced that its earnings for the previous eight years had been grossly overstated. The company's press release explained that certain expense items (principally related to vehicle, equipment, and container depreciation) had been incorrectly reported.

It is said that every action produces an equal and opposite reaction, and this revelation engendered severe repercussions. On July 31, 1998, Mowbray filed a diversity suit in the United States District Court for the District of Massachusetts, alleging breach of a contractual warranty and purposing to sue on behalf of a class composed of all persons who lately had sold assets to WMH in exchange for shares of WMH's common stock. For reasons that are not immediately apparent, the presiding judge suggested at a status conference that Mowbray could move for partial summary judgment prior to a judicial determination on the class certification issue. Mowbray took the hint and moved for summary judgment as to liability. WMH countered on three allied fronts: it opposed Mowbray's motion, sought to defer any adjudication pending the completion of discovery, see Fed. R. Civ. P. 56(f), and moved to dismiss Mowbray's complaint.

In due season, the district court denied both of WMH's motions, overrode its opposition to Mowbray's motion, and granted partial summary judgment in Mowbray's favor. See Mowbray v. WMH, 45 F. Supp. 2d 132 (D. Mass. 1999) (Mowbray I). In the court's view, the "determinative issue" was that Illinois law did not require reliance on an express warranty in order to recover for its breach. Id. at 134. Thus, WMH's recasting of its financial statements constituted an admission that it had breached its express warranty to Mowbray, and further discovery would serve no useful purpose. See id. at 139-43.

Invoking Fed. R. Civ. P. 23(b)(3), Mowbray then moved for certification of a class consisting of all persons who, during the period January 1, 1990 to February 24, 1998, had sold assets to WMH in exchange for shares of WMH's common stock.(fn1) The record reflects that the proposed class comprised 324 sellers in 119 transactions; that the transactions were governed variously by the laws of twenty states and three Canadian provinces; that thirty-two of the transactions involved sales agreements in which WMH had expressly warranted the accuracy of its financial statements; and that these thirty-two transactions involved eighty-one potential class members (the Warranty Group).

WMH opposed class certification, arguing, inter alia, that the application of the laws of multiple jurisdictions to individual questions of reliance, waiver, and prescription predominated over any common questions. The district court agreed that individual questions predominated over common questions with respect to the potential class members who had sold assets pursuant to contracts that did not contain express warranties and therefore denied class certification as to this subset of individuals, but reached the opposite conclusion with respect to the Warranty Group. See Mowbray v. WMH, 189 F.R.D. 194, 197-202 (D. Mass. 1999) (Mowbray II).

Pursuant to Fed. R. Civ. P. 23(f), WMH timely petitioned this court for permission to appeal the class certification order. Mowbray opposed the application. Spurred in part by the lack of precedent in this newly constructed corner of the law, we set an expedited briefing schedule and instructed the parties to address not only the standards for granting leave to appeal, but also the merits of the class certification decision. In the meantime, proceedings continue in the district court.

## II. LEAVE TO APPEAL

Rule 23(f), which took effect on December 1, 1998, provides that:

> A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the order. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

This is the first Rule 23(f) application in this circuit to reach the briefing stage (and, insofar as we can tell, among the first in the nation).

The threshold question before us involves the criteria that should guide an appellate court's exercise of discretion in passing upon applications under this neoteric rule. The parties offer divergent answers to this question. WMH takes an expansive view, suggesting that appellate review is proper whenever the court of appeals suspects that the trial court may have committed an error of law, or whenever the class action determination hinges upon a question of law that has not been definitively resolved in this circuit. In contrast, Mowbray asserts more grudgingly that a Rule 23(f) application should be granted only if the applicant makes out a compelling case that the district court committed a clear and dispositive error of law or otherwise manifestly abused its discretion. Using the underlying purposes of the new rule as a beacon, we chart a middling course.

The advisory committee's note accompanying Rule 23(f) underscores that "[t]he court of appeals is given unfettered discretion whether to permit the appeal," likening this to the Supreme Court's authority in granting or denying certiorari.(fn2) In the same breath, however, the advisory committee predicts that "[p]ermission is most likely to be granted when the certification decision turns on a novel or unsettled question of law, or when, as a practical matter, the decision on certification is likely dispositive of the litigation." Id. The advisory committee explains:

> [M]any suits with class-action allegations present familiar and almost routine issues that are no more worthy of immediate appeal than many other interlocutory rulings. Yet several concerns justify expansion of present opportunities to appeal. An order denying certification may confront the plaintiff with a situation in which the only sure path to appellate review is by proceeding to final judgment on the merits of an individual claim that, standing alone, is far smaller than the costs of litigation. An order granting certification, on the other hand, may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability.

Id. The raison d'être for Rule 23(f), then, is twofold. First, the rule provides a mechanism through which appellate courts, in the interests of fairness, can restore equilibrium when a doubtful class certification ruling would virtually compel a party to abandon a potentially meritorious claim or defense before trial. Second, the rule furnishes an avenue, if the need is sufficiently acute, whereby the court of appeals can take earlier-than-usual cognizance of important, unsettled legal questions, thus contributing to both the orderly progress of complex litigation and the orderly development of the law.

The seminal opinion dealing with the standards applicable to Rule 23(f) applications is Blair v. Equifax Check Services, Inc., 181 F.3d 832 (7th Cir. 1999). That cogently reasoned opinion captures the essential principles on which Rule 23(f) rests. There, the court delineated three categories of cases that customarily would warrant the exercise of discretionary appellate jurisdiction. First, an appeal ordinarily should be permitted when a denial of class status effectively ends the case (because, say, the named plaintiff's claim is not of a sufficient magnitude to warrant the costs of stand-alone litigation). Second, an appeal ordinarily should be permitted when the grant of class status raises the stakes of the litigation

so substantially that the defendant likely will feel irresistible pressure to settle. Third, an appeal ordinarily should be permitted when it will lead to clarification of a fundamental issue of law. See id. at 834-35.

The Blair court then placed a useful gloss on the first two categories. Mindful that some cases deserve to die and others deserve to settle, it made pellucid that an applicant who invokes either of the first two classifications must also "demonstrate that the district court's ruling on class certification is questionable - and must do this taking into account the discretion the district judge possesses in implementing Rule 23, and the correspondingly deferential standard of appellate review." Id. at 835. The court glossed the third category as well, noting that the importance of the issue to be resolved, more so than the likelihood of reversal, ought to determine whether a case falls into this grouping. See id. Moreover, even when an application touts a supposedly fundamental issue of law, a showing that an end-of-case appeal promises to be an adequate remedy will weigh heavily against granting a Rule 23(f) application. See id. Thus, the likelihood that a party will be forced to throw in the towel factors into the discretionary calculus in all three branches of the Blair formulation.

We regard the Seventh Circuit's taxonomy as structurally sound. We worry, however, that the third category, as framed, may encourage too many disappointed litigants to file fruitless Rule 23(f) applications. The law is a seamless and evolving web, so a creative lawyer almost always will be able to argue that deciding her case would clarify some "fundamental" issue. But interlocutory appeals should be the exception, not the rule; after all, many (if not most) class certification decisions turn on "familiar and almost routine issues." Fed. R. Civ. P. 23(f) advisory committee's note. We believe, therefore, that Blair's third category should be restricted to those instances in which an appeal will permit the resolution of an unsettled legal issue that is important to the particular litigation as well as important in itself and likely to escape effective review if left hanging until the end of the case.(fn3)

With this small emendation, we adopt the Blair taxonomy. This means that we ordinarily will grant leave to appeal when a Rule 23(f) application falls into one of the three described categories. We emphasize, however, the discretionary nature of the authority ceded to us by the rule. While we hope that these general comments will be helpful to parties deciding whether to pursue applications under Rule 23(f), we do not foreclose the possibility that special circumstances may lead us either to deny leave to appeal in cases that seem superficially to fit into one of these three pigeonholes, or conversely, to grant leave to appeal in cases that do not match any of the three described categories.

The bar also should be aware that we intend to exercise our discretion judiciously. By their nature, interlocutory appeals are disruptive, time-consuming, and expensive. Thus, we have elevated the threshold for discretionary review in other instances, endeavoring to discourage piecemeal appeals. See, e.g., In re Cargill, Inc., 66 F.3d 1256, 1259 (1st Cir. 1995) (dealing with writs of mandamus); Heddendorf v. Goldfine (In re Heddendorf), 263 F.2d 887, 889 (1st Cir. 1959) (dealing with applications under 28 U.S.C. § 1292(b)). Although Rule 23(f) is designed to operate from a more accessible plateau, the same policy considerations counsel in favor of some restraint. We should err, if at all, on the side of allowing the district court an opportunity to fine-tune its class certification order, see Fed. R. Civ. P. 23 (c)(1) (authorizing district courts to alter or amend class certification orders at any time before the decision on the merits), rather than opening the door too widely to interlocutory appellate review.

This brings us to the moment of decision. The case at bar does not fit snugly into any of the described categories. We explain briefly.

When asked at oral argument to situate this case within one of these boxes, WMH's counsel stated that the situation would be potentially "ruinous" were the case to be maintained as a class action. This is plausible at first blush: the average value of the transactions at issue - in excess of $16,000,000 -

suggests that WMH's aggregate exposure may be quite large. Still, what might be "ruinous" to a company of modest size might be merely unpleasant to a behemoth, and the record makes manifest that WMH is a massive corporation. Furthermore, the magnitude of damages will be diminished if (as appears likely) some class members liquidated all or part of their stock before news of the downward earnings adjustment filtered into the market. In all events, no matter how strong the economic pressure to settle, a Rule 23(f) application, in order to succeed, also must demonstrate some significant weakness in the class certification decision. WMH cannot satisfy this criterion. See infra Part III.

Nor does this case reside comfortably in the third branch of the Blair taxonomy. We do not gainsay that the application, as framed, implicates issues that are both fundamentally important and important in the context of this litigation. Withal, a stray district court opinion or two does not herald a jurisprudential tangle, and the relevant points of law are reasonably well-settled. Then, too, our doubts as to how much pressure there will be on WMH to settle this case rather than pursue it to final judgment counsel against hasty authorization of an immediate appeal.

Given these circumstances, we normally would deny the application for leave to appeal. Nonetheless, we exercise our discretion to accept the application and hear this appeal because of special circumstances. As a result of our original order, issued in hopes of minimizing piecemeal review, the merits already have been briefed with exquisite care. Consequently, an opinion can, at little cost, clarify some imprecision in the case law, while at the same time giving the parties (and the lower court) a better sense as to which aspects of the class certification decision might reasonably be open to subsequent reconsideration. We proceed accordingly.

### III. OBJECTIONS TO CLASS CERTIFICATION

Rule 23(b)(3) requires, as a condition precedent to class certification, that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." WMH argues that the district court erred in finding that the certified class met this predominance requirement. We review rulings granting or denying class certification to ascertain whether the district court's order constituted an abuse of discretion. See Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985). An abuse occurs when a court, in making a discretionary ruling, relies upon an improper factor, omits consideration of a factor entitled to substantial weight, or mulls the correct mix of factors but makes a clear error of judgment in assaying them. See Independent Oil & Chem. Workers, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir. 1988). An abuse of discretion also occurs if the court adopts an incorrect legal rule. See United States v. Snyder, 136 F.3d 65, 67 (1st Cir. 1998).

A

WMH devotes the lion's share of both its opening and reply briefs to the thesis that the presence of idiosyncratic statute-of-limitations issues precluded a finding of predominance in this case, and that the district court, in failing to recognize this reality, committed an error of law. To be specific, WMH contends that the district court operated under the false assumption that limitations defenses were not to be considered at the class certification stage. We agree with the premise that underlies this thesis: we regard the law as settled that affirmative defenses should be considered in making class certification decisions. See, e.g., Castano v. American Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996) (explaining that "a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues"). Because a time bar constitutes an affirmative defense, see Fed. R. Civ. P. 8(c), statute-of-limitations defenses are appropriate for consideration in the class certification calculus. However, as we explain below, the district court's actions were not at variance with these principles.

Although a necessity for individualized statute-of-limitations determinations invariably weighs against class certification under Rule 23(b)(3), we reject any per se rule that treats the presence of such issues as an automatic disqualifier. In other words, the mere fact that such concerns may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones. As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3). See 5 James Wm. Moore et al., Moore's Federal Practice § 23.46[3], at 23-210 to -211 (3d ed. 1999). Predominance under Rule 23(b)(3) cannot be reduced to a mechanical, single-issue test.(fn4)

As a fallback, WMH criticizes the district court for relying on securities fraud cases in its consideration of how statute-of-limitations concerns affect predominance. This criticism is misplaced. Cases alleging fraud on the market may be particularly well-suited for class treatment, but the generic requirements of Rule 23(b)(3) do not vary with the type of claim asserted. Thus, courts confronting a collocation of divergent limitations defenses regularly apply the totality-of-the-circumstances test not only in security fraud cases but also in other types of Rule 23(b)(3) class actions. See, e.g., Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 924-25 (3d Cir. 1992) (RICO claim); Shroder v. Suburban Coastal Corp., 729 F.2d 1371, 1378-79 (11th Cir. 1984) (TILA case); Riordan v. Smith Barney, 113 F.R.D. 60, 65 (N.D. Ill. 1986) (case concerning fraud and breach of fiduciary duty claims); Cohen v. District of Columbia Nat'l Bank, 59 F.R.D. 84, 90 (D.D.C. 1972) (usury and antitrust case).

WMH has two more shots in its statute-of-limitations sling. First, it condemns the district court for ignoring WMH's potential limitations defenses altogether. The court's opinion, read as a whole, belies this condemnation. After summarizing WMH's statute-of-limitations argument, the court articulated the correct rule, observing that "possible differences in the application of a statute of limitations to individual class members . . . does not preclude certification of a class action so long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present." Mowbray II, 189 F.R.D. at 199 (alteration in original) (quoting In re Energy Sys. Equip. Leasing Sec. Litig., 642 F. Supp. 718, 752-53 (E.D.N.Y. 1986)). Although it then included in a string cite two district court cases better omitted (each erroneously suggesting that statute-of-limitations defenses should not be considered at the class certification stage),(fn5) it did not rest its determination on this false assumption. Instead, it assessed the impact of WMH's asserted limitations defenses vis-à-vis members of the Warranty Group, acknowledged the lack of uniformity, and explained why the limitations problems nonetheless appeared to be inconsequential:

> [O]nly 13 of the 32 transactions are presumptively time-barred, implicating only eight different states' statutes of limitations laws. Half of these eight states have a discovery rule while the remaining half have an operationally similar fraudulent concealment rule. Under either rule, the factual proffer will be largely the same, depending as it does on the fact that Waste Management had exclusive control over the collection and release of its financial data.

Id. at 200 n.4 (citations omitted). The court then made an explicit finding that predominance was not negated by the need for idiosyncratic statute-of-limitations determinations "in the instant action." Id. at 200. Because it reached that conclusion on the assumption that affirmative defenses were relevant to the predominance question, it did not apply an erroneous rule of law.

WMH's remaining claim is that the lower court abused its discretion by not probing deeply enough into how the statute-of-limitations issues were likely to be litigated and resolved. This claim rests primarily on the Supreme Court's opinion in General Telephone Co. v. Falcon, 457 U.S. 147 (1982). There, the Court held that the trial judge erred in allowing a plaintiff who complained of discrimination

in promotion to maintain a class action on behalf of applicants whom the defendant did not hire. See id. at 157-61. In the Court's view, the trial judge's reliance on an "across-the-board rule" that, in effect, permitted a plaintiff who challenged any employment practice to challenge all employment practices departed from the "rigorous analysis" required by Rule 23. Id. at 161. In explicating its reasoning, the Court reiterated that "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," id. at 160 (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978) (internal quotation marks omitted)), and suggested that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," id.

Building on this foundation, WMH asseverates that the district court did not delve deeply enough before it concluded that the incidence, variety, and complexity of statute-of-limitations issues did not defeat the quest for class certification. This asseveration is unconvincing. The court below did not rely on a generalization (like the one that the General Telephone Court found objectionable), but, rather, engaged in a case-specific analysis that went well beyond the pleadings. The court noted, for example, that most class members' claims were unaffected by possible limitations defenses and that, in those few instances in which a limitations defense might have bite, a common proffer likely would establish the factual predicate necessary for a tolling determination. See Mowbray II, 189 F.R.D. at 200 n.4. The district court's failure to mention the possibility that WMH might retort with individualized counter-proffers did not undermine the court's otherwise thorough consideration of the issue. On this record, that possibility was too conjectural to be accorded decretory significance.(fn6)

B

WMH next assails the district court's treatment of its waiver defense. At the outset, this assault calumnizes the court for burrowing too far behind the pleadings and, thus, effectively rejecting the waiver defense on the merits.

In Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974), the Court held that Rule 23 did not authorize an inquiry into the merits in order to apportion the costs of notice to a putative class. The Court explained that, "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Id. at 178 (quoting Miller v. Mackey Int'l, Inc., 452 F.2d 424, 427 (5th Cir. 1971) (Wisdom, J.)). WMH asserts that the district court, which concluded that waiver issues did not destroy predominance because these issues appeared unlikely to survive summary judgment, see Mowbray II, 189 F.R.D. at 201-02, transgressed Eisen.

This argument reads too much into too little. Eisen may place a gloss on General Telephone, but it in no way purports to overrule that precedent. Nor does Eisen, fairly read, foreclose consideration of the probable course of the litigation at the class certification stage. Indeed, such a proscription would be inconsistent not only with General Telephone, but also with the method of Rule 23. After all, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case. See General Telephone, 457 U.S. at 160-61; Coopers & Lybrand, 437 U.S. at 469; Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 598-99 (7th Cir. 1993); see also Moore et al., supra, § 23.46[4], at 23-211 to -213.

Rule 23(b)(3)(D), for example, states that "the difficulties likely to be encountered in the management of a class action" are pertinent to the predominance inquiry. Nonetheless, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997) (citation omitted). By like token,

when the court supportably finds that an issue which, in theory, requires individualized factfinding is, in fact, highly unlikely to survive typical pretrial screening (such as a motion to strike or a motion for summary judgment), a concomitant finding that the issue neither renders the case unmanageable nor undermines the predominance of common issues generally will be in order. Because this is such a case, the district court did not err in discounting WMH's waiver defense.

WMH also contends that the district court misapprehended the way in which the waiver defense would affect both pretrial discovery and proof at trial, and thus failed to apply the "rigorous analysis" required by General Telephone, 457 U.S. at 161. According to WMH, the district court - perhaps blinded by its unusually early summary judgment decision, see Mowbray I, 45 F. Supp. 2d at 132 - overlooked the fact that Mowbray's situation was not typical of all class members, many of whom worked for WMH as employees or consultants after their businesses were acquired (and, thus, might have been able to discover the earnings overstatement before WMH announced it). Although WMH made this argument below, the district court discussed only ex ante waiver and did not specifically address the possibility that class members might have waived their claims at some point after the transactions were completed. See Mowbray II, 189 F.R.D. at 201-02.

We reject this argument. The record before the district court did not in any way support the possibility of ex post waiver (a circumstance that, in all likelihood, accounted for the district court's silence anent the issue). We are unwilling to fault a district court for not permitting arguments woven entirely out of gossamer strands of speculation and surmise to tip the decisional scales in a class certification ruling. See Zeigler v. Gibralter Life Ins. Co., 43 F.R.D. 169, 173 (D.S.D. 1967) (explaining that "Rule 23 was not designed to encourage [this type of] conjecture"). Consequently, we find no abuse of discretion.

### C

In its reply brief, WMH advances yet another argument. It asserts that, in light of the lower court's entry of partial summary judgment on the question of liability, see Mowbray I, 45 F. Supp. 2d at 132, it was an abuse of discretion for the court to find a predominance of common issues because individual-specific affirmative defenses were all that remained to be litigated.(fn7) We have held, with a regularity bordering on the monotonous, that issues advanced for the first time in an appellant's reply brief are deemed waived. See, e.g., Wills v. Brown Univ., 184 F.3d 20, 27 (1st Cir. 1999); Executive Leasing Corp. v. Banco Popular, 48 F.3d 66, 68 n.3 (1st Cir. 1995); Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1571 (1st Cir. 1994); Sandstrom v. ChemLawn Corp., 904 F.2d 83, 87 (1st Cir. 1990).

In all events, the fact that an issue has been resolved on summary judgment does not remove it from the predominance calculus. A certification decision is still necessary to determine whether the prior resolution carries res judicata effect with respect to purported class members. Thus, the district court did not err by taking into account the common nucleus of operative facts and issues, even though certain of these already had been resolved, when it was deciding whether to certify the class. Cf. Wright v. Schock, 742 F.2d 541, 545 (9th Cir. 1984) (affirming a postjudgment class certification decision in part because "the district court did not use its Rule 56 determination as a basis for deciding whether a class action was maintainable").

We need go no further. We conclude, on the record presented, that the district court did not abuse its discretion in certifying the plaintiff class.

**The application for leave to appeal is granted and the ruling appealed from is affirmed. Costs in favor of respondent.**

---

Footnotes

1.   Although Mowbray's motion also mentioned Rule 23(b)(2), this reference appears extraneous, given his specific allegations. Thus, we disregard it.

2.   Embracing this analogy, Mowbray argues that because the Supreme Court grants certiorari only for "compelling reasons," Sup. Ct. Rule 10, we should restrict Rule 23(f) applications accordingly. But the advisory committee's note, read as a whole, does not support this attempt to transplant the certiorari standard root and branch into the virgin soil of Rule 23(f).

3.   We reject WMH's suggestion that there must be a First Circuit precedent directly on point in order for a question of law to be considered settled. If the law elsewhere is developed and a consensus is apparent, or if the answer to a question seems straightforward, the absence of circuit precedent will not afford an independent basis for immediate review.

4.   In adopting this position, we respectfully reject the Fourth Circuit's suggestion that "when the defendant's affirmative defenses (such as . . . the statute of limitations) may depend on facts peculiar to each plaintiff's case, class certification is erroneous." Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 342 (4th Cir. 1998) (alteration in original) (internal quotation marks omitted). While we do not quarrel with the result reached in Broussard, the quoted statement, to the extent that it purports to establish a per se rule, contradicts the weight of authority and ignores the essence of the predominance inquiry.

5.   See Mowbray II, 189 F.R.D. at 199 (citing CV Reit, Inc. v. Levy, 144 F.R.D. 690, 699 (S.D. Fla. 1992), and Gruber v. Price Waterhouse, 117 F.R.D. 75, 78-80 (E.D. Pa. 1987)).

6.   In all events, should WMH demonstrate in the future that individualized statute-of-limitations problems actually shift the balance and undercut the predominance of common issues, the district court may modify its class certification order (or even decertify the class). See Fed. R. Civ. P. 23(c)(1).

7.   Because WMH does not directly challenge the unorthodox timing of the district court's entry of partial summary judgment, we do not pass upon the appropriateness of delaying a class certification ruling until after acting upon an individual plaintiff's summary judgment motion. We note, however, that this sequencing raises serious questions, see 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 7.15, at 7-48 to -59 (3d ed. 1992); L. Stevenson Parker, Note, Reopening the Debate: Postjudgment Certification in Rule 23(b)(3) Class Actions, 66 Cornell L. Rev. 1218 (1981), and we urge district courts to exercise caution before deciding to embrace it.

---

© Lawriter Corporation. All rights reserved.

The Casemaker™ Online database is a compilation exclusively owned by Lawriter Corporation. The database is provided for use under the terms, notices and conditions as expressly stated under the online end user license agreement to which all users assent in order to access the database.