1

```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                          WESTERN DIVISION


                                - - -


MILDRED FINCH, et al.,          .  CIVIL ACTION NO. C-1-02-132
                                .
            Plaintiffs,         .  Cincinnati, Ohio
                                .
         - v -                  .  Tuesday, December 2, 2003
                                .  12:00 p.m.   Conference
GEORGE FIORINI, et al.,         .
                                .  Status Conference
            Defendants.         .
. . . . . . . . . . . . . . . . .

                     TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE SANDRA S. BECKWITH, JUDGE
    TRANSCRIPT ORDERED BY:  Dan L. Makee, Esq.

APPEARANCES:

For the Plaintiffs:     William B. Singer, Esq.
                        1 Lytle Place
                        621 Mehring Way
                        Suite 1609
                        Cincinnati, Ohio    45202

For Plf. Wagner, H.C. CCP:
                        W. Douglas Haman, Esq.
                        605 N. Wayne Avenue
                        Cincinnati, Ohio    45215

                        Timothy A. Fischer, Esq.
                        3507 Aultwoods Lane
                        Cincinnati, Ohio    45208-2522

For Plf. Teekin (Gertrude Franz) H.C. CCP:
                        Michael J. Bergmann, Esq.
                        6020 Cheviot Road
                        Cincinnati, Ohio    45247

For Defts. Guardian and Stephen Ventre:
                        Patrick J. Hanley, Esq.
                        214 East Fourth Street
                        Covington, Kentucky    41011
```

```
For Deft. Sanitec, Ltd.:
                    GOODMAN, WEISS, MILLER
                    BY:  Steven J. Miller, Esq. (By phone)
                    and  Kimberly Y. Smith, Esq. (By phone)
                    100 Erieview Plaza, 27th Floor
                    Cleveland, Ohio    44114-1882

For Deft. Sanitec, Ltd.:
                    McDONALD, HOPKINS, BURKE & HABER
                    BY:  Dan L. Makee, Esq.
                    600 Superior Avenue
                    Suite 2100
                    Cleveland, Ohio    44114-2653

                    PATTON BOGGS, LLP
                    BY:  Richard J. Oparil, Esq. (By phone)
                    2550 M Street, NW
                    Washington, D.C.   20037

Law Clerk:          Monte G. Smith, Esq.

Court Reporter:     Mary Ann Ranz

                            - - -
```

1  concern, my only reason for participation.  If we come to a
2  clearer understanding or to a stronger position or believe we
3  have something to raise with you on that point, then we will
4  raise it at that time.  But I don't believe there is anything
5  further I could add to the discussion today beyond what I've
6  said earlier --
7          THE COURT:  Okay.  Well --
8          MR. MILLER:  -- except to thank you.
9          THE COURT:  Thank you.  I guess it is the last time
10 we'll talk unless something changes.
11         MR. SINGER:  Yes.
12         THE COURT:  Bye-bye.
13         MR. MILLER:  Bye-bye.
14         MR. OPARIL:  Thank you, Your Honor.
15         THE COURT:  Okay, folks.
16         MR. HANLEY:  Thank you.
17    (At which time, 1:13 p.m., counsel appearing via
18 telephone terminated their connection and the following
19 dialogue occurred.)
20         MR. SINGER:  Your Honor, I have never had an
21 opportunity to speak to the issue of the class.
22         THE COURT:  Well, Mr. Singer, you filed a number of
23 memoranda and we just ruled on your --
24         MR. SINGER:  And I assume --
25         THE COURT:  -- new motion.

1    MR. SINGER:  I assume that you've read those.

2    THE COURT:  Of course.

3    MR. SINGER:  Because the affidavit which I filed
4  with my motion for revised class set forth the reasons why I
5  am not someone who is not incompetent to pursue a class
6  action simply because I don't have a large staff behind me.
7  You said the last time we were talking that you were simply
8  concerned I didn't have secretarial help.  I do have
9  secretarial help.  I've been married to her for -- for six
10 years, and she is at least as good as any secretary or better
11 than any paralegal that I've ever come across in getting work
12 done and understanding the litigation.  And she worries about
13 it as much as I do.  So -- and she knows all about this case.

14    The only thing I can say is, those grounds, which the
15 Court indicated, I didn't feel were well-taken.  And with due
16 respect -- and the last thing that you entered into the
17 record was -- said something about my unwillingness to
18 discuss settlement.  I was unwilling to discuss settlement
19 with Mr. Climaco and that was reciprocated by him and that is
20 why he went around and got to Mr. Fischer.  And I've been
21 willing to discuss settlement, but I think I indicated even
22 in that telephone conference on August 18th that there was
23 another settlement in the offing.

24    Yes, there are corporate control issues involved.  And
25 unless those are resolved, I don't know that there will be

1  any -- any way to settle this case with -- unless -- because
2  -- I mean, I thought that this Harkess settlement which Mr.
3  Climaco was pursuing, and which is the same one that Mr.
4  Oparil and Mr. Makee have been negotiating with Mr. Fischer,
5  I thought that that was -- there was just no way in which
6  that case -- that settlement would be acceptable to any
7  plaintiff, any investor, because -- well, for one,
8  Mr. Harkess and Sanitec West were not even a defendant in any
9  case, Your Honor. And the only case in which Sanitec,
10 Limited had been made a defendant is on the theory that since
11 the investor money was used to purchase control of that
12 company, then that company -- that that company was subject
13 to a constructive trust on behalf of the investors. That's
14 -- I'm the only one -- well, this is the only case in which
15 that theory has been advanced, Your Honor, and that's what we
16 will be shooting for at trial: Is to try to get a ruling
17 that there is a constructive trust entitlement on behalf of
18 the investors.
19    Now, if I'm only allowed to represent the individual
20 investors that are named as plaintiffs in this case, then
21 that will not be -- there will be no recovery in this
22 litigation for the vast majority of investors who are not
23 represented either by me or by Mr. Fischer or any of the
24 other people who were sitting at the table two weeks ago.
25 And I don't think that the Court would challenge my

1  competency as an attorney in this respect.  The only thought
2  that you advanced was there was some indication by me at some
3  point along the line that I did not have a staff.  I don't
4  have a big law firm behind me, Your Honor.  I don't have the
5  cash flow in my practice to afford to pay a number of people,
6  associates or otherwise.  And during the entire 28 years that
7  I practiced with law firms, Your Honor, I never, ever turned
8  over a whole case to an associate or to someone of lesser
9  experience for the simple reason that I like to do my own
10 work and I like the client -- people who come to me for
11 representation to get me and not somebody else.  And I
12 believe -- I think the Court knows my competency and my
13 experience, so on that basis alone there cannot be any
14 objection to a class.
15     The definition of the class is something we can talk
16 about.  But the only reason that you decertified the class
17 was questions you had about my ability to represent them.
18     One other thing I want to say in that regard, and it
19 occurred to me while we were sitting here two weeks ago, is
20 how did -- if I have no assistance by way of secretarial
21 help, how was I able to litigate motions for intervention in
22 Delaware, in Cleveland, and also a multi-district litigation
23 motion that was filed by Standard Life of Indiana when they
24 were defendants in this case?  As soon as I got that, I
25 picked it up, I got on the Internet and found out everything

1  I needed to find out about that within -- and within a couple
2  of days we had one out.  We had an answer to their petition
3  for multi-district litigation status.  And it's doable.
4      I work, if necessary, 24 hours a day.  I don't think I
5  have ever done it or had to do it, but I work when work is
6  needed to be done and I work all weekend, and I don't flag at
7  that because I did it for 28 years.  I worked Saturdays and
8  Sundays to get work done.  So, that's what I'm saying to you.
9      And I don't think that you're -- I mean, I respectfully
10 suggest to you, Your Honor, that your feeling that handling a
11 class action requires a law firm behind the attorney that's
12 involved, I think that is based on some sort of misconception
13 you have or have seen -- resulted in your experience in this
14 court where if you've had class actions before -- and I'm
15 sure you have in the number of years you've been on this
16 bench -- you were presented with the plaintiff counsel who
17 had substantial offices and substantial financial resources
18 behind them.  And so I -- and so I'm not faulting -- not
19 arguing with you at all.  I'm just suggesting to the Court
20 you may be laboring under some sort of misconception of the
21 ability of a sole practitioner to pursue a class action.
22         THE COURT:  All right.
23         MR. HANLEY:  I just want to -- I understood
24 Mr. Singer's comments to be that he did not think that any of
25 the investors would recover anything as a result of the --

1   the Fischer settlement, as I'll call it.
2           MR. SINGER:  Call the other one the Climaco
3   settlement or the Harkess settlement.
4           MR. HANLEY:  Well, it's the same one that Fischer's
5   advancing; correct?
6           MR. SINGER:  And it's basically terms -- it's
7   exactly the same.
8           MR. HANLEY:  But you feel this proposed settlement
9   that you have with the Weinsten group is going to generate
10  some funds; is that my understanding of your position?
11          MR. SINGER:  No, I'm not here to sell that
12  settlement.
13          MR. HANLEY:  Okay.
14          MR. SINGER:  All I'm saying, there is another
15  settlement out there and it contemplates a settlement with a
16  class and --
17          MR. HANLEY:  But do you have any belief there is
18  more of an opportunity to generate any revenues for any of
19  the class, any of the investors from those?
20          MR. SINGER:  You want me to make -- tell you what I
21  think?
22          MR. HANLEY:  Well --
23          MR. SINGER:  I'll be happy to tell you what I think
24  in front of the Court and on the record.  It's -- I met with
25  Jim Smith over coffee at the Netherland on the morning of

50

1  August 18th of this year, and he told me that he -- his
2  experience included being the CEO of something like six --
3  three or four or six, as he would put it, Fortune 100
4  companies.
5          MR. HANLEY:  It's the Smith-Weinsten group.
6          MR. SINGER:  Yeah, this is Jim Smith from
7  California, yes.
8          MR. HANLEY:  Okay.  But I also thought you indicated
9  that you felt that the only way to get anything for the
10 investors was a constructive trust.
11         MR. SINGER:  Well, my feeling is getting a construct
12 -- it's the best remedy; it follows the money as I -- as I
13 think, because there's no money to be had to execute on or
14 property that's available anywhere else except Sanitec,
15 Limited.  So --
16         MR. HANLEY:  I'm sorry --
17         MR. SINGER:  If you'd been looking at it from my
18 point of view, Pat, maybe you would have seen all this
19 months --
20         MR. HANLEY:  I'm a little confused.  The only reason
21 I asked was, I'm a little confused.  At one point I thought
22 you said the only way to recover anything was a constructive
23 trust, meaning you would take over the assets --
24         MR. SINGER:  Yeah.  If we can produce evidence that
25 will establish that the money that came from the investors

1  was used by Quatkemeyer to acquire control of Sanitec,
2  Limited, then I believe Sanitec, Limited in his hands or in
3  anybody's hands really --
4          MR. HANLEY:  Any settlement you're aware of provide
5  that?
6          MR. SINGER:  A constructive trust?
7          MR. HANLEY:  (Nodding head affirmatively.)
8          MR. SINGER:  No.
9          MR. HANLEY:  So you would have to litigate the
10 matter.
11         MR. SINGER:  Yeah.  We would litigate the
12 constructive --
13         MR. HANLEY:  I just want to make sure.
14         MR. SINGER:  But in terms of getting court approval
15 and pushing it through, it may be necessary for them to
16 agree, you know, as a formal matter to a constructive trust.
17         MR. HANLEY:  Just for the record, Your Honor, with
18 that understanding, I think that Guardian and Ventre do not
19 necessarily disagree with that point of view.
20         THE COURT:  Okay.
21         MR. SINGER:  And it's my understanding you don't
22 disagree with the revised definition of the class that I was
23 proposing, because you told me that on the phone.
24         MR. HANLEY:  That is, as I recollect, if it was
25 confined to all the people who had Guardian notes.

1          MR. SINGER:  Guardian notes and Standard Trust
2   notes.
3          MR. HANLEY:  That's correct.
4          MR. SINGER:  You agree with that?
5          MR. HANLEY:  I think that's the appropriate class.
6          MR. SINGER:  Yeah.  Okay.  We don't go back to IGW
7   Trust or any of the other B.S.
8          MR. HANLEY:  And I may just -- I don't necessarily
9   believe, Your Honor, that the criminal case is associated
10  with the facts in this case.
11         THE COURT:  Okay.
12         MR. HANLEY:  The criminal case against Fiorini I
13  think is mostly that, IGW, which kind of is a predecessor to
14  the Guardian case and was his own Ten Percent Income Plus
15  Plan.  So, the facts of this case I don't think are
16  necessarily at play in that criminal case.
17         THE COURT:  Okay.
18         MR. SINGER:  Now, if we're going to proceed in this
19  case to litigation, I would respectfully ask the Court to
20  recertify the class to include Guardian and Standard Trust
21  investors and we be permitted to go forward in that respect
22  to a trial or settlement of this case, because as far as Mr.
23  Smith and Mr. Weinsten are concerned, I think they're both
24  knowledgeable enough to realize that they need a class
25  settlement and the class needs to consist of those people