53

1  whose money was used to purchase control of Sanitec.
2          THE COURT:  Who is it you think sees it as a class
3  settlement?
4          MR. SINGER:  Smith and Weinsten.
5          THE COURT:  Okay.
6          MR. SINGER:  Weinsten, remember, is an attorney by
7  education, although he was disbarred for having pled guilty
8  to some federal offense some years ago, or found guilty to
9  some federal offense.
10         THE COURT:  Okay.  Well, while we're engaging in a
11 stream of consciousness sharing, my problem is that aside
12 from your being a sole practitioner, Mr. Singer --
13         MR. SINGER:  Yes, Your Honor.
14         THE COURT:  -- you've just said you don't have the
15 funds to go out and take Mr. Quakemeyer's deposition.  Now,
16 I, under the rules, must consider whether or not the
17 plaintiffs and plaintiffs' counsel have the resources
18 necessary to aggressively pursue the rights of an entire
19 class.
20         MR. SINGER:  But these plaintiffs I have -- I don't
21 know how many named plaintiffs are in this case, probably ten
22 or 12, and they all know I'm gonna at some point have to ask
23 them to contribute to an expense fund.  And it's time for me
24 to make that -- to do that, because -- not only do I need to
25 do that in that case, but I have another case pending before

1  Judge Nadel in which I'm scheduled to take depositions this
2  Friday. So, I'm gonna have to be sending out a mailing to my
3  folks asking for contributions, so we'll -- and we'll see. I
4  think that will work out okay. Each of them gave me a
5  retainer to start the case. I won't tell you how much,
6  unless you want to know.
7            THE COURT: (Shakes head negatively.)
8            MR. SINGER: But they each gave me a retainer to
9  start the case, so they're all people of some means. They're
10 not wealthy individuals and none of them could afford to lose
11 this money, Your Honor.
12           THE COURT: Well, but, what you're asking me to do
13 is place the financial fates of a lot of people in your hands
14 and the hands of your named plaintiffs.
15           MR. SINGER: Your Honor, I'm not asking to do this
16 for my sake, but I just don't see how this case really can or
17 should proceed any other way except for a class.
18           THE COURT: Well, I think that's the ideal solution,
19 too, in a generic sense.
20           MR. SINGER: Do you have -- do you have anyone else
21 who you think would be superior?
22           THE COURT: In a perfect world, all of plaintiffs'
23 counsel would come together in a single lawsuit and we'd have
24 a plaintiffs' counsel committee and --
25           MR. SINGER: Fine. You want to add Tim Fischer to

```
 1  it, that's fine, but Tim Fischer practices out of his house
 2  in Mt. Lookout and is a sole practitioner as far as I'm
 3  concerned.  At one time he was associated with Bob -- well, I
 4  can't --
 5          MR. HANLEY:  Manley.
 6          MR. SINGER:  Manley.  Excuse me.
 7          THE COURT:  Well, here's another concern that I
 8  have.  I understand your constructive theory --
 9          MR. SINGER:  Yes.
10          THE COURT:  -- and it's logical to a point.  But
11  suppose we follow that to its logical conclusion:  Who and
12  how would a plaintiffs' class implement the patent's
13  commercialization?  Through whom and how?  I mean, let's just
14  say you prevail and you say, "By golly, we've got a
15  constructive trust.  Here's our patent, Plaintiffs' Class."
16  Where do you go from there?
17          MR. SINGER:  Well, initially I thought, Well,
18  there's a market out there for this company.
19          THE COURT:  Well, it's not a company; it's just a
20  patent.  I mean --
21          MR. SINGER:  Well, it's a process.
22          THE COURT:  As I understand -- but you're not
23  getting --
24          MR. SINGER:  Whatever company owned or had control
25  of the patents lawfully would be able to -- would be
```

1  marketable. And that was my thought: That someone might be
2  willing to pay several million dollars for this company. And
3  now, as far as I know, what's going on now is Smith and
4  Weinsten have some backers now. They're not going to buy the
5  company as such, but what they want to do is enter into a
6  similar arrangement in terms of paying a royalty on sales of
7  the Sanitec machines which they intend to produce and market
8  worldwide. That's what they tell me, which is something more
9  than Mr. Harkess ever said he would do.
10         THE COURT: Do we have -- do you have any reason to
11  think that Harkess is not being forthcoming with you? We at
12  least know -- is it Mr. Smith or Mr. Weinsten that has the
13  federal conviction?
14         MR. HANLEY: Weinsten.
15         THE COURT: Weinsten. (Continuing) Would give me
16  serious pause as far as vesting my confidence there.
17         MR. SINGER: I'm not suggesting that your confidence
18  has to be in Weinsten, Your Honor. I'm not suggesting your
19  confidence has to be in anyone but me, because you know me
20  and because you know I'm a lawyer of good standing in this
21  community.
22      But, you know, why would you -- I'm not suggesting that
23  you do anything but recertify the class or the class in the
24  -- with the proper definition that we suggested. You don't
25  have to approve a settlement at this point because there's

57

1  none before you. No one's asking you to approve it. There
2  are no competing settlements here.
3           THE COURT: Au contraire. There is a competing
4  settlement. That's my next point. We've got a group of
5  plaintiffs who would be swept up into a class that you
6  propose --
7           MR. SINGER: Yes.
8           THE COURT: -- who are represented by other
9  attorneys, who are before other courts, who have negotiated a
10 settlement. What right do I have to say to those people,
11 "Despite the work that your attorneys have done for you and
12 the courts that you chose to litigate in and the settlement
13 that you've reached, I'm going to just pull the rug out from
14 under you and tell you, you have to come into my court and
15 you have to negotiate with Mr. Smith and Mr. Weinsten and not
16 have the benefits of the settlement that you've negotiated up
17 to this point?"
18          MR. SINGER: Your Honor, I'm not going to -- I will
19 say this: I will say that in my opinion, that settlement
20 isn't worth a -- worth a dime.
21          THE COURT: Well, let's -- that's another concern.
22 You're betting your clients' claims.
23          MR. SINGER: I'm not proposing this settlement to
24 the Court.
25          THE COURT: I know.

58

1        MR. SINGER: And I'm gonna have to give notice to
2  all the members of the class anyway. If they like the idea
3  of getting a total of $4 million as opposed to 3.5 million
4  and getting 60,000 per unit rather than just 50,000 per unit
5  and 2 percent of whatever Mr. Harkess generates in the
6  operation of Sanitec West using the Sanitec technology
7  according to his own accounting and his own whims, then, you
8  know, I think this is -- this perhaps is a better settlement.
9  I don't know.
10       The only thing I can say is, I know that Smith has
11 assured me -- and I'm talking Smith now; you can forget about
12 Weinsten; you don't have to worry about him, although he is
13 the one I've been talking about. But Smith assures me he has
14 the wherewithal by virtue of experience and knowledge of the
15 business world, by virtue of having financial backing, to
16 pursue a very profitable exploitation of the Sanitec
17 technology through Sanitec, Limited, or some other company;
18 whichever company that may be, I don't know. He has his own
19 company, which I guess he wants to be able to use for this
20 purpose. But in any event, I can only say it's my opinion
21 that he's a more impressive individual than Mr. Harkess. And
22 that's quotable, I suppose, and I'll never hear the end of it
23 now that I've said it. But --
24       THE COURT: But you're betting your clients' claims
25 on guessing as to who has the authority to commercialize this

59

1  patent and/or who owns the patent.
2         MR. SINGER:  I don't want to bet my clients' claims
3  on something that's -- you know, that's unknown.  The only
4  thing I know I can think of is that these gentlemen seem to
5  be un -- less, you know -- much more in the know than
6  Mr. Harkess, who refused to give me financial statements of
7  Sanitec West.
8         THE COURT:  Have you gotten financial statements
9  from Mr. Smith or Mr. Weinsten?
10        MR. SINGER:  I have asked them not for financial
11 statements, but they have said they would provide me with
12 quarterly financial statements of, you know, whatever.  And
13 that's -- that might be a part -- I think that is part of the
14 Harkess settlement, too.
15      But in any event, it's not a settlement which -- I mean,
16 this settlement -- seems to me that these people may be much
17 more trustworthy and more competent, if I could use that
18 word, to exploit this technology.  And that's why I -- well,
19 and then they came to me with it and they said it's better
20 than, you know -- we want to come up with a fairer settlement
21 than the one that's presently on the table.  And I said,
22 "Fine, let's hear it," and so it came.  Took a while, but it
23 came.
24        THE COURT:  What is their motivation for doing that?
25        MR. SINGER:  The only motivation that I can see is

1  that they both know Harkess and they don't want to have him
2  exploiting this technology. They think it's a technology
3  that's worth exploiting that can be profitably -- can be made
4  into a profitable operation, and they think that their
5  personal knowledge of Harkess is such that they are totally
6  -- they totally lack any confidence that he can do the job.
7  But Smith thinks that he can do the job.
8          THE COURT: The other cases are going to go on to
9  settlement.
10         MR. SINGER: Let them go, if that is what they want
11 to do.
12         THE COURT: I have no authority to stay that.
13         MR. SINGER: No.
14         THE COURT: We may end up with inconsistent results
15 because of the way this is going. It wouldn't be the first
16 time, I suppose. But I just see a long, hard row to hoe
17 here. And I'm not prepared to say that you're wrong and
18 they're right or vice versa, but, you know, it does make you
19 wonder when all the other plaintiffs are settling on a
20 certain basis and you and your clients are not.
21         MR. SINGER: Let me just tell you something, Your
22 Honor, and this is -- I'm not talking out of turn here at
23 all. The whole motivation for settling on the basis of which
24 they're talking about is that they think that's the only way
25 that they'll -- that there's any hope. I say there's no hope

1  there.  And I've been looking for something that provided
2  more hope of getting my clients' money.  And if this, which
3  Mr. Smith has just faxed to me, is -- if that works out, I
4  think it's probably got a better chance of working out than
5  the other one, because I wasn't impressed with Harkess,
6  especially when he wouldn't give me financial statements.
7  I'm not saying it's taken so long for people to get me their
8  settlement proposal that I really wonder what's going on with
9  them sometimes, but I'm prepared to wait and see if we can
10 get it settled, and in the meantime proceed through the
11 discovery in this case and get this case ready for trial.
12      I prefer to proceed with a class plaintiff, Your Honor,
13 because I think it's more -- it's a better way to get
14 recovery for those vast unrepresented folks who are out there
15 who haven't gotten a lawyer yet and whose lawyers haven't
16 filed suit for them.
17         THE COURT:  Okay.  Mr. Hanley, anything you want
18 to --
19         MR. HANLEY:  No, Your Honor.
20         THE COURT:  -- add to this discussion?  Mr. Makee?
21         MR. MAKEE:  I have nothing to add on that.
22 Mr. Oparil's been much more involved in the negotiations.  I
23 have not been involved.  But I would request that if there be
24 any consideration to recertifying the class, that we get an
25 opportunity to at least brief the issue, argue it in some

```
 1  fashion.
 2          THE COURT:  Well, if you want to make a motion,
 3  Mr. Singer, set it out exactly what you propose.  I'll
 4  consider it.  But --
 5          MR. SINGER:  I will file it.
 6          THE COURT:  But my last Order listed more than just
 7  your status as a sole practitioner as concerns in terms of
 8  whether a class should be certified.
 9          MR. SINGER:  I think --
10          THE COURT:  I suggest you address those issues in
11  your memorandum.
12          MR. SINGER:  I'll try.  I'll do what I can, Your
13  Honor.
14          THE COURT:  All right.  I'm sorry, Mr. Hanley --
15          MR. HANLEY:  No, I have nothing further.
16          THE COURT:  -- I cut you off.  Okay.  All right,
17  folks.  We'll put the Scheduling Order on and --
18          MR. SINGER:  All right, Your Honor.  And there will
19  be a motion filed.  Filed hopefully within a week.
20          THE COURT:  Look for action.          (1:38 p.m.)
21                          - - -
22                    PROCEEDINGS CONCLUDED
23                          - - -
24
25
```