1998 WL 834366                                              Page 1
(Cite as: 1998 WL 834366 (S.D.N.Y.))

H
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

In re: AVON SECURITIES LITIGATION

No. 91 CIV. 2287(LMM).

Nov. 30, 1998.

MEMORANDUM AND ORDER

MCKENNA, D.J.

*1 Plaintiffs, who were granted leave to intervene as substitute class representatives after the withdrawal of the original class representative in March 1995, now move for an order, pursuant to Rules 23(a), (b)(3) and (c)(1), permitting this action to proceed as a class action with plaintiffs as representatives of three plaintiff classes.

The Consolidated Amended Class Action Complaint ("Compl.") asserts four causes of action against defendant Avon Products, Inc. ("Avon") arising out of its issuance in 1988 of a new series of stock entitled Preferred Equity-Redemption Cumulative Stock ("PERCS"). Plaintiffs charge Avon with breach of contract, breach of the covenant of good faith and fair dealing, and violations of Section 10(b) and Rule 10b-5 of the Securities and Exchange Act of 1934, arising out of Avon's refusal to exercise Accelerated Redemption of the PERCS in accordance with the terms of their governing agreements, its alleged false and misleading statements and omissions in the PERCS's offering materials, and its alleged fraudulent manipulation of the market price of its common stock and redemption price of the PERCS.

For the reasons stated below, plaintiffs' motion for class certification is granted.

I. BACKGROUND

The facts underlying the claims in this action are summarized in the Court's order denying Avon's motion for summary judgment. *See* 1993 WL 126427 (S.D.N.Y. April 1, 1993) (Leisure, J.). For purposes of this motion, the relevant facts are as follows.

A. The History of this Litigation

In June of 1988, the PERCS were issued as part of a restructuring program undertaken by Avon, pursuant to which Avon decided to reduce the annual cash dividend on its common stock from $2 to $1 per share. Avon offered to exchange the PERCS, on a share-for-share basis, for up to 18 million of its common shares. (Compl.¶¶ 11-12).

The terms of the PERCS were spelled out in an amendment to Avon's Certificate of Incorporation and in an Offering Circular ("the Agreements"). They provided for three possible means of redemption of the PERCS. First, under so-called "Optional Redemption," Avon could, at any time prior to September 1, 1991, redeem the PERCS at certain fixed call prices, either in cash or its equivalent in common shares. (*Id.* ¶ 32). Second, under "Accelerated Redemption," in the event that Avon, prior to September 1, 1991, should pay any cash dividend at a "cumulative rate per annum equal to or greater than $1.50 per share," the PERCS holders would be entitled to a one-for-one share of PERCS for common stock, in addition to the payment of a specified premium plus accrued and unpaid dividends. (*Id.* ¶ 31). Third, under "Final Redemption," on September 1, 1991, each share of PERCS would be exchanged for one share of common stock if the PERCS had not previously been redeemed under either Optional or Accelerated Redemption. (*Id.* ¶ 30). The Exchange Offer for the PERCS was fully subscribed, and as of July 1, 1988, the 18 million PERCS were traded on the New York Stock Exchange. (*Id.* ¶ 16).

*2 On February 7, 1991, Avon declared a first quarter common stock dividend of $.35 per share payable on March 1 and indicated that in the future it would continue to declare and pay such regular quarterly dividends. It also declared a special dividend of $3.00 per share to be paid in September 1991 to all shareholders of record on September 4, 1991. (*Id.* ¶ 18). Plaintiffs argue that Accelerated Redemption was triggered either by the February 7 declaration of these dividends or by the March 1 payment of the $.35 dividend at a cumulative rate per annum in excess of $1.50 per share. (*Id.* ¶ 18). Also on February 7, Avon announced that it had decided against "immediate redemption of the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

PERCS because Avon should preserve the opportunities offered by the optional redemption rights." (*Id.* ¶ 44).

After Avon's February 7 announcement, various PERCS holders, including Wertheim Schroeder & Co., Inc. ("Wertheim"), demanded that Avon redeem the PERCS pursuant to the Accelerated Redemption provision in the Agreements. (*Id.* ¶ 44; Pls.' Mem. of Law at 3). Avon rejected this demand, asserting that Accelerated Redemption had not been triggered. On June 3, 1991, Avon exercised Optional Redemption of all PERCS "at a substantially lesser value than the one-for-one exchange rate plus a premium required by Accelerated Redemption." (Compl.¶ 18). [FN1]

> FN1. Because of the formula used to calculate the amount of common stock exchanged for each PERC under Optional Redemption, PERCS owners received only 0.719796 shares of common stock for each PERC and no premium. (*Id.* ¶ 49).

On April 3, 1991, Wertheim filed a complaint against Avon and commenced an action as named plaintiff on behalf of the class of purchasers of PERCS damaged by Avon's alleged failure to comply with the Accelerated Redemption provision in the Agreements. [FN2] Avon's subsequent motion for summary judgment was denied by Judge Leisure on April 1, 1993. *See Wertheim Schroeder & Co., Inc. v. Avon Products, Inc.,* 1993 WL 126427 (S.D.N.Y. April 1, 1993). Wertheim filed a second Amended Class Action Complaint on February 17, 1994, and shortly thereafter, moved for class certification.

> FN2. Wertheim's original complaint was filed on its own behalf; the following day it filed an amended complaint adding class allegations.

In March 1995, for reasons that are not relevant to this motion, Wertheim withdrew as class representative and withdrew its pending motion for class certification. Until that time, Wertheim had been represented by Fulbright & Jaworski ("Fulbright") and specifically by Marc Dreier, a partner at Fulbright and lead counsel for Wertheim and the putative class. At a status conference on March 7, 1995, Fulbright announced Wertheim's request to withdraw from the action and requested one-month's time to locate substitute class representatives. Judge Leisure granted this request, indicating that efforts should first be made to locate suitable substitute plaintiffs from among the entities that had already appeared in the action in some form, before resorting to "canvassing" all members of the putative class. (3/7/95 Tr. at 13-14). Fulbright and Mr. Dreier, who in the meantime had left Fulbright and joined the firm of Duker & Barrett, undertook efforts to locate substitute class representatives.

B. The Putative Representatives

*3 There are seven putative class representatives who now seek class certification. Two of the seven--Ms. Jennings and Mr. Pierce--were brought into the action by Fulbright. Ms. Jennings, in her capacity as co-trustee under the will of her mother, acquired 24 PERCS in Avon's 1988 Exchange Offer, and acquired 24 more in the same manner in her capacity as co-trustee of a trust for the benefit of her father; she held the PERCS until they were redeemed by Avon on or about June 3, 1991. (Compl.¶ 2). Fulbright had handled the probate proceedings of Jennings's mother's will. (Jennings Dep. at 27). After the March 7 conference, a partner at Fulbright called Ms. Jennings to advise her that Wertheim had withdrawn as plaintiff and that substitute plaintiffs were needed to continue the action. Although she had previously been unaware of the litigation, Ms. Jennings said that she would be willing to serve as a plaintiff and authorized Fulbright to substitute her as a class representative. (*Id.* at 27-30).

Mr. Pierce, a resident of Texas, purchased 400 PERCS on the open market on June 13, 1990 and held them until selling them on the open market on May 2, 1991. (Compl.¶ 3). Mr. Carrell of Fulbright approached Mr. Pierce to discuss the litigation and Wertheim's withdrawal. Mr. Pierce and Mr. Carrell were friendly because they were both members of the same country club and because Fulbright had previously represented Mr. Pierce's architectural firm. (Pierce Dep. at 4-5). After reviewing documents outlining the case, Mr. Pierce retained Fulbright and agreed to be substituted as class representative. (*Id.* at 7-9).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 834366                                                                    Page 3
(Cite as: 1998 WL 834366 (S.D.N.Y.))

The two plaintiffs currently represented by Mr. Dreier--Edward Robinson and Lee H. Simmons III--are co-trustees of a trust created by the will of Mr. Simmons's father, which acquired 700 PERCS in the 1988 Exchange Offer and held them until redemption by Avon on June 3, 1991. (Compl.¶ 4). The two men were brought into the action after Mr. Dreier contacted their financial advisor, Philip Oppenheimer, whom Dreier knew to have clients who held PERCS. (Oppenheimer 11/7/95 Dep. at 5-8). Mr. Oppenheimer had previously supported Wertheim's prosecution of the action, had submitted an affidavit in opposition to Avon's motion for summary judgment in 1993 (see Weinstein Decl. Ex. I), and had been deposed in the action. (See Weinstein Decl. Ex. J). Although prior to Mr. Dreier's call, Simmons and Robinson had been unaware of the litigation, they subsequently retained Dreier's firm and moved to intervene.

Plaintiff Robert Rosenbaum acquired 285 PERCS in July 1988 through an exchange of Avon common stock and held them until redemption by Avon on June 3, 1991. (Compl.¶ 5). He, too, was brought into the action through Mr. Oppenheimer, his investment advisor, who put him in touch with Mr. Lowey of the Lowey, Dannenberg firm. (Rosenbaum Dep. at 18-20).

Plaintiff Elliott Associates, L.P. ("Elliott") is a limited partnership engaged in the business of investing for its own account. (Compl.¶ 1). Elliott purchased 20,000 PERCS in the open market on February 7, 1991 and an additional 10,000 PERCS on February 12, 1991. (Id.). It held these shares until selling them on the open market at various times between February 21, 1991 and April 3, 1991. (Id.). Elliott apparently had been monitoring this litigation while it was being prosecuted by Wertheim, and submitted an affidavit in opposition to Avon's summary judgment motion. (See Weinstein Decl. Ex. M). In addition, its general partner, Paul Singer, was deposed by Avon in March 1992, where he was represented by Mr. Parker of the Kleinberg, Kaplan firm. (See Weinstein Decl. Ex. A). After Wertheim withdrew from the action, one of the lawyers from Kleinberg contacted Mr. Singer. Although Singer was unsure who suggested that he be substituted for Wertheim, he authorized Mr. Parker to file an intervention motion on his behalf. (Singer Dep. at 28-29; Pls.' Reply Mem. at 8).

*4 Finally, plaintiff the Much Shelist Freed Dennenberg & Ament, P.C. Profit Sharing Plan & Trust ("Much Shelist") is a trust for the benefit of the employees of the Much Shelist law firm. (Ament Dep. at 7-8). It learned of this litigation through a May 16, 1995 article in the Wall Street Journal and a discussion with one of the firm's partners, who had done business with Mr. Haber of Shapiro Grace Haber & Urmy. (Ament Dep. at 21-24). Mr. Haber called to ask if the firm had any clients who had held PERCS, and Mr. Ament told him that the trust did. (Ament Dep. at 20). The Much Shelist Trustees subsequently retained Mr. Haber's firm and moved to intervene on August 22, 1995. Their motion was granted on September 6, 1995 and they joined in plaintiffs' motion for class certification.

The Court granted plaintiffs' motions to intervene on June 12, 1995 and they filed the Consolidated Amended Class Action Complaint on June 30, 1995. The complaint asserts four causes of action on behalf of three classes of plaintiffs. Class 1 consists of all record holders and/or beneficial owners of PERCS as of February 15, 1991 and/or their successors in interest. Class 2 consists of all purchasers of PERCS who acquired them either in the Exchange Offer or on the open market before Avon's announcement on February 7, 1991, that it would redeem the PERCS by Optional rather than Accelerated Redemption. Class 3 consists of all sellers of PERCS after February 7, 1991, either on the open market or through Avon's redemption of the PERCS on June 3, 1991, who also were record holders and/or beneficial owners before Avon's announcement on February 7, 1991. (Compl.¶ 20).

Plaintiffs now move for an order certifying the above classes and appointing them as class representatives. Avon opposes class certification on the grounds that: (1) the plaintiffs are not adequate representatives because (a) they are not familiar with the case and have not taken an active role in this litigation and (b) are relying entirely on counsel who improperly solicited them; (2) one plaintiff--Elliott Associates--is an inadequate representative because it is subject to unique defenses due to its status as a sophisticated investor and its lack of reliance on any alleged misstatements or omissions; (3) there are inherent conflicts within the classes that make class certification inappropriate; and (4) there is no substantial class of aggrieved PERCS owners.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 834366  
(Cite as: 1998 WL 834366 (S.D.N.Y.))

Page 4

## II. DISCUSSION

At the outset, it should be noted that the Second Circuit favors the use of class actions for the resolution of securities law claims, in particular those brought under Rule 10b-5. *See Green v. Wolf,* 406 F.2d 291, 298 (2d Cir.1968) (noting importance of class action device in enforcing securities laws where large number of investors may have been injured, but no one person would be damaged to the degree inspiring him to initiate suit individually), *cert. denied,* 395 U.S. 977 (1969); *Maywalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. 51, 54 (S.D.N.Y.1993) (noting that the Second Circuit has "explicitly noted its preference for class certification in securities cases and the importance of such certification for small securities holders throughout the country"). In light of the importance of the class action device in securities litigation, courts in this circuit apply Rule 23 according to a liberal standard. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 179 (2d Cir.1990), *cert. denied,* 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991); *Korn v. Franchard Corp.,* 456 F.2d 1206, 1208-09 (2d Cir.1972); *Maywalt,* 147 F.R.D. at 54.

*5 In order to certify this action as a class action, the Court must first find that all of the requirements of Rule 23(a) have been met, and if so, determine whether one of the requirements of Rule 23(b) has been satisfied. *See In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 290 (2d Cir.1992). Decisions regarding class action certification are to be based on the allegations set forth in the complaint, which are accepted as true, *see Shelter Realty Corp. v. Allied Maintenance Corp.,* 574 F.2d 656, 661 n. 15 (2d Cir.1978), and not on an inquiry into the merits of the plaintiffs' claims. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Maywalt,* 147 F.R.D. at 54; *Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 94 (S.D.N.Y.1981).

### A. Rule 23(a) Requirements

#### 1. *Numerosity*

Certification of a class action is appropriate when "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Precise calculation of the number of class members is not required. *See Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993); *Maywalt,* 147 F.R.D. at 54. In general, "numbers in excess of forty, particularly those exceeding one hundred or one thousand have sustained the requirement." 3B James W. Moore et al., *Moore's Federal Practice* at 23-143 to 23-145 (2d ed.1987); *see Korn,* 456 F.2d at 1209 (class of 70 members satisfied numerosity requirement); *Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 198 (S.D.N.Y.1992) (class numbering more than forty satisfies requirement). Furthermore, joinder of all members need not be impossible, but only impracticable in the sense that joinder would "needlessly complicate and hinder efficient resolution of the litigation." *Trief,* 144 F.R.D. at 198; *see Maywalt,* 147 F.R.D. at 55.

There is no doubt that the numerosity requirement has been met in this case. Although the plaintiffs do not know the precise number of members in each class, the complaint alleges that there were 18 million PERCS in circulation before redemption and "at least hundreds, if not thousands, of beneficial owners and record holders." (Compl.¶ 21). Plaintiffs estimate that each class includes more than several thousand members, based on information provided to them by Avon. (Pls.' Mem. of Law at 9). These numbers are sufficient to make joinder of all members impracticable.

#### 2. *Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members." *Trief,* 144 F.R.D. at 198; *see also Kamean v. Local 363, Int'l Bhd. Of Teamsters,* 109 F.R.D. 391, 394 (S.D.N.Y.1986); *Dura-Bilt,* 89 F.R.D. at 93 ("Rule 23(a)(2) requires only that questions of law or fact be shared by the prospective class, although not all questions of law or fact raised need be common.").

*6 The commonality requirement is met in this case. With regard to plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing, which are asserted on behalf of Class 1, common questions include: (1) whether Avon breached its contractual obligation to redeem the PERCS according to the Accelerated Redemption provision; (2) whether it breached the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 834366  
(Cite as: 1998 WL 834366 (S.D.N.Y.))

Page 5

covenant of good faith and fair dealing; and (3) whether plaintiffs suffered damages of a certain amount by reason of the foregoing. (*Id.* ¶ 22). As for the Section 10(b) and Rule 10b-5 claims, which are asserted on behalf of Classes 2 and 3, common questions of law and fact also exist. Questions common to Class 2 include: (1) whether Avon knowingly or recklessly disseminated materials in connection with the offering of the PERCS that contained false and misleading statements or omissions of material fact concerning their redemption; (2) whether it thereby violated the federal securities laws; and (3) whether the class sustained a certain amount of damages as a result. (*Id.*). Questions common to Class 3 include: (1) whether Avon purposefully manipulated the price of its common stock in order to lower the redemption price of the PERCS; (2) whether it thereby violated the securities laws; and (3) whether the class sustained a certain amount of damages as a result. (*Id.*). The Court finds that these common questions are sufficient to satisfy Rule 23(a)(2).

3. *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The typicality requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Drexel Burnham,* 960 F.2d at 290; *see also Dura-Bilt,* 89 F.R.D. at 99 (proper inquiry is "whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct"). While the "mere existence of individualized factual questions" as to the claims of the class representatives will not bar class certification, the Court may deny certification where the class representatives are "subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic,* 903 F.2d at 180; *see also RMED Int'l, Inc. v. Sloan's Supermarkets,* 1996 WL 134757, at *4 (S.D.N.Y. Mar.25, 1996). However, this rule is not "rigidly applied in this Circuit"; rather, "a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members." *Trief,* 144 F.R.D. at 201; *see also In re Frontier Insur. Group Securities Litig.,* 172 F.R.D. 31, 41 (E.D.N.Y.1997); *Langner v. Brown,* 1996 WL 709757, at *3 (S.D.N.Y. Dec.10, 1996).

*7 Avon argues that plaintiff Elliott Associates's claims are not typical of the class because it is subject to two defenses that are not generally available against the class: (1) that it could not have relied on plaintiffs' interpretation of the redemption provisions because it purchased PERCS after it knew that they would not be redeemed under Accelerated Redemption; and (2) that it failed to meet the standard of due diligence to which it is held as a sophisticated investor. The Court finds that neither objection warrants the denial of plaintiffs' motion.

(a) *Lack of Reliance*

Individual questions of reliance are generally insufficient to defeat class certification. *See Korn,* 456 F.2d at 1212; *Green,* 406 F.2d at 301; *In re AM Int'l,* 108 F.R.D. at 194. Moreover, there is a rebuttable presumption of reliance in cases alleging fraud on the market. *See Affiliated Ute Citizens v. U.S.,* 406 U.S. 128, 153-54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *In re AM Int'l,* 108 F.R.D. at 194. However, courts have held that where it is evident that a proposed class representative definitely did not rely on the allegedly misleading statement or on the integrity of the market, he is subject to unique defenses and therefore an inappropriate class representative. *See, e.g., Kamerman v. Ockap Corp.,* 112 F.R.D. 195, 198 (S.D.N.Y.1986) (proposed representative's admission that he learned of the alleged omissions and misstatements before merger vote and did not rely on proxy statements subjected him to unique defenses); *Greenspan v. Brassler,* 78 F.R.D. 130, 132 (S.D.N.Y.1978) (proposed representative purchased after disclosure of adverse news and relied on recommendation of brother, who had not relied on integrity of market). Specifically, one who purchases securities after the alleged fraud has been disclosed may be subject to unique defenses and therefore unable to satisfy Rule 23(a)'s typicality requirement. *See Kovaleff v. Piano,* 142 F.R.D. 406, 408 (S.D.N.Y.1992) (plaintiffs who increased their holdings of company's stock after disclosure of alleged fraud were subject to unique defenses and thus atypical); *In re AM Int'l,* 108 F.R.D. at 194 (plaintiffs who bought stock after announcement of expected losses were subject to unique defenses and

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 834366                                                                                              Page 6
(Cite as: 1998 WL 834366 (S.D.N.Y.))

therefore atypical). However, the mere fact that one relied on information other than the integrity of the market will not render his claims atypical absent evidence that he was somehow privy to information not available to other investors. *See In re AM Int'l,* 108 F.R.D. at 195 ("The fact that a purchaser may also have considered a number of other factors in making his decision to purchase does not render him subject to a unique defense, so long as he substantially or significantly relied upon either the challenged statements or the integrity of the market."); *In re Frontier,* 172 F.R.D. at 42-43 (fact that proposed representative continued to buy stock after disclosure of alleged misrepresentation in attempt to recoup losses had no bearing on whether or not she relied on integrity of market during class period).

*8 Avon argues that Mr. Singer's deposition testimony reveals that Elliott purchased PERCS on February 12, 1991 after reading a press release stating that Avon would not exercise Accelerated Redemption and is therefore subject to the unique defense of non-reliance. [FN3] It is not clear to the Court, however, that Avon's reading is correct. While Singer acknowledged that "there is a possibility that [these PERCS were] bought knowing that there was going to be just the optional redemption," (Singer Dep. at 64), he expressed confusion about the timing of the purchase as it related to his reading of the press release, (*see id.* at 53-54, 64), and expressly stated that he believed at the time of purchase that there was going to be Accelerated Redemption. (*Id.* at 55-56, 64). When questioned by his attorney, Singer confirmed that "I strongly believe ... I bought that 10,000 shares ... before we knew that Avon had definitively decided not to acceleratedly-redeem the PERCS." (*Id.* at 67). In addition, Singer testified that he decided to buy PERCS on February 7 after Avon announced its dividends and after looking at the Broad tape and reading the governing Agreements. (Singer Dep. at 49-50). It is therefore evident that he relied, at least in part, on the alleged misstatements and/or the integrity of the market. Furthermore, the fact that Elliott received advice from its broker, and that it attempted to contact Avon or Morgan Stanley to see if its interpretation of the Agreements was correct, does not suggest that Elliott could not have relied on the expectation that Avon would exercise Accelerated Redemption. *See Frontier,* 172 F.R.D. at 42 (plaintiffs' reliance on advice of broker who had telephoned defendant's offices to inquire about company did not render them atypical absent claim that they thereby received inside information). On the contrary, Singer's testimony indicates that his purchase was made with the belief, based on his reading of the Agreements and the actions taken by Avon, that Avon was obligated to exercise Accelerated Redemption in accordance with the terms of the Agreements. (*See* Singer Dep. at 61-64).

> FN3. Of course, reliance is not an issue with regard to plaintiffs' contract-based claims and no challenge is made regarding Elliott's typicality as to these claims.

Therefore, because the Court cannot conclude that Elliott bought with knowledge of Avon's determination not to exercise Accelerated Redemption, and because Avon has not shown that Elliott was privy to any inside information which would establish its lack of reliance, there is no basis for the Court to find that Elliott's claims are atypical on this ground.

(b) *Sophisticated Investor*

Nor does Elliott's sophistication subject it to a due diligence obligation or otherwise render its claims atypical of the class.

A plaintiff's sophistication as an investor generally is irrelevant to whether or not his claims are typical of the class where subjective reliance is not an issue in the case. *See RMED Int'l,* 1996 WL 134757, at *4 ("[T]he fact that plaintiff is a sophisticated investor 'is not a particularly relevant factor in suits ... where subjective reliance is not an issue.' ") (quoting *Kovaleff v. Piano,* 142 F.R.D. 406, 508 n. 5) (S.D.N.Y.1992)); *Koenig v. Benson,* 117 F.R.D. 330, 335-36 (E.D.N.Y.1987); *In re Gulf Oil/Cities Serv. Tender Offer Litig.,* 112 F.R.D. 383, 387-88 (S.D.N.Y.1986) (plaintiffs' sophistication did not render their claims atypical; "[t]he securities laws afford protection to all investors, both sophisticated and unsophisticated"); *Michaels v. Ambassador Group, Inc.,* 110 F.R.D. 84, 88 (E.D.N.Y.1986) (rejecting claim that plaintiff's sophistication rendered him atypical, because "[i]f the defendants perpetrated a fraud on the market, then even the most sophisticated investor would be deceived"). Because the fraud on the market theory allows for a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 834366  
(Cite as: 1998 WL 834366 (S.D.N.Y.))

Page 7

rebuttable presumption of reliance at the class certification stage, investor sophistication is largely irrelevant to the issue of class certification. [FN4] See *Kalodner v. Michaels Stores, Inc.,* 172 F.R.D. 200, 20 (N.D.Tx.1997) (fraud on the market theory permits reliance to be presumed at class certification stage, and presumption applies equally to "a professional investor, the class members as amateurs, and indeed, those who choose stock by means of a ouija board or by throwing darts at the list") (quoting *Kolin v. American Plan Corp.,* 1986 WL 36311, at *9 (E.D.N.Y. April 8, 1986)); *RMED Int'l,* 1996 WL 134757, at *4 (plaintiff's sophistication insufficient to defeat certification in fraud on the market case); *Koenig,* 117 F.R.D. at 335 (reliance presumed in fraud on market case, and "such a fraud could deceive both sophisticated and unsophisticated investors identically by inflating the price in an impersonal market").

> FN4. There is at least one decision from this district finding investor sophistication relevant, even in a class action based on a fraud on the market theory, because the presumption of reliance is rebuttable. *See, e.g., In re Harcourt Brace Jovanovich, Inc. Securities Litig.,* 838 F.Supp. 109, 113-14 (S.D.N.Y.1993) (permitting discovery into plaintiff's investment history because named plaintiff's sophistication is relevant to issue of reliance in fraud-on-market case). In this case, however, the Court finds Elliott's alleged sophistication to be irrelevant on the issue of class certification, particularly in light of Avon's failure to point to any information to which Elliott had access that was not generally available to other investors.

*9 Thus, even if Elliott qualifies as a "sophisticated" investor, this fact alone does not subject it to unique defenses or otherwise render its claims atypical.

Moreover, there is no due diligence obligation imposed on sophisticated investors in a fraud on the market case that would subject such a plaintiff to unique defenses. See *Manufacturers Hanover Trust Co. v. Drysdale Securities Corp.,* 801 F.2d 13, 22 (2d Cir.1986) (plaintiff in 10b-5 case does not have to establish due diligence, but only rebut recklessness when defendant puts it in issue), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987); *Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522, 528-29 (7th Cir.1985) (noting that investor's want of due diligence is not a defense under 10b-5). And even if Elliott were potentially subject to a unique defense based on its alleged recklessness, that fact alone would not be sufficient to render its claims atypical. See *Trief,* 144 F.R.D. at 200 (rejecting defendant's contention that proposed class representative was atypical because she might be subject to unique defense based on her recklessness).

Accordingly, the Court concludes that Elliott is not subject to a due diligence obligation and is therefore not barred from acting as class representative on the basis of the unique defense rule.

4. *Adequacy*

Rule 23(a)(4) requires that the representatives will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Avon challenges the adequacy of all of the plaintiffs on the ground that they have shown no real involvement in or familiarity with the case and are instead relying entirely on the counsel that solicited them. Avon quotes at length from the plaintiffs' deposition testimony in an effort to show that each has failed to engage in more than a perfunctory review of the documents involved in the case, lacks detailed knowledge of the claims being asserted, and has not communicated with the other plaintiffs. Even if true, however, the plaintiffs' lack of knowledge concerning the details of the litigation is not a ground to deny class certification; plaintiffs are entitled to rely upon their counsel to conduct this litigation.

In the Second Circuit, the test for adequacy of representation requires only that (1) the representatives have no obvious conflicts of interest with other members of the class, and (2) that the representatives' counsel be qualified, experienced and capable of handling the litigation. See *Eisen v. Carlilse & Jacquelin,* 391 F.2d 555, 562 (2d Cir.1968); *Maywalt,* 147 F.R.D. at 57; *Klein,* 109 F.R.D. at 651. While a class representative must have sufficient knowledge of the facts necessary to support the basic allegations in the complaint, "in

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

complex actions such as securities actions, a plaintiff need not have expert knowledge of all aspects of the case to qualify as a class representative, and a great deal of reliance on the expertise of counsel is to be expected ." *In re AM Int'l*, 108 F.R.D. at 196-97; *see also In re College Bound Consol. Litig.*, 1994 WL 236163, at *4 (S.D.N.Y. May 31, 1994) (unreasonable to expect ordinary investor to have requisite sophistication to assist counsel in prosecution of securities action); *Klein v. A.G. Becker Paribas Inc.*, 109 F.R.D. 646, 651-51 (S.D.N.Y.1986) (same); *Robbins v. Moore Medical Corp. .*, 1992 WL 396423, *2 (S.D.N.Y. Dec.21, 1992) (same). Accordingly, in this type of case, the qualifications of class counsel are generally more important in determining adequacy than those of the class representatives. *See, Dura-Bilt*, 89 F.R.D. at 101; *Manual for Complex Litigation (Third)*, § 30.16 at 221 (in determining adequacy of class plaintiffs, "the relative competence, experience, dedication, reliability, and resources of the attorneys ... are important factors"; "[t]he selection of the class representatives is perhaps less critical").

*10 In this case, both adequacy requirements are met. The Court finds that there are no antagonistic interests between plaintiffs and the other members of the classes. In addition, it is clear that the various counsel in this case are eminently qualified and possess substantial experience in the conduct of securities class actions.

Finally, Avon's claim that plaintiffs were improperly solicited is without merit. Avon's argument is based on the fact that, in order to find a substitute class representative, counsel contacted class members who were previously unaware of the litigation and encouraged them to intervene in the action, allegedly in violation of DR 2-103(a). However, even if the Court were to find evidence of otherwise improper solicitation by plaintiffs' counsel--which it does not--this case presents special circumstances which make the solicitation of substitute plaintiffs proper.

First, Judge Leisure specifically authorized and encouraged counsel to locate substitute plaintiffs upon Wertheim's withdrawal. (*See* 3/7/95 Tr. at 12-14). Second, in the class action context, particularly in a situation such as this involving the withdrawal of the sole class representative after a motion for class certification has been filed,

"solicitation" of parties to intervene as substitute class representatives may be entirely appropriate, if not required as part of class counsel's fiduciary duty [FN5] to the class. *See Manual for Complex Litigation (Third)*, § 30.16 at 222 (noting that if replacement of class representative is required, "[t]o protect the interests of the class, class counsel should make reasonable efforts to recruit a new representative"). In fact, New York DR 2-104(F) specifically permits the recruiting of a new class representative from among the existing class members:

> FN5. Even before a class has been certified, counsel for the putative class owes a fiduciary duty to the class. *See Piambino v. Bailey*, 757 F.2d 1112, 1144 (11th Cir.1985), *cert. denied sub nom. Hoffman v. Sylva*, 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 976 (1986); *Manual for Complex Litigation (Third)*, § 30.24 at 233 (noting that before class certification, "there is at least an incipient fiduciary relationship between class counsel and the class he or she is seeking to represent").

Subject to compliance with the provisions of DR 2-103(A), if success in asserting rights or defenses of a client in litigation in the nature of a class action is dependent upon the joinder of others, a lawyer may accept employment from those contacted for the purpose of obtaining their joinder.

Accordingly, the Court finds that counsels' efforts to locate substitute plaintiffs in this case were in keeping with their ethical obligations and with Judge Leisure's directive.

B. Rule 23(b)(3) requirements

Rule 23(b)(3) requires that "the court find[ ] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

The Court finds that this requirement has been met in this case. As discussed above, there are many

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

questions common to the members of the three classes. Any questions affecting individual members, such as questions concerning individual reliance, are overshadowed by the common questions regarding Avon's liability and the damages suffered by plaintiffs.

*11 The Court also finds that a class action is superior to other available methods for resolving this suit. As noted above, in general, class actions are particularly well-suited to resolution of securities fraud cases. See Green, 406 F.2d at 295-96; Trief, 144 F.R.D. at 200. Avon argues, however, that there are inherent conflicts within the class which make certification improper. Specifically, Avon argues that, with regard to the breach of contract claim, there is an inherent conflict among members of Class 1 because the proposed class includes both persons who sold PERCS between February 15, 1991 and June 3, 1991, and persons who acquired those same PERCS. According to Avon, only PERCS holders as of June 3, 1991 would have a right to recover on the contract claim because, under New York law, any contract claim held by a PERCS holder would have been automatically transferred along with the security itself. As a result, the inclusion of both groups in the class will improperly reduce recovery for those who held the PERCS until their redemption.

Even if it were clear as a matter of New York law that the contract claims belong only to those who held PERCS on June 3, 1991--which it is not--class certification would still be proper. As the Court has previously recognized, a determination of this issue, which essentially involves the allocation of damages, is unnecessary at this stage of the litigation. See September 11, 1995 Order Denying Mehring and Goodall's Motions to Intervene. Several of the named plaintiffs held their PERCS until redemption. The fact that the interests of some members of Class 1 may ultimately diverge when it comes time to allocate damages does not warrant the denial of class certification where, as here, there is no current conflict that " 'goes to the heart of the lawsuit." ' In re College Bound, 1994 WL 236163, at *3 (quoting AM Int'l, 108 F.R.D. at 196). Here, class members share an interest in establishing Avon's liability and in securing the highest possible recovery for the class; any conflicts that may arise as to the allocation of such damages can be solved at that juncture by the creation of subclasses. See In re Drexel Burnham, 960 F.2d at 290 (class certification proper where members of subclasses shared interest in establishing defendant's liability and achieving maximum possible recovery for their subclass; arguments about differences among members' rights to recovery were premature); Maywalt, 147 F.R.D. at 56 ("[D]ifferences regarding damages among class members is not sufficient to defeat class certification."); AM Int'l, 108 F.R.D. at 196 & n. 8 (noting that court may later decide to create subclasses if some conflict of interest appears between those who sold stock during class period and those who did not).

Finally, Avon's argument that class certification should be denied because there is no substantial class of aggrieved PERCS owners is also without merit. Avon contends that the fact that the market price of PERCS did not rise significantly after the dividend announcement on February 7, 1991 shows that the class of PERCS holders did not believe that they were entitled to Accelerated Redemption.

*12 Avon's argument is essentially an attempt to argue the merits of this case at the class certification stage. It is clear, however, that courts are not to consider the merits of plaintiffs' claims in determining their motion for class certification. See Eisen, 417 U.S. at 177-78; Dura-Bilt, 89 F.R.D. at 94.

Accordingly, in light of the policy considerations supporting class actions in this type of case, the Court finds that a class action is the best available method for fairly and efficiently resolving this dispute.

CONCLUSION

Plaintiffs' motion for class certification is granted. The Court hereby certifies the three plaintiff classes as described in the Complaint. The Court further orders that Elliott Associates, L.P., Cynthia L. Jennings, George F. Pierce, Jr., Edward Robinson, Lee H. Simmons III, The Individual Retirement Account of Robert Rosenbaum, and the Profit Sharing Plan and Trust of Much Shelist Freed Denenberg & Ament, P.C. shall act as representatives of the three classes.

SO ORDERED.

1998 WL 834366, 1998 WL 834366 (S.D.N.Y.)

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 834366 Page 10
**(Cite as: 1998 WL 834366 (S.D.N.Y.))**

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works