11/17/2023 15:13  8187691953  SANITEC  PAGE 16
OCT 20 2003 4:12PM  PETER J BOROS  p.2
Case 1:02-cv-00132-SSB-TSH  Document 90-5  Filed 12/17/2003  Page 1 of 11

15

THIS TRUST AGREEMENT made this 24th day of June 2002, between Terrance Quinn, residing at 1377 Casiano Drive, Bel Air, CA (the "Settlor") and Jeffrey J. Weinsten, residing at 124 Titicus Road, P.O. Box 428, North Salem, NY 10560 and James N. Smith, residing at 348 Georgetown Avenue, San Mateo, CA 94402 (the "Trustees").

### W I T N E S S E T H:

1. Trust Property.

In consideration of the premises and covenants herein contained, the Settlor hereby irrevocably grants, conveys, assigns, and sets over to the Trustees the property described in Schedule "A" annexed hereto. The Trustees are authorized to receive and retain any property whatsoever added to the trust created hereunder, by deed or will of the Settlor or of any other person, it being understood that the property listed in Schedule "A" and any other property added to this trust are sometimes herein called the "Trust Property". The Settlor hereby relinquishes in his capacity as the Settlor all rights and privileges in the Trust Property. The Trustees agree to hold, invest, and reinvest the Trust Property, upon the terms herein stated. The name of this Trust shall be THE WINDSOR TRUST.

2. Contribution for Death Taxes.

Upon the Settlor's death, the Trustees shall pay to the Settlor's estate an amount equal to the Trust's fair share, determined as provided below in this Section 2, of all federal state, estate, inheritance, and other death taxes (including any interest thereon and penalties with respect thereto) imposed by reason of the Settlor's death in respect of the Trust Property held by the Trust or otherwise. The Trust's fair share of such taxes shall be determined by the executors or administrators of the Settlor's estate for each tax separately and, for each such tax, shall be the proportion of the tax which the value of the Trust Property held by the Trust in respect to which the tax imposed bears to the value of all property in respect to which the tax is imposed. A tax shall not be considered imposed in respect to property to the extent of any deduction, credit, exemption, or exclusion allowed in respect to such property. The determination by the Settlor's executors or administrators of the amount payable under this Section 2 shall be final, and

16

the Trustees shall pay such amounts without making inquiry into their accuracy. Upon the payment of the amounts determined, the Trustees shall be discharged from any liability with respect to such payments and from further accountability therefor. Such payments shall be made out of the corpus of the Trust. If **Mary Sue Riedinger** survives the Settlor, payments shall be made as defined in Section 4 of this Trust Agreement.

3. <u>Dispositive Provisions During the Lifetime of the Settlor and at the Settlor's Death.</u>

(a) Until the death of the Settlor, the Trustees shall:

(i) Pay the entire net income to the Settlor in convenient installments at least quarter-annually;

(ii) Pay all or a portion of the corpus of the Trust to the Settlor, at such time or times during the Settlor's life as the Settlor may request in a written instrument delivered to the Trustees; and

(iii) Pay to or apply for the benefit of the Settlor all or any part of the corpus of the Trust at such time or times during the Settlor's lifetime as the Trustees may, in their sole and uncontrolled discretion, determine to be reasonably necessary for the Settlor's support, maintenance, comfort, or other benefit or to meet the costs of any illness or accident which may affect the Settlor.

(b) Upon the death of the Settlor, the Trustees shall distribute the then-remaining corpus (which shall include any net income accumulated but not yet distributed), if any, as the Settlor may appoint in favor of his estate or in favor of other beneficiaries, such power to be exercisable by the Settlor in a Will in which he expressly refers to this general power of appointment.

(c) If or to the extent to which the Settlor fails effectively to exercise the power of appointment granted to him in Section 3(b) of this Trust Agreement to dispose of the corpus (and any accumulated but not distributed income) of this Trust remaining on his death as provided in this Section 3 of this Trust Agreement, the Trustees shall distribute the corpus and

accumulated but not distributed income as provided in Section 4 of this Trust Agreement.

4. **Dispositive Provisions After the Death of the Settlor.**

(i) If the Settlor's spouse, **Mary Sue Riedinger**, survives the Settlor, any property to be disposed of pursuant to Section 3(c) of this Trust Agreement shall be held as follows: the net income together with so much of the trust corpus as the Trustees, in their sole and uncontrolled discretion may determine, shall be paid to or applied for the benefit of the Settlor's said spouse (including the payment of the cost of the Settlor's said spouse's medical care or custodial care at home or at a skilled nursing or health related facility) during her lifetime, in convenient installments annually.

(ii) Upon the death of the Settlor's said spouse, or upon the Settlor's death, if she predeceases the Settlor, the then existing corpus shall be distributed as the Settlor's spouse shall appoint in her will.

5. **Trustees and Successor Trustees.**

In the event of the death or incapacity of **Jeffrey J. Weinsten** prior to the completion of his duties as Trustee under this Trust Agreement, **James B. Smith** shall act as sole Trustee under this Trust Agreement. In the event of the death or incapacity of **James B. Smith** prior to the completion of her duties as Trustee under this Trust Agreement, **Jeffrey J. Weinsten** shall act as sole Trustee under this Trust Agreement. After the death or incapacity of both of the Trustees hereunder, the Settlor's friend, **Peter Babos**, and the Settlor's friend, **Teresa Layman**, or their survivor, shall act as Co-Successor Trustees under this Trust Agreement. In addition, if at any time in the administration of the trust created under this Trust Agreement a trust is established for the benefit of a child of the Settlor, that child shall act as an additional Co-Successor Trustee to serve with the Co-Successor Trustees or their survivor. In the event of the death or incapacity of both **Jeffrey J. Weinsten** and **Jim Smith**, the Settlor's friend, **Peter Babos**, shall act as the Successor Trustee. Any person then acting as a Trustee other than a child of the Settlor can appoint one or more persons to act as a successor trustee to

3



**Peter Babos**.  One Trustee or Successor Trustee may act for and bind the Trust, provided, however, after the deaths or incapacities of **Jeffrey J. Weinsten** and **James B. Smith**, any investment decision of the Trustee involving a sum in excess of Fifty Thousand ($50,000) Dollars can be made only by a majority of those persons then acting as Trustees.

6.      **Approval of Accounts.**

The Trustees shall render an accounting from time to time setting forth the receipts and disbursements of corpus and income and the assets on hand at the commencement and expiration of the accounting. The written approval of such accounting by the then living beneficiaries shall be final and binding upon all who are then or may thereafter become entitled to any part of the assets, as to all matters and transactions shown in the account. Nothing herein contained shall preclude the Trustees from submitting an account to a court for settlement.

7.      **Spendthrift Provision.**

The interest of any beneficiary in the trust shall not, except as otherwise specifically provided by law, be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any attempt so to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge the same shall be void; nor shall any beneficiary be in any manner liable for or subject to the debts, contracts, liabilities, engagements, or torts of the person entitled thereto. Upon the occurrence or threatened occurrence of any act or thing in violation of or contrary to the foregoing provision, then the interest of any beneficiary in the trust shall cease and terminate, and in that event the Trustees shall hold any payments which would otherwise be payable on account thereof and either make such payments to another beneficiary or add the amount thereof to the corpus of the trust.

8.      **Powers of Trustees.**

In addition to the powers granted by law, and except as herein modified, the Trustees shall have the following powers respecting the trust set up hereunder, all to be exercised by them in such manner as they shall, in their sole and uncontrolled discretion, deem advisable without the necessity of

4

applying to any court for leave to exercise the same or for its approval:

    i.    To retain or to sell for cash, on mortgage or credit, to grant options to lease for any term, exchange, mortgage, pledge or otherwise dispose of, to invest and reinvest, all or any part of the Trust Property, real and personal or the proceeds thereof, and the Trustees shall be under no obligation to diversify assets;

    ii.    To acquire stocks, bonds, mortgages or other investments (herein called securities) whether or not they be of the character required by law for the investment of trust funds, including the maintenance of the Trust Assets in one or more bank, brokerage, custodian, or other accounts with any banks, trust companies, or stock brokerage firms, and to pay the costs of maintaining such accounts;

    iii.    To join in or oppose the reorganization, consolidation, merger or readjustment of finances, of any corporation or association whose securities may be held in any such trust and to pay such expenses from corpus with respect thereto as shall be deemed advisable and to consent to or oppose the sale, pledge, mortgage or lease of any property of any corporation or association whose securities may be so held;

    iv.    To exercise all rights of ownership over any securities held in such trust, including any conversion privilege or right to subscribe;

    v.    To pay from corpus all assessments, subscriptions and other sums as may seem expedient for the protection of any such trust;

vi. To delegate to proxies, committees, other persons or corporations such powers, duties or discretions as may be deemed to be for the benefit of such trust;

vii. To settle, litigate, compromise or abandon any claims made either against or on behalf of such trust;

viii. To deliver or set apart for the purpose of making any division of such trust or of establishing such trust or of making any distribution of the corpus of such trust, any property whatsoever selected for the purpose in lieu of the payment of cash; or to allocate for any such purpose any such property, or partly property and partly cash, either in like proportions or in different proportions with respect to each such division, trust or distributive share;

ix. To cause any securities to be transferred into or registered in the name of a nominee or the name of the Trustees, with or without the addition of words indicating that the same are held in a fiduciary capacity; and to take and keep any securities unregistered or in such form that they will pass by delivery;

x. To make any distribution of any share of the income or corpus of such trust to which a minor may become entitled directly to such minor, his guardian, the person with whom he resides, or any custodian under the provisions of the New Jersey Uniform Gifts to Minors Act or any similar legislation, without bond, and the receipt of such minor, guardian, person, or custodian shall be a complete discharge of all obligations of the Trustees with respect to such share of income or corpus;

6



xi. To purchase assets from the Settlor or Trustees at a fair value and to make loans, secured or unsecured, with or without interest, to the Settlor or the Trustees or to any corporation or other business entity in which the Settlor or the Trustees had an interest prior to their deaths. The propriety of any such purchase or loan, the nature and amount thereof, and the ascertainment of fair value shall be solely within the discretion of the Trustees, and the Trustees shall incur no liability as a result of any such purchase or loan. The Trustees shall have the right to retain any assets so purchased as investments of the trust estate without regard to the proportion which such asset or assets of a similar character, so held, may bear to the entire amount of the Trust Property;

xii. To borrow money from themselves, from the Settlor or from any person, to issue indebtedness, extend mortgages, encumber trust assets by mortgage, pledge or otherwise, all upon such terms and for such periods (whether or not beyond the term of such trust hereunder) as the Trustees in their discretion shall deem advisable (including the power to borrow for the purpose of the payment of taxes);

xiii. To maintain bank, brokerage, custodian, or other accounts under the title of THE WINDSOR TRUST;

xiv. To accept property, in the Trustees' discretion, whether acquired by bequest or lifetime transfer, from any person, estate, or trust, notwithstanding that such property may be subject to state or federal estate, transfer, succession, inheritance, or other death taxes and interest or penalties thereon, and to



execute such instruments as may be required in connection therewith;

    xv.    To merge such trust created hereunder with any other trust or trusts created by Settlor or the Trustees, whether by will or deed as the Trustees in their sole and uncontrolled discretion may deem advisable;

    xvi.    To employ accountants, investment counsel, legal counsel, real estate brokers and other agents as the Trustees may deem to be in the best interests of such trust, and to pay any fees or expenses incurred therefore out of corpus or income, all as the Trustees in their sole and uncontrolled discretion shall determine; and

    xvii.    To purchase, renew, and maintain life insurance policies or annuity contracts on the life of any beneficiary hereunder or on any person in whom any such beneficiary may have an insurable interest, and to pay premiums thereon out of the trust income or corpus attributable to such beneficiary, all as the Trustees in their sole and uncontrolled discretion shall determine, provided, however, that no trust income shall be used to pay premiums on any policy insuring the life of Settlor during Settlor's lifetime.

9.    <u>Compensation of Trustees</u>.

The Trustees shall receive no compensation for their services, except that the Trustees shall be permitted to be reimbursed for all expenses.

8

11/17/2023  15:13    8187691953                    SANITEC                              PAGE  24
OCT 20 2003 4:18PM  PETER J BABOS
Case 1:02-cv-00132-SSB-TSH   Document 90-5   Filed 12/17/2003   Page 9 of 11   p.10

23

10. **Bond**.

No Trustee shall be required to furnish any bond, undertaking, or other security for the faithful discharge of his duties as a Trustee, nor shall any Trustee be required to file any interim account of his proceedings in any Court in any jurisdiction in which he may be called upon to act. No Trustee shall be responsible or liable for the manner in which any discretion is exercised pursuant to this Trust Agreement or for any misinterpretation of this Trust Agreement or for any act or omission of any other Trustee, or unless his conduct amounts to fraud or willful misconduct, for any act or omission of his own.

11. **Irrevocability**.

This Trust Agreement and the Trust hereby created shall be irrevocable by the Settlor at any time and from time to time and either in whole or in part. This Trust and the Trust Agreement cannot be revoked or amended, and no part of the income or corpus of this Trust can be transferred, pledged, or otherwise alienated by any beneficiary or become subject to the debts of any beneficiary.

12. **Applicable Law**.

This Trust Agreement and the Trust created hereunder shall in all respects be governed by the law of the State of California both as to validity, construction, capacity, performance, and otherwise.

13. **Acceptance of Trust**.

The Trustees accept the Trust herein created upon the terms set forth in this Trust Agreement.

**IN WITNESS WHEREOF**, the parties have duly executed this Trust Agreement on the date first set out above.

/s/ _____
Terrance Quinn, Settlor

9

24

_____
Jeffrey O. Weinsten, Trustee


_____
James H. Smith, Trustee

25

Jeffrey J. Weinsten, Trustee

_James N. Smith_
James H. Smith, Trustee

10