powers of attorney pursuant to which the Articles have been executed;

        (c)     copies of the Company's federal, state and local income tax or information returns and reports, if any, for the three (3) then most recent taxable years;

        (d)     copies of this Agreement and all amendments thereto and copies of all prior operating agreements and amendments thereto no longer in effect;

        (e)     financial statements of the Company for the three (3) then most recent years;

        (f)     the Company's books and records for at least the then current and past three (3) fiscal years; and

        (g)     any other documents required under the Act.

Upon the request of the Members, the Manager shall promptly deliver to such Members, at the expense of the Company, (i) a copy of the information referred to in clauses (a), (b), and (d) of this Paragraph 17.2; (ii) after becoming available, a copy of the Company's federal, state and local income tax information returns for each year; and (iii) a copy of any amendment to the Agreement executed by the Manager pursuant to a power of attorney from the Members, or pursuant to their right to do so amend without the concurrence of the Members.

17.3     Each Member may inspect and copy other information regarding the affairs of the Company as is just and reasonable for any purpose reasonably related to such Member's Shares.

17.4     All funds of the Company shall be deposited in a separate bank account or accounts as shall be determined by the Manager and the Manager shall be entitled to sign on all such accounts.

17.5     The Manager shall maintain the books and records for the Company.

18.     <u>REPORTS BY THE COMPANY</u>.

18.1     The Manager shall furnish the Members with all information required for preparation of the Members' federal and state income tax returns within ninety (90) days after the end of the Company's fiscal year.

18.2     The Manager shall furnish the Members with a balance sheet and an income statement prepared by the Manager as soon as is reasonably practicable after the end of each fiscal year of the Company.

19.     <u>RESTRICTIONS ON TRANSFER; ASSIGNEES; ADMISSION OF SUBSTITUTE MEMBERS</u>.

19.1     Except as provided in Paragraphs 19.4 and 19.8, below, and notwithstanding anything to the contrary contained in the Act, the Members other than the Managers shall not sell, transfer, assign, pledge, hypothecate, encumber, subject to a security interest or otherwise dispose ("Transfer") of their Shares, or any part thereof, without first obtaining the consent of the Manager, and any act in violation of this Paragraph 19.1 shall be null and void <u>ab initio</u>.

19.2     Notwithstanding anything in the foregoing Paragraph 19.1 above to the contrary, before being effective, any Transfer of Shares to a third party must, in the opinion of the Company, (a) comply with all applicable federal, state and local securities laws and regulations with respect to transfers of securities, and (b) not create adverse consequences to the Company or any of the non-assigning Members under any applicable federal, state or local tax laws. Each Member agrees, before effecting any proposed Transfer, to notify the Company of the same and not to effect the proposed transfer without first obtaining such opinion and otherwise complying with the terms and conditions of this Agreement. Each Member also agrees to notify the Company in writing of the date of effecting any such Transfer, the name and address of the transferee(s) and the portion of the Shares intended to be transferred to each transferee.

19.3     Each Member agrees that notwithstanding the provisions for transfer of any Shares contained herein, the Shares, when and if transferred, shall remain subject to all of the terms and conditions of this Agreement.

S-PB000014

19.4    Notwithstanding anything contained in Paragraphs 19.1 and 19.2 above to the contrary, a Member's Shares, or a portion thereof, may be transferred to persons or entities entitled thereto pursuant to any execution or judicial sale; provided, however, the transferee in such case shall only become an Economic Interest holder with respect to such Shares transferred, and shall in no event become a Member unless and until such transferee is admitted as a substituted Member in accordance with the provisions of Paragraphs 19.1 and 19.2 hereof.

19.5    A Manager shall have a right to assign its interest in Operating Profits, Operating Losses and Cash Available For Distribution without the consent of any Member.

19.6    An Economic Interest holder who has become a Member has the rights and powers to the extent assigned and is subject to the restrictions and liabilities of a Member under the Articles, this Agreement and the Act. An Economic Interest holder who becomes a Member is also liable for any obligation of his, her or its assignor to make Capital Contributions to the Company to the extent not previously made.

19.7    A Member who has assigned all or a portion of his, her or its Shares in the Company is not released from his, her or its liability to the Company without the written consent of all Members, whether or not the Economic Interest holder becomes a Member. A Member who has assigned all of his, her or its interest in the Company remains a Member until the admission of the Economic Interest holder as a Member as herein provided.

20.    <u>INDEMNIFICATION AND LIABILITY OF MANAGER</u>.

20.1    The Company, its receiver or its trustee, shall indemnify, save harmless and pay all judgments and claims against (a) the Manager from any liability or damage incurred by reason of any act performed or omitted to be performed by it in connection with the business of the Company, except as provided in Paragraph 20.3 of this Agreement or (b) the Members for any act performed by them which is expressly permitted by this Agreement, including but not limited to, with respect to both subparagraph (a) and (b), attorneys' fees and costs incurred by them in connection with the defense of any action based on any such act or omission, which attorneys' fees and costs may be paid as incurred, including all such liabilities under federal and state securities laws as permitted by law. All judgments against the Company or the Manager or its Members on which any Manager or Member is entitled to indemnification must first be satisfied from Company assets before the Manager or Member in question is responsible for such obligations.

20.2    In the event of any action by a Member against the Manager, including a Company derivative suit, the Company will indemnify, save harmless and pay all expenses of the Manager, including attorneys' fees and costs incurred in the defense of such action, if such Manager is successful in such action.

20.3    The Manager shall not be relieved from any liability for any acts or omissions resulting from a material breach of its obligations hereunder or from bad faith. Indemnification to which the Manager is entitled under this Paragraph 20 shall be recoverable out of the assets of the Company but not from the Members.

20.4    The Manager shall not be liable to the Members or to the Company for any loss resulting from errors made by the Manager in the reasonable exercise of business judgment, unless such errors result from a material breach of this Agreement or bad faith by the Manager.

21.    <u>DISSOLUTION AND LIQUIDATION</u>.

21.1    The Company shall be dissolved upon the earlier of:

(a)    December 31, 2032.

(b)    The death, insanity, bankruptcy, retirement, resignation or dissolution of any Manager or any other event which, pursuant to the Act and unless otherwise provided in this Agreement, results in a Manager ceasing to be a Manager, unless a remaining Manager agrees to continue the business of the Company, or unless the Members elect to continue the business of the Company in accordance with Section 13.4 of this Agreement.

S-PB000015

(c)      An election to dissolve the Company made in writing by the Manager.

(d)      The sale, exchange or other disposition of all or substantially all of the assets of the Company; provided, however, that if the Company receives a purchase money note upon such sale, the Company shall continue in existence until such note is satisfied, sold or otherwise conveyed.

(e)      The failure to elect, as provided in Paragraph 13.4 of this Agreement, a successor Manager within ninety (90) days from and after the withdrawal or other reason for the absence of the last Manager.

(f)      The entry of a judgment of dissolution under the Act.

21.2      Upon the dissolution of the Company, the Manager (which term, for the purpose of this Paragraph 21.2, shall include the trustees, receivers or other persons required by law to wind up the affairs of the Company) shall wind up the affairs of the Company as provided in the Act. The Company shall engage in no further business thereafter other than that necessary to wind up the business in accordance with the Act and distribute the assets in accordance with this Agreement. The Members shall continue to allocate Operating Profits and Operating Losses during the winding up period in the same manner as such amounts were divided before dissolution. The parties responsible for winding up shall be entitled to reasonable compensation for their services in connection therewith, which compensation shall be considered an expense of the Company. The Manager may, from time to time and at any time, have the assets or any one or more of them appraised at the expense of the Company for distribution in kind, subject to existing liens and encumbrances.

21.3      From and after the dissolution of the Company, the proceeds from the liquidation of the Company's property and from the operation of the Company's business shall, in accordance with Paragraph 12 of this Agreement, be applied and distributed in the following order:

(a)      To creditors, including (to the extent permitted by law) Members who are creditors, in satisfaction of liabilities of the Company other than liabilities for distributions to Members and former Members under Paragraph 12 of this Agreement.

(b)      To the parties responsible for winding up the Company, the compensation to which they are entitled for their services in winding up the affairs of the Company.

(c)      To the Manager and Members in accordance with Paragraph 12.2 above, (i) any previously generated Cash Available For Distribution which has been earmarked by the Manager for distribution to the Manager and Members but which has not yet been distributed, and (ii) any Cash Available For Distribution which is generated during the period described in Paragraph 21.2 above.

(d)      The remainder, if any, to the Manager and Members in accordance with Paragraph 12.2 above.

21.4      Subject to this Paragraph 21, the business and affairs of the Company shall be wound up in the manner provided in the Act.

21.5      As soon as practicable after the dissolution of the Company, a final statement of its assets and liabilities shall be prepared by the Company and furnished to the Members.

21.6      As soon as possible after any of the events specified in this Paragraph 21 effecting the dissolution of the Company occurs, the Manager shall file a written notice of winding up with the California Secretary of State signed on behalf of the Company containing such information as is required by the Act.

21.7      Provided all of the known property and assets of the Company have been applied and distributed pursuant to the Act and this Agreement, written articles of termination shall be signed on behalf of the Company by the Manager. The Manager shall file the articles of termination with the California Secretary of State containing such information as is required by the Act.

S-PB000016

22.    INVESTMENT REPRESENTATIONS.

Each Member, by executing a copy of this Agreement, hereby represents and warrants to each other Member and the Company as follows:

22.1    The Shares are being acquired for his, her or its own account, for investment, and not with a view to or for sale in connection with any distribution thereof.  In that connection, the Member recognizes and understands that the Shares being purchased and sold hereunder have not been registered under the 1933 Act nor qualified under any state securities laws by reason of the fact that the contemplated transaction constitutes a private offering within the meaning of Sections 3(b) and 4(2) of the 1933 Act and Rule 504 of Regulation D promulgated thereunder.

22.2    The Member has been fully advised of the facts respecting the organization and business of the Company and has been given the opportunity to consult his, her or its legal counsel with respect to the Company.  The Member hereby agrees that the offer and sale of the Shares to him, her or it does not involve any public offering of such Shares.

23.    SPECIAL AND LIMITED POWER OF ATTORNEY.

Each Member hereby grants to the Manager a special and limited power of attorney, as set forth below:

23.1    Each Manager acting alone shall at all times during the term of the Company have a special and limited power of attorney as the attorney-in-fact for each Member, with power and authority to act in the name and on the behalf of each such Member to execute, acknowledge, and swear to in the execution, acknowledgment and filing of documents, which shall include by way of illustration but not of limitation the following:

(a)    The Articles, the Agreement, any separate articles of organization, as well as any amendments to the foregoing which, under the laws of the State of California or the laws of any other state, are required to be executed or filed or which the Manager shall deem it advisable to have executed or to file;

(b)    Any other instrument or document which may be required to be executed or filed by the Company under the laws of any state or by any governmental agency or which the Manager shall deem it advisable to have executed or to file; and

(c)    Any instrument or document which may be required to effect the continuation of the Company, the admission of additional or substituted Members, or the dissolution and termination of the Company (provided such continuation, admission or dissolution and termination are in accordance with the terms of the Articles and the Agreement), or to reflect any reductions in amount of contributions of Members.

23.2    The special and limited power of attorney of the Manager:

(a)    Is a special power of attorney coupled with an interest, is irrevocable, shall survive the death of the granting Member, and is limited to those matters herein set forth;

(b)    May be exercised by each Manager acting alone for each of the Members by the signature of the Manager acting as attorney-in-fact for all of the Members, together with a list of all Members executing such instrument by their attorney-in-fact; and

(c)    Shall survive an assignment by a Member of all or any portion of his, her or its Shares except that, where the Economic Interest holder of such Shares has been approved by the Manager for admission to the Company as a substituted Member, the special power of attorney shall survive such assignment for the sole purpose of enabling the Manager to execute, acknowledge and file an instrument or document necessary to effect such substitution.

24.    MARITAL DISSOLUTION OR DEATH OF SPOUSE.

-15-

S-PB000017

24.1    <u>Dissolution of Marriage</u>. Notwithstanding any other provision of this Agreement, on the dissolution of a Member's marriage, or the execution of a binding agreement or issuance of an order with respect to marital property of an individual Member ("Marital Dissolution Event"), that Member ("Separated Member") and his spouse ("Separated Spouse") will use all reasonable efforts to cause the Shares held by either of them to be distributed or transferred to the Separated Member. If such distribution or transfer cannot be made for any reason, the Separated Member will purchase the Shares of his Separated Spouse and his Separated Spouse will sell her Shares to the Separated Member pursuant to this Paragraph 24.1. If such distribution or sale is not consummated for any reason within one hundred and eighty (180) days from the date of the Marital Dissolution Event, the remaining Members on a pro rata basis, or the Company if any Shares remain, will have the right and option to purchase all Shares retained by the Separated Spouse pursuant to Paragraph 24.3. A Separated Member will promptly give notice to the Company of any Dissolution Event, any disposition of his Shares as a result and any property settlement proceedings that give rise to any purchase rights under this Agreement.

24.2    <u>Death of Spouse</u>. On the death of the spouse of an individual Member, that Member ("Surviving Member") will use all reasonable efforts to cause the Shares of the deceased spouse ("Deceased Spouse"), if any, to be distributed or transferred to the Surviving Member. If the Deceased Spouse's Shares are not held by the Surviving Member directly or in trust in which the Surviving Member is the sole trustee and has the primary beneficial interest in the trust, then the Surviving Member will purchase the Deceased Spouses Shares and the estate or successor in interest of the Deceased Spouse will sell the Shares to the Surviving Member pursuant to this Paragraph 24.2. If such disposition or sale, or binding agreement for the disposition or sale, is not consummated for any reason within one hundred and eighty (180) days from the date of the Deceased Spouse's death, the remaining Members on a pro rata basis, or the Company if any Shares remain, will have the right and option to purchase all of the Shares of the Deceased Spouse pursuant to Paragraph 24.3. A Member will promptly give notice to the Company of the death of his Deceased Spouse and the disposition of any Shares that provides any purchase rights under this Agreement.

24.3    <u>Purchase of Shares</u>. In the event of a Marital Dissolution Event or the death of the spouse of an individual Member and the failure of Shares to be distributed or transferred to the Separated Member pursuant to Paragraph 24.1 or to the Surviving Member pursuant to Paragraph 24.2, as the case may be, the Company and the remaining Members have the right to purchase the Shares for a purchase price equal to the fair market value of the Shares. The fair market value of the Shares shall be the value upon which the Separated Member or the Surviving Member, as the case may be, and the other parties involved in the transaction have agreed. If, within thirty (30) days after the right to purchase the Shares becomes available to the Company and the remaining Members, the Separated Member or the Surviving Member, as the case may be, and the other parties involved in the transaction cannot agree upon the fair market value of the Shares, then the fair market value of the Shares will be determined by an independent business appraiser selected by the mutual agreement of the parties involved in the transaction, or if they cannot agree, by the mutual agreement of an independent business appraiser selected by the Separated Member or the Surviving Member, as the case may be, and an independent business appraiser selected by the other parties involved in the transaction whose determination of the fair market value of the Shares will be binding.

25.    <u>MISCELANEOUS</u>.

25.1    <u>Notices</u>. Any notice, request, demand, instruction or other document to be given hereunder or pursuant hereto to any party shall be in writing and shall either be personally delivered (in which event such notice shall be deemed effective only upon such delivery), or delivered by mail, sent by registered or certified mail, postage prepaid, return receipt requested to each of the Members at the address set forth on the Company's records. Notices so mailed shall be deemed to have been given seventy-two (72) hours after the deposit of same in the United States mail, postage prepaid, addressed as set forth above. Notice shall not be deemed given unless and until under the preceding sentence notice shall be deemed given to all addressees to whom notice must be sent. The addresses and addressees, for the purpose of this Paragraph 25.1, may be changed by giving written notice of such change in the manner herein provided for giving notice. Unless and until such written notice is received, the last address and addressee stated by written notice, or as provided herein if no written notice of change has been sent or received, shall be deemed to continue in effect for all purposes hereunder.

25.2    <u>Binding Effect</u>. This Agreement shall be binding upon all of the Members and their executors,

S-PB000018

administrators, successors and permitted assignees.

        25.3    <u>Regulations and Laws</u>. Nothing contained in this Agreement shall be construed to require the commission of any act contrary to law, and whenever there is a conflict between any provision of this Agreement and any present or future statute, law, ordinance or regulation contrary to which the parties have no legal right to contract, the latter shall prevail, but in such event the provisions of this Agreement affected shall be curtailed and limited only to the extent necessary to bring it within the requirement of the law. This Agreement is made under and shall be construed pursuant to the laws of the State of California.

        25.4    <u>Attorneys' Fees</u>. In the event of any action for breach of or to enforce or declare rights under any provision of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs, to be paid by the losing party.

        25.5    <u>Counterparts</u>. This Agreement may be executed in several counterparts and all so executed shall constitute one agreement, binding upon all of the parties hereto, notwithstanding that all of the parties are not signatories to the original or the same counterparts.

        25.6    <u>No Other Agreement</u>. The entire agreement of the parties with respect to the Company is contained and referred to herein.

        25.7    <u>Headings</u>. The paragraph headings of the various provisions hereof are intended solely for convenience of reference and shall not in any manner amplify, limit or modify, or otherwise be used in the interpretation of, any of said provisions.

        25.8    <u>Competitive Activities</u>. Nothing herein contained shall preclude any Manager or Member from owning, purchasing, selling, or otherwise dealing in any manner with any property or engaging in any business whatsoever without notice to any other Manager or Member, without participation of any other Manager or Member, and without liability to any other Manager or Member. It is understood that any Manager or Member may now or hereafter engage in any business or possess any property of any type, whether or not such business or such property competes with the business or property of the Company. Each Manager and Member hereby waives any right which he, she or it may have against others who may capitalize on or take advantage of information learned as a result of an association with the Company.

        25.9    <u>Gender and Tense</u>. As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall be deemed to include the others whenever the context so indicates.

        25.10    <u>Remedies</u>. If any party to this Agreement shall fail to observe or perform any term, covenant, condition or other obligation on his, her or its part to be observed or performed pursuant to this Agreement or in connection with this Agreement (the "Defaulting Party"), any other party to this Agreement, in addition to and not <u>in lieu</u> or in limitation of, any of his, her or its other remedies under this Agreement, under any statute or at law, shall be entitled to apply to, and obtain from, any court of equity having jurisdiction over the Defaulting Party:

        (a)    An injunction, temporary restraining order and any other prohibitory decree to prevent any further such failure to observe or perform on the part of the Defaulting Party; and

        (b)    A decree for specific performance of any such term, covenant, condition or other obligation.

        25.11    <u>No Waiver</u>. The waiver by one party of the performance of any covenant, condition or promise shall not invalidate this Agreement nor shall it be considered a waiver by such party of any other covenant, condition or promise hereunder. The waiver by any party of the time for performing any act shall not constitute a waiver of the time for performing any other act or an identical act required to be performed at a later time. The exercise of any remedy shall not exclude other consistent remedies.

        25.12    <u>Section 704(c)</u>. If any party makes a contribution of property to the Company, the adjusted basis of which for income tax purposes is different from the value at which such property is accepted by the Company,

S-PR000019

the Company shall elect to have such difference allocated to the contributing party pursuant to Section 704(c) of the Code and any comparable state statute.

      25.13   No Third-Party Benefit. Nothing contained in this Agreement shall be deemed to confer any right or benefit on any person or entity who is not a party to this Agreement.

      25.14   Section 754 Election. The Manager may, in its sole and absolute discretion, make the election provided for in Section 754 of the Code.

    **IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first above written.

**"MANAGER"**

David Kaye

Address for Manager:

17555 Ventura Boulevard #200
Encino, California 91316

**"ORIGINAL MEMBER"**

David Kaye

**"MEMBERS"**

_____

_____

S-PBC00020