# EXHIBIT 4

NOV,15,1999


TO: MR. TERRY QUINN

FROM: JAMES HARKESS

RE: LETTER OF UNDERSTANDING

Dear Terry,


As per our meeting on Fri. Nov. 12,1999, I would like to clarify our
understanding. Given the circumstances surrounding the existing
claims against Standard, I felt that it would be difficult to collect the
entire amount due to me in cash. Therefore I offered to take a portion in
cash and the balance in stock ownership of what I have dubbed as
Sanitec Gold Coast. That is California, Washington and Oregon. In that
meeting we were looking at a settlement of $ 1,000,000 there as, I would
take $ 50,000 in cash and apply the other $ 50,000 in 10% stock. The
question posed is what happens if the settlement reaches $ 1,500,000 +.
My position would be to take half in cash, the next $ 50,000 in ownership
in CA,Wa and Or and the remaining balance then would be in stock in
the global company.

Second, as I stated, I need a clear cut way to earn income. I stated that I
needed at least $ 6,000 per month to survive. I believe that a portion of
that income should come from Standard as I am still involved in current
negotiations with the Los Angeles Dodgers. I strongly feel that my
involvement to date has been a very large factor in keeping Standards
doors open and certainly without question the reason we have a chance
in settling this Sasco litigation in our favor. I would appreciate your
comments as to a solution to the salary.


Best Regards,



Jim

# EXHIBIT 5

# Sanitec Ltd.
## 17555 Ventura Blvd., Suite 200
## Encino, CA 91316

September 11, 2002

James Harkess
President/CEO
A.B.B. Sanitec West, Inc.
9065 Norris Avenue
Sun Valley, CA 91352

Re: Letter Agreement

Dear Jim:

At Sanitec Ltd. we sincerely appreciate Sanitec West's financial and emotional support in the matter of the Guardian/Delloiacovo et al litigation.

As you know, under the terms of our Distributor Agreement, West must sell or place in a joint venture a total of at least 13 Sanitec Machines during the initial ten-year term of this Agreement. This performance schedule requires Sanitec West to purchase one Sanitec Machine from Sanitec, Ltd. during the current year.

In addition with respect to a Sanitec System placed by Sanitec West in a joint venture arrangement, Sanitec, Ltd. is to receive 2.5% of the gross revenue derived from such joint venture or a minimum annual royalty of $25,000. This does not apply to Sanitec Systems in operation prior to January, 2002.

So for this year, as expected, you have not ordered any Sanitec Machines nor paid us any royalties, however you have been paying a significant portion of our legal bills in the Guardian/Delloiacovo matter.

Therefore, as discussed with you verbally, Sanitec, Ltd. has agreed to the following arrangement:

1). To date, Sanitec, Ltd. owes Sanitec West for legal fees advanced in their behalf at the rate of 50% of those fees. At some future date you will give us an accounting of that amount and an estimate of future advances.

2). Sanitec, Ltd. is desirous of borrowing $25,000 to be used as the initial fee to retain a Delaware law firm to defend the lawsuit recently filed by Guardian, Ltd. against Sanitec, Ltd. and its Officers and Directors.

3). Sanitec West, in accordance with the Distributor Agreement, is required to purchase one Sanitec machine this year.

4). Sanitec, Ltd. has agreed to sell one Sanitec Machine, model number HG-A-250s to Sanitec West for the agreed purchase price of $450,000 and apply all monies loaned and/or advanced to Sanitec, Ltd. as partial payment of the $450,000 purchase price

with any balance due payable upon delivery of the Sanitec Machine by a note issued by Sanitec West to Sanitec, Ltd. under terms mutually agreeable.

By this Letter Agreement, Sanitec, Ltd. agrees that Sanitec West has fully complied with its performance requirement to purchase one Sanitec Machine in 2002. Furthermore, Sanitec, Ltd. hereby waives any joint venture royalty payments which could be due and payable through the calendar ended December 31, 2004.

5). Sanitec, Ltd. further agrees, that in the event it cannot deliver a Sanitec Machine to Sanitec West no later than April 1, 2003, in that event, any monies advanced or loaned by Sanitec, Ltd., will be immediately converted to a demand note with simple interest payable at 12% per annum, calculated from the date of each advance. This note will be secured by all of the tangible and intangible assets of Sanitec, Ltd.

If this Letter Agreement accurately describes our understanding, please sign and return a copy to me.

Sincerely,

David Kaye
President

Agreed:
A.B.B. Sanitec West, Inc.

By: _____
James Harkess, President/CEO

# EXHIBIT 6

**Subject: Re: <no subject>**
**Date:** Wednesday, September 17, 2003 4:17 PM
**From:** JH <sanitecwestjh@sbcglobal.net>
**To:** peter babos <baboslaw@earthlink.net>

On 9/17/03 8:52 AM, "Peter Babos" < baboslaw@earthlink.net> wrote:

Jim,

I will fax to your home copies of the stock ownership I have for Worldwide and Ltd.  Worldwide owns Ltd.  Windsor (you) own 51% of Worldwide. You have the original stock certificate of your ownership of Windsor. David now has the other original LLC documents and corporate book on Windsor.

I would like to no more fully how the Firestone guys fit in and what your vision is for them to get involved.  If they help on the legal front with another lawyer such as Potter Anderson, how would and should that occur.  Let's maybe you, David and I discuss that at some point soon as well.

Peter

    ----- Original Message -----
    **From:** JH <
    mailto:sanitecwestjh@sbcglobal.net>
    **To:** peter babos <
    mailto:baboslaw@earthlink.net>
    **Sent:** Wednesday, September 17, 2003
    12:01 AM
    **Subject:** <no subject>

    A follow up
    Peter, please do not take this personal:

S-PB000041

If I own Worldwide and LTD by virtue of Windsor then I want the documents. Until I resolve the issue with terry, I want to be very comfortable in knowing where the certificates are. I know terry very well and I will not allow him to pull the same shit he did on me ten years ago.

jim


I appreciate you providing me with the Windsor documents.  You  issue the original certificates of World Wide to Jeff and I need the orignials not copies along with the minutes . I again stress that I will not have terry back door me again. Simply by dilution. The firestone group will receive 15% of outstanding stock issued to Industries. For that they will bring a nation wide contract for the VA hospitals along with military facilities. They have a very powerful lobbying firm that we need to pressure the Ca Dept of health to issue our permit for path/chemo Pharm. As it stands they want no part of quinn and company
Please advise
jim