IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SANITEC WEST, et al. | ) | CASE NO. 1:02 CV 01582 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | PLAINTIFF SANITEC, LTD.'S BRIEF |
| | ) | REGARDING ITS OWNERSHIP |
| JOSEPH DELLOIACOVO, et al. | ) | |
| | ) | |
| Defendants. | ) | |

At the hearing on February 26, 2004, Plaintiff Sanitec Ltd. will demonstrate that it now is being represented by Goodman Weiss Miller LLP, and that the appearances of McDonald Hopkins Co., LPA and Patton Boggs LLP are invalid and should be stricken and ignored.[1]

These facts are not (or should not be) in dispute:

Sanitec, Ltd. owns and controls the intellectual property that is the subject of the underlying dispute in this case. Sanitec, Ltd. is wholly owned by Sanitec Worldwide, Ltd., which in turn is owned 51% by Windsor Holdings, LLC and 49% by Salem Associates, Inc. Salem Associates, Inc. is wholly owned by Jeffrey Weinsten.

---

[1] On January 8, 2004, this Court granted the motion to withdraw of Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., LPA, which had served as Sanitec Ltd.'s original counsel in this action.

1

The disputed fact is that Windsor Trust[2] owns Windsor Holdings, LLC. Yet, there is no basis for legitimate dispute. The testimony of the Organizer[3] of Windsor Holdings, LLC is wholly supportive and fully dispositive. *See* Affidavit of Mitchell R. Miller (a copy of which appears as Exhibit 1 attached to this Brief).

Attorney Mitchell Miller was – and is – the sole Organizer of Windsor Holdings. With respect to Windsor Holdings, Terrance Quinn was – and is – the Organizer's sole client, who requested formation of Windsor Holdings and who identified its ownership. Only they have the authority to admit members and name managers.

At no time did either Quinn or Miller admit or name David Kaye or James Harkess as a Manager, a Managing Member, a Member, or anything else in Windsor Holdings. Any document purporting otherwise is necessarily fraudulent.

Rather, Quinn created the Windsor Trust and designated that it be the sole owner of Windsor Holdings. Quinn named James Smith and Jeffrey Weinsten as co-trustees of the Windsor Trust.

Therefore, Smith and Weinsten (as co-trustees of the Windsor Trust) and Weinsten (as sole owner of Salem Associates) had the exclusive authority to elect the board of Sanitec Worldwide, Ltd., which elected its officers, who in turn elected the board of Sanitec, Ltd. The board of Sanitec, Ltd. elected as its officers, among others, Smith (as President) and Weinsten

---

[2] Jeffrey Weinsten and James Smith serve as sole co-trustees of the Windsor Trust.

[3] Under California law, a limited liability company is formed by a third party called an "Organizer," who serves the same general function as an incorporator does in the formation of a corporation, which is to prepare and file its Articles of Organization, admit an initial member, and complete other initial organizational tasks.

(as Vice-President). They have the authority to select counsel to represent Sanitec, Ltd. in this action.

Thus, Kaye and Harkess lack any authority whatsoever to act on behalf of Windsor Holdings or Sanitec, Ltd., including to hire counsel for Sanitec, Ltd.

Respectfully submitted,

/s/ Steven J. Miller
STEVEN J. MILLER (0014293)
KIMBERLY Y. SMITH (0066849)
100 Erieview Plaza, 27th Floor
Cleveland, OH 44114-1882
Tel. (216) 696-3366 • Fax (216) 363-5835
miller@goodmanweissmiller.com
smith@goodmanweissmiller.com
**Attorneys for Plaintiff Sanitec, Ltd.**

OF COUNSEL:

GOODMAN WEISS MILLER LLP

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2004, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ Steven J. Miller
STEVEN J. MILLER

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

SANITEC WEST, et al.           )   CASE NO. 1:02 CV 01582
                               )
        Plaintiffs,            )   JUDGE DONALD C. NUGENT
                               )
    v.                         )   AFFIDAVIT OF MITCHELL R.
                               )   MILLER
JOSEPH DELLOIACOVO, et al.     )
                               )
        Defendants.            )

STATE OF CALIFORNIA     )
                        ) SS:
LOS ANGELES COUNTY      )

I, MITCHELL R. MILLER, do declare as follows:

1. I am an attorney at law duly licensed to practice before all the courts of the State of California. I have personal knowledge of the facts and events described herein, and if called as a witness, could and would testify thereto competently and under oath.

2. In or about July of 2001, Peter Babos, a fellow attorney in my office suite, introduced me to a client who wanted to start a California limited liability company. The client's name was Terrance Quinn. Mr. Quinn retained me under a written engagement letter, a true and correct copy of which is attached hereto as Exhibit "A." Per the agreement, Mr. Quinn paid me $2,000 for the organization of the company. See Exhibit "B" attached hereto. I then undertook to organize a limited liability company on Mr. Quinn's behalf under the

Page 1 of 4

**Exhibit 1**

name of "Windsor Holdings, LLC." I filed Articles of Organization with the California Secretary of State on or about July 17, 2001. See Exhibit "C" attached hereto.

3. After the initial organization of the company, Mr. Quinn was undecided how to structure his ownership of Windsor Holdings. He considered that he alone might continue to hold sole ownership, that he might share his ownership jointly with other members selected by him, or that he might transfer his ownership to a trust. I called Mr. Quinn and Mr. Babos repeatedly about finalizing the organization of the company, but was told that Mr. Quinn had not yet decided what he wanted to do as far as membership and management. The issue of how to structure Mr. Quinn's ownership remained open and I was instructed to do nothing further until I heard from Mr. Quinn or Mr. Babos.

4. It was always my understanding that Mr. Babos was Mr. Quinn's lead counsel, and that I was to take direction from him. It was also always my understanding that Mr. Quinn wanted to maintain ultimate ownership and control of Windsor Holdings, but was undecided about how to structure his ownership of the company.

5. During the balance of 2001, 2002 and the beginning of 2003, I did not hear anything further about how to structure Windsor Holdings. I continued to hold Windsor Holdings' corporate books and records, which still consisted only of the Articles of Organization that I had filed.

6. In or about July of 2003, upon Mr. Babos' request, I gave possession of the original corporate books and records of Windsor Holdings to Mr. Babos. As of that time, there still had been no further action taken other than the original Articles of Organization I had filed two years earlier. No original first minutes, operating agreement or statement of information had ever been prepared or executed, and no certificate of ownership had ever

been executed.

7. In December of 2003, Mr. Babos informed me that Mr. Quinn recently had been released from serving a sentence in federal prison over the last year or so. Mr. Babos was hoping that Mr. Quinn could now soon tell us how to structure his ownership of Windsor Holdings.

8. On January 30, 2004, Mr. Babos contacted me to set up a meeting with Mr. Quinn to discuss completing the formal organization of Windsor Holdings. On February 1, 2004, Mr. Babos advised me that upon instruction by Mr. Quinn, I was to complete the organization of Windsor Holdings by formally naming James Smith as the company's Manager, and issuing sole ownership of the company to the Windsor Trust. This was confirmed by Mr. Quinn in a telephone conversation directly with me on February 2, 2004. Mr. Quinn advised me that the Windsor Trust had been created on or about June 24, 2002.

9. Mr. Quinn provided me with a copy of the Windsor Trust, which I have reviewed. See Exhibit "D" attached hereto. I acknowledge that Mr. Quinn, as settlor of the Windsor Trust, intended to assign and transfer the entire ownership of Windsor Holdings, LLC to the trust at the time of the trust's creation.

10. I am presently preparing a full set of organizational documents for Windsor Holdings, including the First Minutes, an Operating Agreement, a Statement of Information, a Certificate of Interest in the name of Windsor Trust, and all other documents necessary to complete the proper organization of Windsor Holdings and to reflect Mr. Quinn's June 24, 2002 transfer of ownership to Windsor Trust.

11. My preparation of these documents are by instruction from Mr. Quinn and appear consistent with his intentions when he initially created Windsor Holdings and when

he created Windsor Trust. I have further been instructed by Mr. Quinn to provide copies of Windsor Holdings' organizational documents, when completed, to Mr. Babos, to Mr. Smith as Manager and as co-trustee of the Windsor Trust, and also to Mr. Weinsten as co-trustee of the Windsor Trust.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NAUGHT.

MITCHELL R. MILLER

SWORN TO BEFORE ME and subscribed in my presence at Los Angeles, California, this 2nd day of February, 2004.

Notary Public



E. CAITLIN PHILLIPS
Commission # 1278508
Notary Public - California
Los Angeles County
My Comm. Expires Oct 25, 2004

Page 4 of 4

**Mitchell R. Miller**
Attorney at Law
315 South Beverly Drive, Suite 501
Beverly Hills, California 90212
Tel: (310) 277-1848
Fax: (310) 551-1929
E-mail: mitchmillr@earthlink.net

Member, California and
Pennsylvania Bars
C.P.A. in Pennsylvania
Certified Specialist, Taxation,
The State Bar of California

PERSONAL & CONFIDENTIAL
ATTORNEY-CLIENT FEE AGREEMENT

July 2, 2001

Terrence Quinn
1377 Casiano Road
Los Angeles, CA 90049

Re: Retainer Agreement

Dear Terry:

It was a pleasure speaking with you today regarding the formation of a limited liability company. In order to ensure we are in accord, I have prepared this retainer agreement for your approval.

Confirming our mutual understanding of my engagement and the nature and extent of the services I will provide you, I will review the documentation of current and proposed transactions, and form the limited liability company. I will prepare any necessary documents and will consult with you regarding ongoing matters.

To engage my services to perform the above task, you have agreed to pay me a flat fee of $2000.00, receipt of which is hereby acknowledged, to be applied against the total fees and costs incurred.

In addition to dealing with the above-described matters, I will, of course, be available to render other services, for example, business or personal tax planning, representation at governmental tax examinations, and so forth, at my standard rates (a current schedule of which is attached), plus out-of-pocket expenses.

You may discharge me at any time. I may withdraw from representing you with your consent or for good cause. Good cause includes your breach of this agreement, specifically including but not limited to your failure to pay any of my bills within the time period provided above, your refusal to cooperate with me or to follow my advice on a material matter or any other fact or circumstance that would render my continuing representation unlawful or unethical.

At the time I conclude providing services for you for any reason, all unpaid charges shall become immediately due and payable. After the conclusion of my services, I will, upon your request, deliver

**EXHIBIT A**

Terrence Quinn
Re: Retainer Agreement
July 2, 2001
Page 2

a copy of all materials relating to this matter to you, along with any of your funds or property in my possession.

In accordance with the requirements of Cal. Bus. & Profs. Code §6148, we advise you that this firm maintains professional errors and omissions insurance coverage applicable to the services to be rendered under this engagement.

If the above terms are acceptable to you and the services outlined are in accordance with your requirements, please sign the original of this letter in the space provided and return it to me. Retain a copy for your records.

I look forward to working with you.

Very truly yours,                           Agreed and Approved by:

*[signature]*                               *[signature]*
Mitchell R. Miller                          Terrence Quinn            Date
mrm:cd
Encl

J:\OFFICE\WP\WM\WT DOCS\MRM\ENGAGE.LTR\Quinn.wpd

## FEE SCHEDULE

|                    | Per Hour |
|--------------------|----------|
| Mitchell R. Miller | $290.00  |
| Associates         | 211.00   |
| Secretarial        | 58.00    |

**MITCHELL R. MILLER**
ATTORNEY AT LAW
315 SOUTH BEVERLY DRIVE, SUITE 501
BEVERLY HILLS, CA 90212

STATEMENT
FOR PROFESSIONAL SERVICES RENDERED

Terry Quinn
1377 Casiano Road
Los Angeles CA 90049

August 1, 2001
Invoice #   96894

Windsor Holdings, LLC

|  |  |  | Hours |  |
|---|---|---|---|---|
| 7/13/01 | MM | Form LLC | 1.10 | |

|  |  | Hours | Amount |
|---|---|---|---|
| | For professional services rendered | 1.10 | $2,000.00 |
| 7/2/01 | Payment - thank you | | ($2,000.00) |
| | Balance due | | $0.00 |

**EXHIBIT B**



# State of California
# Bill Jones
### Secretary of State

## LIMITED LIABILITY COMPANY
## ARTICLES OF ORGANIZATION

A $70.00 filing fee must accompany this form.
IMPORTANT – Read instructions before completing this form.

File# 200120010070

ENDORSED . FILED
in the office of the Secretary of State
of the State of California

JUL 17 2001

BILL JONES, Secretary of State

This Space For Filing Use Only

1. Name of the limited liability company (end the name with the words "Limited Liability Company," " Ltd. Liability Co.," or the abbreviations "LLC" or "L.L.C.")
   Windsor Holdings, LLC

2. The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the Beverly-Killea limited liability company act.

3. Name the agent for service of process and check the appropriate provision below:
   Mitchell R. Miller                                                                 which is
   [X] an individual residing in California. Proceed to item 4.
   [ ] a corporation which has filed a certificate pursuant to section 1505. Proceed to item 5.

4. If an individual, California address of the agent for service of process:
   Address: 315 South Becerly Drive, Suite 501
   City: Beverly Hills    State: CA    Zip Code: 90212

5. The limited liability company will be managed by: (check one)
   [x] one manager  [ ] more than one manager  [ ] single member limited liability company  [ ] all limited liability company members

6. Other matters to be included in this certificate may be set forth on separate attached pages and are made a part of this certificate. Other matters may include the latest date on which the limited liability company is to dissolve.

7. Number of pages attached, if any:

8. Type of business of the limited liability company. (For informational purposes only)
   Investments

9. DECLARATION: It is hereby declared that I am the person who executed this instrument, which execution is my act and deed.

   _Signature of Organizer_    Mitchell R. Miller
                                Type or Print Name of Organizer

   Date: July 13, 2001

10. RETURN TO:
    NAME    Mitchell R. Miller, Attorney at Law
    FIRM    315 South Beverly Drive, Suite 501
    ADDRESS Beverly Hills, CA 90212
    CITY/STATE
    ZIP CODE

SEC/STATE (REV. 12/99)    EXHIBIT C    FORM LLC-1 – FILING FEE $70.00
                                       Approved by Secretary of State