### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| SANITEC WEST, et al., | ) CASE No. 1:02 CV 1582 |
| Plaintiffs, | ) JUDGE DONALD C. NUGENT |
| vs. | ) |
| JOSEPH DELLOIACOVO, et al., | ) MEMORANDUM IN OPPOSITION TO |
| | ) GOODMAN BRIEF REGARDING |
| Defendants | ) OWNERSHIP OF WINDSOR |

Pursuant to LR 7.1(d), this Memorandum In Opposition is hereby submitted to the Court in response to the brief filed by Goodman Weiss Miller LLP on February 2, 2004. In their brief, Steven J. Miller and Kimberly Y. Smith of Goodman Weiss Miller LLP (collectively "Goodman") present no valid basis for its objections to the notice of appearance of Richard J. Oparil and Patton Boggs LLP, and Dan L. Makee, David B. Cupar and McDonald Hopkins, Co., LPA (collectively "Patton Boggs").[1] Not only should its objections be overruled, Patton Boggs' cross motion to strike Goodman's notice of appearance should be granted.

### ARGUMENT

In its opening brief (Docket No. 148), Patton Boggs established the following facts: (1) David Kaye ("Kaye") was a Member and Manager of Windsor pursuant to corporate documents drafted by Peter Babos ("Babos"), (2) Terrance Quinn, aka Terry Lee Quatkemeyer ("Quinn") cannot have terminated Kaye's position, (3) Quinn is neither Manager nor Member of Windsor, and (4) James Harkess ("Harkess") is now the sole Member of Windsor. Nothing in Goodman's brief contradicts the evidence that Harkess owns Windsor.

---

[1] Patton Boggs represents Sanitec, Ltd. ("Limited") in this action. The names of the law firms are used only for ease of reference given the nature of the issue before the Court.

{481729:}

Goodman's brief (Docket No. 149) makes entirely new arguments that are in stark contrast to the allegations and arguments that it made in its purported December 19, 2003 notice of appearance. (Docket No. 143). The evidence and the law points to one conclusion -- that James Harkess is the only Member of Windsor Holdings, LLC ("Windsor").[2]

I.  **GOODMAN'S ASSERTIONS IN ITS FEBRUARY 2004 BRIEF CONFLICT WITH THOSE IN ITS DECEMBER 23, 2003 NOTICE OF APPEARANCE AND OBJECTIONS.**

Goodman's assertions in this dispute lack any credibility. Indeed, it cannot keep its own story straight. On December 19, 2003, Goodman purported to notice its appearance and to object to Patton Boggs' representation of Limited in this action. (Docket No. 143). Goodman argued that Harkess' membership certificate in Windsor signed in November 2002 by Kaye could not be valid because Kaye had been terminated by Quinn in May 2002. Goodman represented to this Court that:

> On May 13, 2002, the (then) sole owner of Windsor Holdings, Mr. Terry Quinn, sent a letter to the (then) acting managing member, Mr. David Kaye, removing him from any and all positions and authority regarding Windsor Holdings.

(Docket No. 143 at 2). Goodman attached to its notice a copy of that purported May 13, 2002 letter. (*Id.,* Ex. A). The letter states that "as of now you are removed from the office and any role, authority or power you may have once exercised as Managing Member of Windsor Holdings, LLC." (*Id.*). Quinn also states that he "appreciate[s Kaye's] past efforts . . . ." (*Id.*).[3] Thus, Goodman's notice is a judicial admission that Kaye was Windsor's Managing Member. A

---

[2]  Goodman's brief states that it is undisputed that Limited "owns and controls the intellectual property that is the subject of the underlying dispute in this case." (Docket No. 149 at 1). That intellectual property is owned by Sanitec Industries, Inc. (Ex. A).

[3]  In an October 3, 2003 letter, James H. Smith, who is affiliated with Quinn and Weinsten, wrote to Limited's then counsel, John R. Climaco, that "Mr. Quinn terminated David Kaye as Managing Member of Windsor in May 2002 . . . ." (Ex. B, S-PB000059-61).

{481729:}

judicial admission precludes the introduction of contradictory evidence as to the admitted facts. *See, e.g., Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999).

In its February 2004 brief, Goodman has completely changed its story as to Kaye. Goodman surprisingly contends that Kaye was **never** a Manager or Member of Windsor. Goodman's brief states that:

> At no time did either Quinn or Miller[4] admit or name David Kaye or James Harkess as a Manager, a Managing Member, a Member, or anything else in Windsor Holdings. Any document purporting otherwise is necessarily fraudulent.
>
> Rather, Quinn created the Windsor Trust and designated that it be the sole owner of Windsor Holdings.

(Docket No. 149 at 2).

Goodman thus now asserts that Kaye was never a Manager or Member of Windsor, even though two months ago it clearly represented that Kaye had been terminated from those positions with Windsor by Quinn. These statements are flatly contradictory and cannot be reconciled with one another. In fact, Goodman's brief does not even attempt to reconcile them, perhaps hoping that the Court will not notice the gross inconsistency. Further, Goodman cites no evidence for its new conclusory statements. It is indeed curious that the purported owner and creator of the alleged trust, Quinn, has not provided this Court with a sworn affidavit or declaration setting forth his version of the facts.[5]

---

[4] Goodman's reference to "Miller" is to Windsor's corporate organizer, Mitchell R. Miller. Under California law, an organizer is simply the person that executes and files articles of organization with the Secretary of State. *See* CAL. CORP. CODE § 17050(a).

[5] Nor did Goodman provide the Court with affidavits or declarations from other persons connected to the purported Quinn Trust, such as Jeffrey Weinsten, James Smith, or Peter Babos. Indeed, when Patton Boggs subpoenaed Babos for documents and a deposition, Babos refused to appear. (Exs. C, D).

The Miller affidavit constitutes a waiver of any attorney-client privilege that might have applied to his legal work for Quinn. *See, e.g.*, CAL. EVID. CODE § 912(a) ("the right of any

{481729:}

Thus, the only credible record evidence establishes that Kaye was Manager and Member of Windsor and had the authority to admit Harkess as the substitute Member in November 2002.

## II. GOODMAN'S ARGUMENT THAT THE QUINN TRUST OWNS WINDSOR IS CONTRARY TO THE EVIDENCE.

Goodman's assertion that Harkess is not Windsor's sole Member is belied by the factual record. For example, Patton Boggs' document production to Goodman included copies of Windsor's Operating Agreement, minutes from Windsor's "Organizational Meeting of Manager and Member," "Resolutions of Manager and Original Member of Windsor," and a Windsor membership interest certificate, all executed by Kaye as Managing Member. (Docket No. 148, Kaye Decl. Exs. 2-5). Goodman's brief simply ignores these documents.

Moreover, Kaye averred that the Operating Agreement and other documents discussed above were prepared by a California attorney, Peter Babos ("Babos"). (Docket No. 148, Kaye Decl. ¶¶ 3, 4, 6, 7). Miller's affidavit states that "[i]t was always my understanding that Mr. Babos was Mr. Quinn's lead counsel, and that I was to take direction from him." (Docket No. 149, Miller Affidavit ¶ 4). The documents filed with Patton Boggs' opening brief confirm that Babos drafted Windsor's Operating Agreement and other Windsor documents cited above. The document entitled "Resolutions of Manager and Original Member of Windsor" bears the following footer: "C:\315 Hard Drive\**PJB** FILES\client files\Windsor Holdings\WindsorMin.doc", indicating that it was created by Babos. (Docket No. 148, Kaye

---

person to claim a privilege provided by Section 954 (lawyer-client privilege) . . . is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege.") Patton Boggs requested that Goodwin produce all documents related to that representation, but so far Goodman has failed to do so. (Ex. E).

Decl. Ex. 4 (emphasis added)). Significantly, that document is signed by Kaye as Manager and Original Member and specifies that Harkess "is hereby admitted as a Member of the Company, effective November 21, 2002, and will own 100% of the Members' total Participation Percentages . . . ." (*Id.*). Further still, in a September 17, 2003 email, Babos confirmed to Harkess that Harkess owned Windsor. Babos wrote:

> I will fax to your home copies of the stock ownership I have for Worldwide and Ltd. Worldwide owns Ltd. **Windsor (you)** own 51% of Worldwide. You have the original stock certificate of your ownership of Windsor. David now has the other original LLC documents and corporate book on Windsor.

(Docket No. 148, Harkess Decl. Ex. 6 (emphasis added)). On November 17, 2003, Babos faxed to Harkess copies of stock certificates evidencing ownership of Sanitec, Ltd. (formerly Sanitec, Inc.) by Sanitec Worldwide, Ltd. ("Worldwide") and 51% ownership of Worldwide by Windsor. (*Id.*, Harkess Decl. Ex. 7). The record thus establishes the validity of the Windsor corporate records.

Furthermore, Goodman and Miller ignore public records. Miller has sworn that, other than its Articles of Organization, no documents had been prepared regarding Windsor. (Docket No. 149, Miller Affidavit ¶¶ 5, 6, 10, 11). However, public records from the California Secretary of State establish that Windsor's current agent for service of process is **Kaye** and that Windsor's current principal address and address for service of process is Kaye's, 17555 Ventura Blvd. #200, Encino, California. (Ex. F).[6] Goodman's allegation that Kaye never held any position with Windsor and Miller's assertion that no documents other than the Articles of Organization had been prepared for Windsor are inconsistent with the contemporaneous documents.

---

[6] The file number stamped by the Secretary of State on Windsor's Articles of Organization (Docket No. 148, Kaye Decl. Ex. 1) is 200120010070 -- the same file number on Ex. F. This record is self-authenticating under Fed. R. Evid. 901(b)(7) and falls within the public records hearsay exception of Fed. R. Evid. 803(8).

{481729:}

Additionally, Goodman's statements are inconsistent with Limited's business records. In October 2001, Quinn and Kaye were involved in negotiating a deal to sell Limited's assets to Eden Environmental LLC ("Eden"), a wholly owned subsidiary of Baird, Gonzalez & Partners LLC ("BGP"). (*See, e.g.*, Ex. G at GI 00028-31, LTD 00662). The parties to the agreement were to be Eden, BGP, Windsor, and Sanitec Worldwide, Ltd. ("Worldwide"). (*Id.* at LTD 00662). On October 31, 2001, Kaye signed a Term Sheet **as Managing Member of Windsor**. (*Id.* at LTD 00662, 00666). In view of their joint negotiations and communications on the deal with Eden, an argument that Quinn was unaware of the fact that Kaye was acting for and signing documents as Managing Member of Windsor is simply untenable.

### III.  THE QUINN TRUST IS NOT A MEMBER OF WINDSOR.

The purported Windsor Trust ("Trust") agreement bears the date June 24, 2002 and purports to transfer "100% of the Shares/Ownership Interest in Windsor Holdings, LLC" to the Trust. (Docket No. 143, Ex. B at 1, 11). The agreement was signed by Quinn as settlor and by Jeffery Weinsten ("Weinsten") and James Smith ("Smith") as trustees. (*Id.* at 9, 10). Babos was named as a co-successor trustee. (*Id.* at 3).

Particularly as he is said to be Quinn's "lead counsel" (Docket No. 149, Miller Affidavit ¶ 4), Babos surely knew of the alleged trust agreement when it was made. However, Miller avers that he "called Mr. Quinn and Mr. Babos repeatedly about finalizing the organization of [Windsor], but was told that Mr. Quinn had not yet decided what he wanted to do as far as membership and management." (*Id.* ¶ 3). Miller states that "[d]uring the balance of 2001, 2002 and the beginning of 2003, [he] did not hear anything further about how to structure Windsor Holdings." (*Id.* ¶ 5). Miller further avers that "[i]n December of 2003, Mr. Babos informed [him] that Mr. Quinn recently had been released from serving a sentence in federal prison over

the last year or so. Mr. Babos was hoping that Mr. Quinn could now soon tell [them] how to structure his ownership of Windsor Holdings." (*Id.* ¶ 7).

Miller's assertions that he contacted Babos and Quinn repeatedly, but that (1) they did not tell him how to structure Windsor, (2) he was not instructed how to structure Windsor during 2001, 2002, or the beginning of 2003, and (3) in December 2003, Babos was "*hoping* that Mr. Quinn could now soon tell [them] how to structure his ownership of Windsor Holdings" (*Id.* ¶ 7, emphasis added) are inconsistent with Windsor Trust having been formed in June 2002.

Furthermore, in deposition testimony taken January 27, 2003, Weinsten, a purported trustee of the Quinn Trust, averred that he did not know who owned Windsor:

> Q: And as far as you know, Mr. Quinn owns Windsor Holdings; is that correct?
>
> A: I don't know that.
>
> Q: You believe that to be the case, though?
>
> A: No. Mr. Quinn has just, he speaks on behalf of Windsor Holdings but I don't know who owns Windsor Holdings.

(Ex. H at 152:1-7). Yet Weinsten supposedly signed the Windsor Trust agreement, which bears the date June 24, 2002 and purports to transfer ownership in Windsor to that trust. (Docket No. 143, Ex. B at 1, 10, 11). Such testimony is inconsistent with his signing a trust document six months earlier. Accordingly, Miller and Weinsten's sworn statements suggest that the Windsor Trust agreement was not, in fact, executed on June 24, 2002.

### IV. MILLER DOES NOT HAVE -- AND NEVER HAD -- AUTHORITY TO ADMIT MEMBERS OR APPOINT MANAGERS TO WINDSOR.

Goodman asserts that Miller, as organizer of Windsor, has authority to admit members to and name managers of Windsor. (Docket No. 149 at 2). Here, as is true throughout its brief,

Goodman fails to cite to any supporting authority. That failure is not surprising because Goodman's assertions are contrary to the relevant provisions of California law.

California's Limited Liability Company Act expressly provides that:

> After formation of a limited liability company, a person may become a member:
>
> (1) In the case of a person acquiring a membership interest directly from the limited liability company, at the time provided in and upon compliance with the articles of organization or the operating agreement or, if the articles of organization or operating agreement do not so provide, only upon the vote of a majority in interest of the members, excluding the vote of the person acquiring the membership interest, and only when the person becomes a party to the operating agreement.
>
> (2) In the case of an assignee of a membership interest, upon compliance with subdivision (a) of Section 17303 and at the time provided in and upon compliance with the articles of organization or the operating agreement or, if the articles of organization or operating agreement do not so provide, when the assignee becomes a party to the operating agreement.

CAL. CORP. CODE § 17100(a). Regarding assignees of membership interests,

> Except as otherwise provided in the articles of organization or the operating agreement, an assignee of an interest in a limited liability company may become a member only if a majority in interest of the other members vote in favor of the assignee's admission to the limited liability company as a member.

*Id.* § 17303(a).

Thus, unless an LLC's articles of organization or operating agreement provide otherwise, the authority to admit members to an LLC lies with the membership of the LLC. Additionally, a person may become a member of an LLC only when he becomes a party to the LLC's operating agreement.

With regard to the manner in which one can become a manager, the Act provides that

> If management of the limited liability company is vested in one or more managers pursuant to a statement in the articles of organization:
>
> (a)   Election of managers to fill initial positions or vacancies shall be by the affirmative vote of a majority in interest of the members.

*Id.* § 17152. As with the authority to admit members, the authority to elect managers of an LLC lies with the membership of the LLC.

The manner of admission of members or election of managers may be altered by an LLC's operating agreement. CAL. CORP. CODE § 17005. However, Goodman's affiant, Miller, alleges that Windsor had no operating agreement as recently as February 2, 2004. (Docket No. 149, Miller Affidavit ¶¶ 5, 6, 10, 11). Assuming *arguendo* that Windsor has no operating agreement, the Act controls. CAL. CORP. CODE § 17005(a). The Act clearly does not provide that an the organizer of an LLC has any authority to admit members or appoint managers. Therefore, Goodman's assertion that Miller has or had power to admit members to and name managers of Windsor is devoid of any legal support.

Finally, there is no explanation for the indisputable fact that the Articles of Organization and other corporate documents were created and signed by Kaye, as the sole Member and Manager of Windsor Trust. Goodman has not produced **any** documents demonstrating that the Quinn Trust ever became a Member of Windsor. Thus, the credible evidence supports one conclusion -- Harkess is the Member of Windsor.

## CONCLUSION

For the foregoing reasons, Patton Boggs requests this Court to overrule Goodman's objections to Patton Boggs' notice of appearance and to grant Patton Boggs' cross motion to strike Goodman's notice of appearance.

Respectfully submitted,


   /s/    Dan L. Makee
DAN L. MAKEE (0029602)
DAVID B. CUPAR (0071622)
McDonald Hopkins Co., LPA
2100 Bank One Center
600 Superior Avenue, East
Cleveland, Ohio 44114-2643
Telephone: (216) 348-5400
Facsimile: (216) 348-5474
E-Mail:   dmakee@mcdonaldhopkins.com
          dcupar@mcdonaldhopkins.com

   /s/    Richard J. Oparil
RICHARD J. OPARIL (D.C. Bar No. 409723)
Patton Boggs LLP
2550 M Street, N.W.
Washington, DC 20037-1350
Telephone: (202) 457-6000
Facsimile: (202) 457-6315
E-Mail:     roparil@pattonboggs.com

Attorneys for Plaintiffs Sanitec, Ltd. and
A.B.B. Sanitec West, Inc.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Memorandum In Opposition To Goodman Brief Regarding Ownership Of Windsor was filed electronically with this Court on this 19th day of February, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Respectfully submitted,

　　　　　/s/　　Dan L. Makee　　　　　
DAN L. MAKEE (0029602)
DAVID B. CUPAR (0071622)
McDonald Hopkins Co., LPA
2100 Bank One Center
600 Superior Avenue, East
Cleveland, Ohio 44114-2643
Telephone: (216) 348-5400
Facsimile: (216) 348-5474
E-Mail:　　dmakee@mcdonaldhopkins.com
　　　　　　dcupar@mcdonaldhopkins.com

Counsel for Plaintiffs

{481729:}