# SETTLEMENT AGREEMENT

This Agreement is made among the following parties: Sanitec Industries, Inc. ("Industries"); Sanitec Group LLC ("Group"); Guardian Investments LLC ("Guardian"); Steven Ventre ("Ventre"); and the Represented Investors and note-holders in Guardian Investments, LLC ("Investors") as defined herein (collectively herein the "Parties").

**WHEREAS**, the Parties enter into this Settlement Agreement to resolve and compromise the claims and counterclaims asserted in the pending litigation, as defined herein.

**NOW, THEREFORE**, for the foregoing reasons and in consideration of the representations, warranties, covenants, and promises hereinafter stated, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

1. **Definitions**.

    1.1    "Investors" as used herein shall include both of the following:

    (a)    "Represented Investors," which includes those individuals and entities who are noteholders of Guardian Investments, LLC, or a subsidiary or predecessor-in-interest of Guardian Investments, LLC, and who have, as of April 30, 2003, filed litigation against any one or more of the other parties to this agreement and who are listed on Exhibit "A," attached hereto.

    (b)    "Unrepresented Investors" includes all individuals and entities who are noteholders of Guardian Investments, LLC, or a subsidiary or predecessor-in-interest of Guardian Investments, LLC and who are not "Represented Investors."

    (c)    "Settling Investors" shall mean the represented investors and those unrepresented investors who, upon receipt of notice, elect to join the settlement by executing a release in the form of Exhibit "C", attached hereto, as more fully set out herein.

    1.2    "Litigation" shall mean the following listed pending cases: *Wagner, et al. v. Fiorini, et al.*, Case No. A0203262 (Hamilton County Court of Common Pleas); *Franz v. Fiorini*, A0200257 (Hamilton County Court of Common Pleas); *Fischer, et al. v. Fiorini*, A0202470 (Hamilton County Court of Common Pleas); *Geiger v. Fiorini, et al.*, A0201017 (Hamilton County Court of Common Pleas); *Robben v. Fiorini, et al.*, A0200088 (Hamilton County Court of Common Pleas); *Schaefer v. Guardian*, A0105906 (Hamilton County Court of Common Pleas); *Ploegsma v. Fiorini, et al.*, A0203762 (Hamilton County Court of Common Pleas); *DiMuzio v. Fiorini, et al.*, A0201812 (Hamilton County Court of Common Pleas); *Hamad v. Fiorini, et al.*, A0204272 (Hamilton County Court of Common Pleas); *Burns v.*

*Fiorini, et al.*, A0201895 (Hamilton County Court of Common Pleas); *Curtis v. Fiorini, et al.*, 01-CV-831 (USDC, SD Ohio); *Meyer v. Guardian, et al.*, 01-CV-806 (USDC, SD Ohio); *Liston v. Sanitec International Holdings*, 01-CV-807 (USDC, SD Ohio); *Sanitec West, et al. v. Delloiacovo, et al.*, Case No. 01-02-1582-DCN (USDC, N.D. Ohio); *Guardian Investments, LLC, et al. v. Terry Lee Quatkemeyer*, CA19851-NC (Court of Chancery, State of Delaware).

1.3  "Investors' Counsel" shall mean the attorneys who have been hired by the Represented Investors as defined above and who are listed on Exhibit "A," attached hereto.

1.4  "The sale of any new patented Sanitec medical waste treatment unit" shall be defined to mean "the transfer, encumbrance, or other alienation of any title, rights, and/or interests which Industries owns and/or has for any new, patented Sanitec medical waste treatment unit, in return for money, other consideration, or no consideration whatsoever."

1.5  As used in paragraph 6 herein, "the sale of the intellectual property" shall be defined to mean "either (i) the transfer, licensing, sub-licensing, encumbrance, and/or other alienation of any title, rights, and/or interests in the intellectual property which Industries has and/or will be acquiring under the Settlement Agreement, or (ii) the transfer, assignment, pledging, encumbrance, and/or other alienation of any Industries' shareholder's capital stock in Industries, if that transaction, separately or in combination with any previous transactions, results in a change in the identity of the person(s) and/or entities who/which has/have, either individually or collectively, the controlling interest in Industries."

1.6  As used in paragraph 1.5(ii) herein, "the controlling interest in Industries" shall be defined to mean "that number of shares which, if exercised by the shareholder(s) owning or holding them in trust, would allow such shareholder(s) to authorize the sale of all or substantially all of Industries' corporate assets or to elect the directors who could take that action."

1.7  As used in paragraph 10 herein, "purchaser(s)" shall be defined to mean "any person and/or entity that acquires any title, right, and/or interest in any new patented Sanitec medical waste treatment unit, the intellectual property referred to above, or the controlling interest in Industries".

1.8  "Trust" shall be defined to mean a trust or any other entity, including but not limited to a not-for-profit limited liability company, created or organized by Investors' Counsel to manage, account for and disburse any of the funds paid pursuant to this Agreement.

2.  Group, Guardian, and Ventre hereby assign all rights, title and interest they claim or could forever from this date forward claim in the assets (as reflected in the December 31, 2002 balance sheet of Group) of Group to Industries and intellectual property of Group to Industries.

Upon execution of the Settlement Agreement, Group shall execute and deliver to Industries an assignment of patents and/or trademarks in a form suitable for filing in the U.S. Patent and Trademark Office , and (b) a consent to foreclosure. The assignments and consent are attached hereto as Exhibit "B". Upon execution of this Settlement Agreement, all engineering drawings pertaining to any Sanitec equipment, machinery, technology and devices and process ("Documents") shall be forwarded to Industries.

3.  Settling Investors hereby assign to Industries all rights, title and interest they claim or could forever from this date forward claim in the assets of A.B.B. Sanitec West, Inc. ("Sanitec West"), Industries, Sanitec, Ltd. ("Limited"), and Group.

4.  Upon execution of this Settlement Agreement, any Sanitec internet website now administered by Group, Ventre or Guardian, at the sole option of Industries will either indicate "under construction" or will direct contacts to Industries or its designee rather than the current list of contacts.

5.  The represented investors or their counsel shall create a Trust which shall be initially managed and maintained by Robert C. Kranz of Cincinnati, Ohio, an independent Administrator who is acceptable and accountable to counsel for the Represented Investors. All payments called for to be paid to Investors shall be directed to the Administrator for deposit into a Trust Account.

6.  Payments to the Trust shall be made as follows: (a) Industries shall make an annual payment of Fifty Thousand and 00/100 Dollars ($50,000.00) to the Trust, paid quarterly in the amount of Twelve Thousand Five Hundred and 00/100 Dollars ($12,500.00), beginning on May 1, 2004 for the months of January through March, 2004; and (b) Industries also shall make payment of Fifty Thousand and 00/100 Dollars ($50,000.00) on the sale of any new patented Sanitec medical waste treatment unit; a separate check shall be cut at the closing of any such sale and sent via overnight delivery to the Administrator within one day of the sale. Upon sale of the intellectual property, the proceeds shall be used to pay the Investors the balance owed at the time of sale. Industries shall supply to the Administrator copies of its annual Federal Tax Returns within 90 days of the end of each fiscal year. At such time as the Investors are paid through the foregoing payments to the Trust, if ever, or upon the expiration of the patents, Industries shall own the assets and intellectual property free and clear of the lien held by such Trust.

7.  The payments called for herein shall terminate when the amount paid to the Trust equals Four Million and 00/100 Dollars ($4,000,000.00), or upon December 31, 2008, or upon expiration of the patent rights whichever comes first. Industries shall make a pro rata payment to the Trust for the partial period immediately prior to the expiration of this Agreement owed pursuant to paragraph 6(a).

8.  Within five days after execution of this Agreement, Industries shall provide the Trust with Five Thousand and 00/100 Dollars ($5,000.00) to expend for administrative purposes. This sum shall not be credited against any of the payments made or to be made pursuant to paragraph 6 of this Agreement, and is a separate obligation of Industries under this Agreement.

9. Within thirty (30) days of the recordation in the U.S. Patent and Trademark Office of the assignment of all patent rights assigned to Industries pursuant to paragraph 2 of this Agreement, Industries shall provide Investors' Counsel with evidence that Industries has obtained a commitment from a reputable financial institution for financing in an amount of at least $500,000.00. In order to secure the obligation of paragraph 6(a) of this Agreement, upon the closing of such financing, Industries will create an escrow account, in favor of the Trust, in an amount the net present value of which is sufficient to pay the maximum amount required by paragraph 6(a) and any necessary escrow fees. In the event that Industries fails to make the payments required by paragraph 6(a) within ten (10) days of the date on which they are due, the Escrow Agent shall make such payments to the Trust upon receiving a written demand from the Administrator. Any balance in the escrow account remaining after the obligation under paragraph 6 has been satisfied shall belong to Industries.

9.5 In addition to the provisions set forth in paragraph 9 above, Industries, the Trust and the Escrow Agent shall enter into a separate Escrow Agreement, which provides that (a) to the extent there are any liens on the funds in the Escrow Account, the Trust shall have the first lien on said funds until all obligations contained within the Settlement Agreement are satisfied in full, (b) the Escrow Agent is an individual or entity mutually acceptable to Industries and the Trust, (c) any disputes arising under the terms of the Escrow Agreement shall be governed by Ohio law and, any claim and/or dispute arising from or relating to the Escrow Agreement shall be brought in Hamilton County, Ohio, in either the Hamilton County Court of Common Pleas or the U.S. District Court for the Southern District of Ohio, Western Division, at Cincinnati, Ohio, and the parties waive any objection which they might otherwise have as to the jurisdiction and venue of either Court.

10. Notwithstanding anything stated or implied to the contrary in paragraph 7 of the Settlement Agreement, Industries shall owe the Investors the royalties and other payments specified in the stated section for any sales of new, patented Sanitec medical waste treatment units and/or intellectual property which have been negotiated and agreed upon with any existing or prospective purchaser thereof prior to the expiration date of the Settlement Agreement, regardless of whether such transaction has been fully documented and/or closed upon, as if such sales had been completed prior to such expiration date.

11. The Administrator shall divide the funds received pursuant to this Agreement into three separate funds, an administration fund, to be used for payment of the costs of administration of the Trust, a fee fund, to be distributed to Investors' Counsel, and an investor fund, to be distributed to all Settling Investors. The percentage of the total amount to be placed into each of these three funds is as follows: 5.00% shall first be placed into the administrative fund for the payment of costs associated with the management of the Trust, 63.00% shall be placed into the investor fund, and 32.00% shall be placed into the fee fund. The Administrator, in his discretion, may open separate bank accounts for the management of these funds, or may maintain one bank account for all three, but in any event shall separately account for the sums contained within each fund.

12. Upon final execution of the Settlement Agreement, the Administrator shall notify all Unrepresented Investors of the terms of the settlement and shall allow each of them to submit

a proof of claim and execute a release of claims similar to those executed by the Represented Investors. All Represented Investors and all approved Unrepresented Investors (defined as the "Settling Investors") shall be paid such sums as are available for distribution by the Administrator pro-rata, based upon the total amount of any unreturned investment, exclusive of interest, as of January 1, 2003. Such distributions shall be made by the Administrator from time to time as the Administrator deems appropriate.

13.    At the time of any distribution to the Settling Investors, the Administrator shall distribute to Investors' Counsel a legal fee from the fee fund in the percentages as set out in the attached Exhibit "D".

14.    The Administrator shall submit a written account of the activities of the Trust at least annually to Investors' Counsel. In the event that funds in the administration fund are not used in the administration of the Trust, such funds shall be transferred to the investor fund for distribution to the Investors.

15.    Upon execution of this Settlement Agreement by all parties hereto, Investors' Counsel, or their designee(s) shall (a) prepare an appropriate notice to the Unrepresented Investors; (b) establish the criteria for participation in the settlement fund by Unrepresented Investors; (c) prepare an appropriate release to be signed by any such investors who hold unpaid notes from Guardian Investments, LLC as of January 1, 2003; (d) retain the services of the Trust Administrator; (e) direct that the Administrator mail a notice of this settlement to the Unrepresented Investors, allowing them to elect to join in the distribution of the settlement funds as set out herein, upon submission of adequate evidence of their claim and upon execution of the release in the form of Exhibit "C".

16.    **Mutual Release**. The Parties hereto, for themselves and for their heirs, executors, administrators and assigns, do hereby release, discharge and covenant not to sue the other Parties hereto, including their officers, directors, partners (both general and limited), shareholders, agents, and employees (including their respective heirs, executors, administrators, and assigns) (jointly referred to as "Releasee"), of, from, and for all manner of actions, suits, debts, sums of money, accounts, covenants, controversies, agreements, promises, damages, judgments, claims, warranties (express and implied), demands or causes of action, at law, in equity or otherwise, of any nature, whether known or unknown, which they had, now have or can, shall or may ever have against any Releasee occurring at any time prior to and after the date of this Release.

17.    Industries shall request Sanitec West and Limited to voluntarily dismiss their claims against Barbara Sager in the action captioned *Sanitec West v. Delloiacovo*, Civil Action No. 02-1582 (N.D. Ohio). Nothing in this Settlement Agreement shall limit any claims Sanitec West and Sanitec, Ltd. have against Coolidge Wall Womsley & Lombard Co., L.P.A.

18.    **Applicable Law, Jurisdiction, and Venue**. The instruction, interpretation, and enforcement of this Agreement shall be governed by Ohio law. Furthermore, any claim and/or dispute arising from or relating to this Settlement Agreement shall be brought in Hamilton County, Ohio, in either the Hamilton County Court of Common Pleas or the U.S. District Court

for the Southern District of Ohio, Western Division, at Cincinnati, Ohio, and the parties waive any objection which they might otherwise have as to the jurisdiction and venue of either Court.

19. **Representations and Warranties**. The following representations and warranties shall be fully admissible as evidence in any dispute pertaining to this Settlement Agreement or the subject matter thereof

(a) The Represented Investors and the Settling Investors represent and warrant to Industries that, prior to November 1, 2003, neither they nor their counsel, if any, were aware of a purported License Agreement dated as of April 17, 2003 ("Micro-Waste License Agreement") between Group and Micro-Waste Corporation ("Micro-Waste").

(b) Group and Ventre represent and warrant to the other parties hereto that, as of April 2003: (i) at the time Ventre executed any agreement, contract or understanding between Group and Micro-Waste, including without limitation, any letter agreement and Micro-Waste License Agreement, Micro-Waste, including Robert Bollinger, was aware of a dispute as to the ownership of the intellectual property that is the subject of the Settlement Agreement, including litigation related thereto; (ii) prior to executing the Micro-Waste License Agreement Group did not obtain an independent economic analysis as to the amount of royalties to be paid pursuant to that agreement; (iii) Ventre believed he could sign the License Agreement; (iv) in April 2003, Robert Bollinger represented to Group and Ventre that: (A) Micro-Waste was the sole bidder on a contract for a mobile microwave disinfection unit, (B) the contract would shortly be awarded to Micro-Waste for such unit, and (C) Micro-Waste would pay a $100,000 royalty; (vi) based on Bollinger's representations, Ventre executed the Micro-Wave License Agreement; and (v) despite Bollinger's representation, Micro-Waste has not make any payments, including royalty payments, to Group or Ventre.

20. **Action Against Micro-Waste**.

(a) The parties to the Settlement Agreement hereby assign and transfer any claim or cause of action that they have or may have had against Micro-Waste to Industries.

(b) Group and/or Ventre shall reasonably cooperate with Industries in connection with any litigation with Micro-Waste.

(c) Industries does hereby release, discharge and covenant not to sue Ventre of, from, and for all manner of actions, suits, debts, sums of money, accounts, covenants, controversies, agreements, promises, damages, judgments, claims, warranties (express and implied), demands or causes of action, at law, in equity or otherwise, of any nature, whether known or unknown, which they had, now have or can, shall or may ever have

against such releasees pertaining to the Micro-Waste License Agreement. Nothing in this subparagraph shall be construed to apply to Terry Quatkemeyer, aka Terry Quinn. Industries shall cause Sanitec West to execute a comparable release to Ventre.

21. This Agreement and the releases signed pursuant thereto shall not affect any of the claims of the Investors or any of the Parties hereto as to any individual or entity that is not a Party to this Agreement.

22. Upon the execution of this Settlement Agreement by all parties, the Parties shall execute and file a stipulation and order of dismissal with respect to each of the pending Litigation cases, with each Party to bear its own litigation expenses and court costs, in the form of Exhibit "E" attached hereto. If claims made in those cases remain pertaining to individuals or entities who are not a party to this Agreement, or claims remain that are allowed to be maintained, then partial final dismissals with prejudice shall be entered into those cases as to the claims resolved by this Settlement Agreement, allowing the permitted claims to continue.

23. This Settlement Agreement is an expression of intent by the parties to conclude an agreement including these terms. However, its terms are not enforceable against any party until such time as the it has been executed by all parties hereto, or their counsel. The parties hereto, or their counsel, shall execute any additional documents reasonably necessary to effectuate this Settlement Agreement.

24. This Settlement Agreement may be signed in original or telecopied counterparts, each of which shall be considered an original, but all of which together shall be considered one Settlement Agreement. The Settlement Agreement shall be effective when such counterparts have been exchanged, by facsimile or otherwise.

25. SIGNATURES ON FOLLOWING PAGES

Sanitec Industries, Inc.

By: _____

Its: _____

Sanitec Group, LLC

By: *Stephen R. Ventre* (signature)

Its: *Sole Member* (signature)

Guardian Investments, LLC

*(signature)*
By: Steven Ventre

Its: *Sole Member* (signature)

*(signature)*
Steven Ventre, Individually


_____
Timothy A. Fischer, Esq.
Attorney for Plaintiffs in Wagner v. Fiorini


_____
Douglas Haman, Esq.
Attorney for Plaintiffs in Wagner v. Fiorini


_____
Michael J. Bergmann, Esq.
Attorney for Plaintiffs in Franz v. Fiorini


_____
Edward L. Hoseus, Esq.
Attorney for Plaintiffs in Fischer v. Fiorini

_____
Barry Fagel, Esq.
Attorney for Plaintiffs in Geiger v. Fiorini

_____
Geoffrey P. Damon, Esq.
Attorney for Plaintiffs in Robben v. Fiorini

_____
John M. Cloud, Esq.
Attorney for Plaintiffs in Shaefer v. Guardian

_____
Steven R. Hicks, Esq.
Attorney for Plaintiffs in Ploegsma v. Fiorini

_____
Timothy A. Garry, Esq.
Attorney for Plaintiffs in DiMuzio v. Fiorini

_____
Robert G. Kelly, Esq.
Attorney for Plaintiffs in Hamad v. Fiorini

_____
Joseph M. Luken, Esq.
Attorney for Plaintiffs in Burns v. Fiorini

_____
Stacey L. Graus, Esq.
Attorney for Plaintiffs in Murtis v. Fiorini,
Meyer v. Guardian and Liston v. Sanitec

# EXHIBIT A

LIST OF REPRESENTED INVESTORS

| Plaintiffs | Attorney Last Name |
|---|---|
| Donald Sallee | Fischer/Haman |
| Donald Sallee | Fischer/Haman |
| Donald Sallee | Fischer/Haman |
| Donald Sallee | Fischer/Haman |
| Garry Frederick | Fischer/Haman |
| Mary Hagen | Fischer/Haman |
| Mary Hagen | Fischer/Haman |
| Mary Hagen | Fischer/Haman |
| Richard Hagen | Fischer/Haman |
| Richard Hagen | Fischer/Haman |
| Richard Hagen | Fischer/Haman |
| Lowell Lay | Fischer/Haman |
| Donald Michaels | Fischer/Haman |
| Donald Michaels | Fischer/Haman |
| Donald Michaels | Fischer/Haman |
| Donald Michaels | Fischer/Haman |
| Marie Minges | Fischer/Haman |
| Helen Runk | Fischer/Haman |
| Helen Runk | Fischer/Haman |
| Robert Runk | Fischer/Haman |
| Robert Runk | Fischer/Haman |
| Mike Ward | Fischer/Haman |
| Mike Ward | Fischer/Haman |
| Lillian Wilpers | Fischer/Haman |
| Gertrude Franz | Bergman |
| Est. of C. Fischer | Hoseus |
| Est. of C. Fischer | Hoseus |
| Maxine Geiger | Fagel |
| Paul Robben | Damon |
| Evelyn Schaefer | Cloud |
| Evelyn Schaefer | Cloud |
| Howard Ploegsma | Hicks |
| Howard Ploegsma | Hicks |
| Marva Dimuzio | Garry |
| Fred Hamad | Kelly |
| Fred Hamad | Kelly |
| Larry Burns | Luken |
| Larry Burns | Luken |
| Kenneth Curtis | Graus |

| | |
|---|---|
| Kenneth Curtis | Graus |
| Dennis Meyer | Graus |
| Dennis Meyer | Graus |
| Dennis Meyer | Graus |
| Dennis Meyer | Graus |
| Dorothy Liston | Graus |
| Dorothy Liston | Graus |
| Jack Payne | Graus |

# EXHIBIT D

Pro-rata distribution to plaintiffs' attorneys

| ATTORNEY | TOTAL CLIENT INVESTMENTS | PRO--RATA DISTRIBUTION |
|---|---|---|
| Garry | $ 11,527.10 | 0.38% |
| Hoseus | $ 84,921.58 | 2.80% |
| Damon | $ 33,692.87 | 1.11% |
| Fagel | $ 68,294.52 | 2.25% |
| Cloud | $ 68,561.64 | 2.26% |
| Graus | $ 349,999.87 | 11.53% |
| Kelly | $ 100,000.00 | 3.29% |
| Hicks | $ 248,000.00 | 8.17% |
| Luken | $ 252,471.23 | 8.32% |
| Bergman | $ 365,000.00 | 12.03% |
| Fischer/Haman | $ 1,452,815.04 | 47.86% |
| TOTAL | $ 3,035,283.85 | 100% |

#3739849

**Exhibit B**