UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | | |
|---|---|---|
| MILDRED W FINCH et. al.<br>Individually and as representatives<br>of a class consisting of all persons<br>who at various times<br>purchased through the Defendant<br>George Fiorini and others promissory<br>notes issued by Standard Trust or<br>Guardian Investments LLC | : | Case No. C-1-02-132 |
| | : | ( Judge Beckwith) |
| | : | |
| | : | |
| Plaintiffs | : | |
| VS . | : | |
| GEORGE FIORINI, DBA<br>THE FIORINI AGENCY, et. al. | : | THIRD AMENDED CLASS<br>ACTION COMPLAINT<br>(Jury Demand Endorsed Hereon) |
| AND | : | |
| STEVEN VENTRE | : | |
| AND | : | |
| GUARDIAN INVESTMENTS, LLC | : | |
| AND | : | |
| TERRANCE LEE QUATKEMEYER<br>a.k.a. TERRY QUINN | : | |
| AND | : | |
| SANITEC LIMITED | : | |
| AND | : | |
| SANITEC GROUP LLC<br>A Delaware limited liability company<br>23 Fairfield Place<br>West Caldwell, New Jersey 07006 | : | |

AND

SANITEC INDUSTRIES INC
A California Corporation
11570 Sunshine Terrace
Studio City, California  91604

:

:

Defendants

## PARTIES

1. Plaintiffs Mildred W. Finch et.al. are representatives of a class consisting of all persons who purchased securities in the form of promissory notes through George Fiorini and others in Guardian Investments LLC or Standard Trust   The promissory notes involved were purchased in the name of defendant Guardian Investments LLC, or were purchased in the name of some other entity and then converted to Guardian Investments LLC. There are at least 140 members of the Plaintiff Class.

2. George J. Fiorini II, individually and DBA The Fiorini Agency (Fiorini) is an individual who owns and controls the Fiorini agency, a sole proprietorship, with its principal place of business sometimes located at 250 E. 5th Street, Suite 1500, Cincinnati, Ohio 45202.  He acted as an agent of defendant Terrance Lee Quatkemeyer in the scheme to defraud described below.

3. Steven Ventre (hereinafter Ventre) is an individual who resides in Cincinnati Ohio and who acted as an agent of defendant Terrance Lee Quatkemeyer in the scheme to defraud described below.

4. Guardian Investments LLC (Guardian) is an Ohio limited liability company organized under the laws of the state of Ohio and at some times located and doing business at 3940 Olympic Blvd., Suite 400, Erlanger, Kentucky 41018.

5. Terrance Lee Quatkemeyer, a.k.a. Terry Quinn (hereinafter Quatkemeyer) is the individual who devised and benefited from the scheme to defraud described hereinbelow.

6. Sanitec Ltd. is a Delaware corporation with principal offices formerly located in West Caldwell, New Jersey, and now located in California.

## JURISDICTION

7. Jurisdiction of this Court is invoked under 28 USC § 1331, Federal question subject matter jurisdiction, pursuant to 15 USC § 78aa because the class allegations against defendants include violations of § 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 of the Securities and Exchange Commission (15 USC§ 78j and 17CFR 240.10b-5)

This Court also has federal question subject matter jurisdiction pursuant to 18 USC § 1962(Civil RICO).

## VENUE

8. Venue lies in the Southern District of Ohio, the judicial district in which the overwhelming majority of the members of the class reside and where most of the events or omissions giving rise to the claims herein occurred, as prescribed in 28 USC § 1391(b)(2).

## CLASS ACTION ALLEGATIONS

9 Plaintiffs bring this action on behalf of themselves individually and as representatives of a class of persons who at various times purchased through the Defendant George Fiorini and others "investments" in a so called "10% income

plus plan," receiving therefor promissory notes in entities variously denominated as "Standard Trust" and "Guardian Investments LLC."

10  The Plaintiff class is so numerous that joinder of all members is impracticable. There are questions of law and fact common to all members of the class, and the claims of the representative plaintiffs are typical of the claims of all members of the class, to wit: That the Plaintiffs and all members of the class were solicited by George Fiorini to invest in a so called "10% income plus plan," which Fiorini said was "guaranteed" to produce an income of 10% per annum for the rest of their lives; that in or about the year 2000, they began to receive correspondence, subscription agreements, and promissory notes from Guardian Investments, and further communications regarding their investments from Steven Ventre; that all members of the Plaintiff Class were given promissory notes in return for their investments in entities variously named as "Standard Trust," and "Guardian Investments LLC;" that the representative Plaintiffs and all members of the class have not received income payments in return for their investments, or have requested and been denied refunds of their investments.

11  Plaintiffs will fairly and adequately protect the interests of the class, in that Plaintiffs' interest in this litigation is completely congruent with the interests of the other members of the class; Plaintiffs have no interests adverse to the other members of the class; Plaintiffs have retained counsel of recognized high legal ability and with more than 30 years experience in all forms of litigation, including trials.

12  The prosecution of separate actions by individual members of the class will create a risk of inconsistent or varying adjudications with respect to individual members

4

of the class which would establish incompatible standards of conduct for the parties opposing the class, in that: in the absence of an all inclusive Federal class action, a number of individual actions will be and already have been filed in Ohio and Kentucky state courts, the outcome of which will be anything but uniform; the claims for relief stated in such actions will be many and varied, based upon state statutory and common law; at least one pending action in an Ohio state court has been brought by the director of the division of securities of the state of Ohio, seeking relief which will not protect the interest of the Plaintiffs or the members of the Plaintiff class in the return of their money. The Defendants have acted or refused to act on grounds generally applicable to the Plaintiffs and all members of the Plaintiff Class, thereby making appropriate final injunctive or corresponding declaratory relief, as well as monetary relief, with respect to the class as a whole, in that all members of the class have either not received periodic income payments or not received requested return of their investments, and the *modus operandi* of the Defendants has been uniform or substantially similar with respect to all factual events leading up to the claims of the Plaintiffs and the Plaintiff Class. The questions of law or fact common to members of the class predominate over any questions affecting only individual members, and a class action is superior to other available means for the fair and efficient adjudication of the controversy.

## GENERAL FACTUAL ALLEGATIONS

13   At various times in 1998, 1999 and 2000, the defendants Fiorini, Ventre, and Guardian, acting as agents for the defendant Quatkemeyer, procured money from the planitffs and from the members of the Plaintiff Class by representing to them

that they were investing in a so-called "10% income plus plan," which was "guaranteed" to pay 10% interest per annum on their investments.

14  The said defendants used the United States mail to send to the plaintiffs promissory notes, in entities variously denominated as "Standard Trust," and "Guardian Investments LLC."

15. In or about the year 2000 and thereafter, the defendants Ventre and Guardian Investments LLC, again as agents for the defendant Quatkemeyer, used the mails to send to the plaintiffs subscription agreements and promissory notes of the defendant Guardian Investments LLC, as well as periodic statements falsely representing the "value" of their investments with compounded interest, knowing full well that the amounts stated in the said periodic statements were not available to be paid to the plaintiffs.

16. In addition, the defendants Fiorini and Ventre, acting as agents for the defendant Quatkemeyer, communicated with all of the plaintiffs and members of the Plaintiff Class by interstate telephone communications concerning their "investments," telling the plaintiffs and members of the Plaintiff Class that their money was safe when in fact their money had been used by Quatkemeyer for his own purposes, and none of the money received had been invested for the benefit of any of the investors.

17. The various entities referred to by the defendants Fiorini and Ventre in their dealings with the Plaintiff Class, to wit: the "10% income plus plan," "Standard Trust," and "Guardian Investments LLC," were insubstantial entities, the promissory notes of which were worthless and unregistered securities.

## FIRST CLAIM FOR RELIEF (SECURITIES FRAUD)

18.  Plaintiffs incorporate by reference herein the allegations of paragraphs 9 through 17.

19  By and through their aforesaid conduct, the defendants Fiorini, Ventre and Guardian Investments LLC obtained money from the Plaintiffs and the members of the Plaintiff Class by means of untrue statements of material fact and omissions to state material facts necessary in order to make statements made, in the light of circumstances under which they were made, not misleading; and engaged in practices and courses of business which operated as fraud and deceit upon the plaintiffs and the members of the Plaintiff Class: in particular, in that said defendants never disclosed to any of the plaintiffs or members of the Plaintiff Class how their money would be invested so as to earn 10% income per year; or any practical basis upon which their investments would be "guaranteed." In their dealings with the plaintiffs and members of the Plaintiff Class, the said defendants thus violated the Securities and Exchange Act of 1934, 15 USC § 78J(b) and Rule 10B5 of the Securities and Exchange Commission, 17 CFR 240.10B-5. The total amount procured from the members of the Plaintiff Class by means of the said violations was approximately $13.5 million.

20  The aforesaid fraudulent activities of the defendants Fiorini, Ventre, and Guardian Investments LLC were done by them as agents of and with the acquiescence of the defendant Terrance Lee Quatkemeyer, in furtherance of a scheme by Quatkemeyer to obtain money to invest in various enterprises for his own account, and to use for his own consumption. Quatkemeyer, a cousin of the

defendant Ventre, directed the transfer of the funds obtained by Fiorini and Ventre from the Plaintiff Class into bank accounts held in the name of Guardian Investments LLC in various banks located in Ohio and Kentucky. Under the influence of Quatkemeyer, the defendant Ventre made these funds available to Quatkemeyer, who used them to support a lavish lifestyle for himself, and to make investments for himself, including the acquisition of the defendant Sanitec Ltd., a corporation which was engaged in a business of sanitizing biohazardous medical waste, as to which Sanitec and its proprietary technology have a tremendous potential market world wide.

21. At the time the plaintiffs and the members of the Plaintiff Class made their investments with Fiorini, Ventre and Guardian Investments LLC, they were not told of the existence of a plan to purchase Sanitec.

22. The purchase of Sanitec with Plaintiffs' money and without their knowledge and consent, has unjustly enriched the defendant Quatkemeyer so that the plaintiffs are entitled to have a constructive trust imposed upon the stock and assets of Sanitec Ltd. for the benefit of the Plaintiff Class, and all assets, profits and proceeds of the operation or any use of the assets of the said company should be ordered by the Court to be applied to repayment to the members of the Plaintiff Class of all moneys procured by defendants from the Plaintiff Class; and the Court should appoint a receiver to take control of Sanitec Ltd. and operate it for the benefit of the Plaintiff Class, or sell it and apply the proceeds of such sale to repay the members of the Plaintiff Class.

## SECOND CLAIM FOR RELIEF (CIVIL RICO)

23. Plaintiffs incorporate by reference herein the allegations of paragraphs 9 through 17.

24. Defendants Fiorini, Ventre and Guardian Investments LLC, as agents for the defendant Quatkemeyer, engaged in a pattern of racketeering activity involving numerous violations of 18 USC § 1341 and § 1343 as described hereinabove, in that the defendants have used the United States mail and means of interstate electronic communications to facilitate the fraudulent procurement of money from the plaintiffs and members of the Plaintiff Class.

25. The said use of the United States mail and means of interstate electronic communications by the said defendants included mailing to the plaintiffs promissory notes in various entities denominated as " "Standard Trust," and "Guardian Investments LLC."

26. Beginning in the year 2000 and thereafter, defendants Ventre and Guardian Investments LLC used the mails to send to members of the Plaintiff Class periodic statements falsely representing the "value" of their investments with compounded interest, knowing full well that the amounts stated in the said periodic statements were not available to be paid to the plaintiffs.

27. Telephone communications with members of the Plaintiff Class were made concerning the "investments," and included telling members of the class that their money was safe when in fact their money had been used by Quatkemeyer to indulge his lavish lifestyle, and to purchase investments in various enterprises, including the defendant Sanitec Ltd.

9

28. The various fictitious and insubstantial entities referred to by the defendants Fiorini, Ventre and Guardian Investments LLC in their dealings with members of the Plaintiff Class, to wit: the "10% income plus plan," "Standard Trust," and "Guardian Investments LLC," were components of an enterprise operated by the said defendants for the sole intent and purpose of obtaining money from members of the Plaintiff Class. The total amount procured from members of the Plaintiff Class by means of the said fraudulent enterprise was approximately $13.5 million.

29. Some portion of the total amount procured from the Plaintiff Class was used by Quatkemeyer to purchase control of Sanitec Ltd. as a vehicle to facilitate and/or continue the said pattern of racketeering activity. Quatkemeyer thus owns or controls Sanitec Ltd. in violation of 18 USC § 1962(b); as a result of which violation Quatkemeyer holds his interest in Sanitec Ltd. and affiliated companies in constructive trust for the members of the Plaintiff Class, and all assets, profits, and proceeds of the operation of the said companies or any sale or use of the assets thereof should be ordered by the Court to be applied to the repayment to the members of the Plaintiff Class of all moneys procured from the members of the Plaintiff Class, and the Court should appoint a receiver to take control of the said Sanitec companies and operate them for the benefit of the Plaintiff Class, or sell them and apply the proceeds of such sale to the repayment of the members of the Plaintiff Class.

### THIRD CLAIM FOR RELIEF (Fraudulent Transfer)

30. Plaintiffs incorporate by reference herein the allegations of the preceding paragraphs of this complaint.

10

31. On or about February 17, 2004, the Defendant Sanitec Group LLC, assigned all right title and interest in the US patents covering the proprietary technology for the method of treating medical hazardous waste which had previously belonged to the Defendant Sanitec Ltd., but had been transferred by that Defendant to Sanitec Group LLC in order to escape the predations of the Defendant Quatkemeyer. The assignment of the said patents was effected by the signature of the Defendant Ventre as the sole member of Sanitec Group LLC, and purported to transfer the said patents to the Defendant Sanitec Industries Inc. A copy of the said assignment is attached hereto as Exhibit A.

32. The aforesaid assignment was of all or substantially all of the assets of Sanitec Group LLC, and was made in exchange for consideration which was not reasonably equivalent to the value of the technology which was the subject of the assignment; therefore the aforesaid assignment was fraudulent as to the Plaintiff Class, and made with the intent and effect of hindering them from achieving relief herein, by removing from their reach the only valuable assets of the Defendant Sanitec Ltd., thus rendering Plaintiffs' claim for the imposition of a constructive trust on Sanitec Ltd. valueless.

**WHEREFORE**, Plaintiffs pray judgment against the Defendants, jointly and severally, as follows:

For the imposition of a constructive trust on the assets of Defendant Sanitec Ltd. or any assets in the hands of or in the control of any of the Defendants, possession of which was obtained through funds obtained from the Plaintiff Class by the Defendants as herein alleged; for an order setting aside the fraudulent conveyance complained of in the third claim for relief herein, and ordering that the said patents be restored to the

Defendant Sanitec Ltd; for compensatory damages in the amount of $13.5 million, plus pre and post judgment interest at 10%; for punitive damages, for the costs and expenses of this action, including reasonable attorney fees; and for all other relief of a legal or equitable nature to which the Plaintiffs and the Plaintiff Class may be entitled in the premises.

## JURY DEMAND

Plaintiffs demand jury trial of such of the issues in this cause as are tryable by jury.

William B. Singer (0019323)
Trial Attorney for Plaintiff
621 E. Mehring Way, #1609
Cincinnati, Ohio 45202
(513) 721-0778

_____

Attorney Docket No. 021867.0101                                           PATENT

## ASSIGNMENT

In consideration of the payment by ASSIGNEE to ASSIGNOR of the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

ASSIGNOR:

> SANITEC GROUP, LLC
> a Delaware Limited Liability Company
>
> having a place of business at
> 23 Fairfield Place,
> West Caldwell, New Jersey 07006

(1)    hereby sells, assigns, transfers, and conveys to

ASSIGNEE:

> SANITEC INDUSTRIES, INC.,
> a California Corporation
>
> 11570 Sunshine Terrace
> Studio City, CA 91604

and the successors, assigns, and legal representatives of Assignee

(a)    the entire right, title and interest for the United States of America and its territorial possessions and in all foreign countries, including all rights to claim priority, in and to **U.S. Patent Serial No. 5,270,000** ('000 Patent) issued to Helmut Goldner, Reinhold Kamann, and Heinz Leinski on December 14, 1993 and entitled

APPARATUS AND PROCESS FOR TREATING MEDICAL HAZARDOUS WASTES

and the entire right, title, and interest in and to any inventions and discoveries described in said '000 Patent, any and all other patents and applications for patent on said inventions and/or discoveries, including all renewal applications, reissue applications, re-examination applications, and continuation applications (including, for example, but not limited to Divisional, Continuation, Continuation-In-Part (CIP), Continued Prosecution (CPA), and Request for Continued Examination (RCE) applications), and any patents issuing therefrom, based in whole or in part upon said inventions or discoveries, and/or claiming priority to and/or benefit of said '000 Patent, and every priority right that is or may be predicated upon or arise from said inventions, said discoveries, said applications, and/or said '000 Patent; and

the entire right, title, and interest in and to any substitute, international, foreign, and convention applications and patents drawn to any inventions and/or discoveries

Attorney Docket No. 021867.0101                                              PATENT

described in and/or claiming priority to and/or benefit of said '000 Patent and every priority right that is or may be predicated upon or arise from said foreign applications and patents, to the extent that Assignor has any right, title, or interest in any such foreign applications and/or patents;

(b)    the entire right, title and interest for the United States of America and its territorial possessions and in all foreign countries, including all rights to claim priority, in and to **U.S. Patent Serial No. 5,529,687** ('687 Patent) issued to Joachim Mertsch on June 25, 1996 and entitled

FILLING SLUICE FOR APPLIANCES FOR THE TREATMENT OF INFECTIOUS WASTE,

and the entire right, title, and interest in and to any inventions and discoveries described in said '687 Patent, any and all other patents and applications for patent on said inventions and/or discoveries, including all renewal applications, reissue applications, re-examination applications, and continuation applications (including, for example, but not limited to Divisional, Continuation, Continuation-In-Part (CIP), Continued Prosecution (CPA), and Request for Continued Examination (RCE) applications), and any patents issuing therefrom, based in whole or in part upon said inventions or discoveries, and/or claiming priority to and/or benefit of said '687 Patent, and every priority right that is or may be predicated upon or arise from said inventions, said discoveries, said applications, and/or said '687 Patent, to the extent that Assignor has any right, title, or interest in said '687 Patent; and

the entire right, title, and interest in and to any substitute, international, foreign, and convention applications and patents drawn to any inventions and/or discoveries described in and/or claiming priority to and/or benefit of said '687 Patent and every priority right that is or may be predicated upon or arise from said foreign applications and patents, to the extent that Assignor has any right, title, or interest in any such foreign applications and/or patents;

(c)    the entire right, title and interest for the United States of America and its territorial possessions and in all foreign countries, including all rights to claim priority, in and to **U.S. Patent Application Serial No. 08/276,871** ('871 Application) filed in the name of Joachim Mertsch on July 18, 1994 and entitled

FILLING SLUICE FOR APPLIANCES FOR THE TREATMENT OF INFECTIOUS WASTE,

and the entire right, title, and interest in and to any inventions and discoveries described in said '871 Application, any and all other patents and applications for patent on said inventions and/or discoveries, including all renewal applications, reissue applications, re-examination applications, and continuation applications (including, for example, but not limited to Divisional, Continuation, Continuation-In-Part (CIP), Continued Prosecution (CPA), and Request for Continued Examination (RCE) applications), and any patents issuing therefrom, based in whole or in part upon

(Assignment page 2 of 6)

Attorney Docket No. 021867.0101                                          PATENT

said inventions or discoveries and/or claiming priority to and/or benefit of said '871 Application, and every priority right that is or may be predicated upon or arise from said inventions, said discoveries, said applications, and/or said '871 Application; and

the entire right, title, and interest in and to any substitute, international, foreign, and convention applications and patents drawn to any inventions and/or discoveries described in and/or claiming priority to and/or benefit of said '871 Application and every priority right that is or may be predicated upon or arise from said foreign applications and patents, to the extent that Assignor has any right, title, or interest in any such foreign applications and/or patents;

(2) (a) hereby authorizes Assignee to file patent applications in any and all countries for any or all of said inventions and/or discoveries described in said '000 Patent in Assignor's name or in the name of Assignee or any name that Assignee may deem advisable, under an International Convention or Treaty or otherwise;

(b) to the extent that Assignor has any right, title, or interest in said '687 Patent, hereby authorizes Assignee to file patent applications in any and all countries for any or all of said inventions and/or discoveries described in said '687 Patent in Assignor's name or in the name of Assignee or any name that Assignee may deem advisable, under an International Convention or Treaty or otherwise;

(c) hereby authorizes Assignee to file patent applications in any and all countries for any or all of said inventions and/or discoveries described in said '871 Application in Assignor's name or in the name of Assignee or any name that Assignee may deem advisable, under an International Convention or Treaty or otherwise;

(3) (a) hereby authorizes and requests the Commissioner of Patents and Trademarks of the United States of America to issue or transfer said '000 Patent and all aforementioned applications and patents claiming priority to and/or benefit of or drawn to any inventions and/or discoveries described in said '000 Patent, including all divisional, renewal, reissue, re-examination, and continuation applications and any patents issuing therefrom, to Assignee, as Assignee of the entire right, title, and interest therein or otherwise as Assignee may direct;

(b) to the extent that Assignor has any right, title, or interest in said '687 Patent, hereby authorizes and requests the Commissioner of Patents and Trademarks of the United States of America to issue or transfer said '687 Patent and all aforementioned applications and patents claiming priority to and/or benefit of or drawn to any inventions and/or discoveries described in said '687 Patent, including all divisional, renewal, reissue, re-examination, and continuation applications and any patents issuing therefrom, to Assignee, as Assignee of the entire right, title, and interest therein or otherwise as Assignee may direct;

(c) hereby authorizes and requests the Commissioner of Patents and Trademarks of the United States of America to issue or transfer said '871 Application and all

Attorney Docket No. 021867.0101                                           PATENT

aforementioned applications and patents claiming priority to and/or benefit of or drawn to any inventions and/or discoveries described in said '871 Application, including all divisional, renewal, reissue, re-examination, and continuation applications and any patents issuing therefrom, to Assignee, as Assignee of the entire right, title, and interest therein or otherwise as Assignee may direct;

(d) hereby authorizes and requests the empowered officials of all other governments to issue or transfer all aforementioned substitute, international, foreign, and convention applications and patents drawn to any inventions and/or discoveries described in and/or claiming priority to and/or benefit of said '000 Patent, '687 Patent, and/or '871 Application, to the extent that Assignor has any right, title, or interest in any such foreign applications and patents, to Assignee; and

(4) (a) hereby binds Assignor's heirs, legal representatives, and assigns, as well as Assignor to do, upon Assignee's request and at Assignee's expense, but without additional consideration to Assignor or Assignor's heirs, legal representatives, or assigns, all acts reasonably serving to assure that said inventions and/or discoveries, said '000 Patent, and all aforementioned applications and patents claiming priority to and/or benefit of or drawn to any inventions and/or discoveries described in said '000 Patent, including all renewal applications, reissue applications, re-examination applications, and continuation applications (including, for example, but not limited to Divisional, Continuation, Continuation-In-Part (CIP), Continued Prosecution (CPA), and Request for Continued Examination (RCE) applications) and any patents issuing therefrom shall be held and enjoyed by Assignee as fully and entirely as the same could have been held and enjoyed by Assignor, Assignor's heirs, legal representatives, and assigns if this assignment had not been made; and particularly to execute and deliver to Assignee all lawful application documents including petitions, specifications, and oaths, and all assignments, disclaimers, and lawful affidavits in form and substance as may be requested by Assignee; to communicate to Assignee all facts known to Assignor relating to said '000 Patent, said applications and patents, and said inventions and/or discoveries or the history thereof; to furnish Assignee with any and all documents, photographs, models, samples, and other physical exhibits in Assignor's control or in the control of Assignor's heirs, legal representatives, or assigns which may be useful for establishing the facts of conceptions, disclosures, and reduction to practice of said inventions and/or discoveries; and to testify to the same in any interference, arbitration, or litigation;

(b) to the extent that Assignor has any right, title, or interest in said '687 Patent, hereby binds Assignor's heirs, legal representatives, and assigns, as well as Assignor to do, upon Assignee's request and at Assignee's expense, but without additional consideration to Assignor or Assignor's heirs, legal representatives, or assigns, all acts reasonably serving to assure that said inventions and/or discoveries, said '687 Patent, and all aforementioned applications and patents claiming priority to and/or benefit of or drawn to any inventions and/or discoveries described in said '687 Patent, including all renewal applications, reissue applications, re-examination applications, and continuation applications (including, for example, but not limited to Divisional, Continuation, Continuation-In-Part (CIP), Continued Prosecution (CPA), and Request

(Assignment page 4 of 6)

Attorney Docket No. 021867.0101                                    PATENT

for Continued Examination (RCE) applications) and any patents issuing therefrom shall be held and enjoyed by Assignee as fully and entirely as the same could have been held and enjoyed by Assignor, Assignor's heirs, legal representatives, and assigns if this assignment had not been made; and particularly to execute and deliver to Assignee all lawful application documents including petitions, specifications, and oaths, and all assignments, disclaimers, and lawful affidavits in form and substance as may be requested by Assignee; to communicate to Assignee all facts known to Assignor relating to said '687 Patent, said applications and patents, and said inventions and/or discoveries or the history thereof; to furnish Assignee with any and all documents, photographs, models, samples, and other physical exhibits in Assignor's control or in the control of Assignor's heirs, legal representatives, or assigns which may be useful for establishing the facts of conceptions, disclosures, and reduction to practice of said inventions and/or discoveries; and to testify to the same in any interference, arbitration, or litigation; and

(c)     hereby binds Assignor's heirs, legal representatives, and assigns, as well as Assignor to do, upon Assignee's request and at Assignee's expense, but without additional consideration to Assignor or Assignor's heirs, legal representatives, or assigns, all acts reasonably serving to assure that said inventions and/or discoveries, '871 Application, and all aforementioned applications and patents claiming priority to and/or benefit of or drawn to any inventions and/or discoveries described in said '871 Application, including all renewal applications, reissue applications, re-examination applications, and continuation applications (including, for example, but not limited to Divisional, Continuation, Continuation-In-Part (CIP), Continued Prosecution (CPA), and Request for Continued Examination (RCE) applications) and any patents issuing therefrom shall be held and enjoyed by Assignee as fully and entirely as the same could have been held and enjoyed by Assignor, Assignor's heirs, legal representatives, and assigns if this assignment had not been made; and particularly to execute and deliver to Assignee all lawful application documents including petitions, specifications, and oaths, and all assignments, disclaimers, and lawful affidavits in form and substance as may be requested by Assignee; to communicate to Assignee all facts known to Assignor relating to said '871 Application, said applications and patents, and said inventions and/or discoveries or the history thereof; to furnish Assignee with any and all documents, photographs, models, samples, and other physical exhibits in Assignor's control or in the control of Assignor's heirs, legal representatives, or assigns which may be useful for establishing the facts of conceptions, disclosures, and reduction to practice of said inventions and/or discoveries; and to testify to the same in any interference, arbitration, or litigation.

(5)     The undersigned hereby grant the attorneys of the firm of Patton Boggs LLP, Attorneys at Law, 8484 Westpark Drive, 9th Floor, McLean, VA 22102, the power to insert on this Assignment any further identification which may be necessary or desirable in order to comply with the rules of the United States Patent and Trademark Office for recordation of this document.

Attorney Docket No. 021867.0101                                               PATENT

(6)    In the event that any of the paragraph(s) or provision(s) of this Assignment is unenforceable or inapplicable for any reason, such paragraph(s) or provision(s) will be limited or deleted to the minimum extent necessary so that the remaining paragraphs and provisions remain in full force and effect. Likewise, in the event that any assignment under this Assignment is unenforceable or inapplicable for any reason, such invalid assignment shall be disregarded and shall be void. Each and every other assignment under this instrument shall be considered valid and shall remain in full force and effect.

(7)    To facilitate execution, this Assignment may be executed in as many counterparts as may be required. It shall not be necessary that the signature on behalf of both parties hereto appear on each counterpart hereof. All counterparts hereof shall collectively constitute a single agreement.

IN WITNESS WHEREOF, we have hereunto set our hands and seals on the respective dates below.

ASSIGNOR:

By: _____

Its: _____

Date: 2-17-04

ASSIGNEE:

By: _____

Its: _____

Date: _____

#3630049

(Assignment page 6 of 6)

02/18/2004 16:13  8187691953                    SANITEC                              PAGE  02
02/18/2004 20:07 FAX

Attorney Docket No. 021867.0101                                          PATENT

(6)  In the event that any of the paragraph(s) or provision(s) of this Assignment is unenforceable or inapplicable for any reason, such paragraph(s) or provision(s) will be limited or deleted to the minimum extent necessary so that the remaining paragraphs and provisions remain in full force and effect. Likewise, in the event that any assignment under this Assignment is unenforceable or inapplicable for any reason, such invalid assignment shall be disregarded and shall be void. Each and every other assignment under this instrument shall be considered valid and shall remain in full force and effect.

(7)  To facilitate execution, this Assignment may be executed in as many counterparts as may be required. It shall not be necessary that the signature on behalf of both parties hereto appear on each counterpart hereof. All counterparts hereof shall collectively constitute a single agreement.

IN WITNESS WHEREOF, we have hereunto set our hands and seals on the respective dates below.

ASSIGNOR:

By: _____
Its: _____
Date: 2-17-04

ASSIGNEE:

By: _____
Its: President
Date: 2-18-04

(Assignment page 6 of 6)