> FURTHER ORDERED, ADJUDGED and DECREED that Defendant Group and Defendant Guardian are each foreclosed and barred from and against all equity and right of redemption in and to any of the Collateral under the Security Agreement, including, without limitation, all of Defendant Group's interest in U.S. Patent No. 5,270,000, the License Agreement and the Trademarks.

(Ex. 15).[7]

Thus, wholly apart from the Settlement Agreement, SII has been adjudged to own the right, title and interest in the intellectual property at issue here.

## ARGUMENT

### I. THE PROPOSED COMPLAINT DOES NOT ALLEGE JURISDICTION OVER SII.

Fed. R. Civ. P. 8(a)(1) expressly requires that a complaint must contain "a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new ground of jurisdiction to support it[.]" *See, e.g.*, 5 C. Wright and A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1206 at 110 (2004) ("the complaint in a federal court action must demonstrate that a basis for federal jurisdiction exists"). Finch's proposed third amended complaint ignores this requirement. Finch alleges **no** basis for jurisdiction over the proposed new party, SII. On this basis alone the motion for leave should be denied.

### II. FINCH'S MOTION FOR LEAVE SHOULD BE DENIED AS FUTILE.

One factor that "must be considered in determining whether to grant" leave to amend is "whether the amendment would be a futile gesture." *Scott v. Fairbanks Capital Corp.*, 284 F. Supp. 2d 880, 885 (S.D. Ohio 2003). *See also Estate of Jaycox v. Setty Family Veterans*

---

[7]  SII requests that this Court take judicial notice of the foreclosure decision under Fed. R. Evid. 201(d). *See, e.g., Molinaro v. Fannion/Courier Corp.*, 745 F.2d 651, 655 (Fed. Cir. 1984); *Government of the Virgin Islands v. Testamark*, 528 F.2d 742 (3d Cir. 1976); *Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 892 (D. Del. 1991).

{547546:}

*Residential Care Home*, 231 F. Supp. 2d 725, 734 (S.D. Ohio 2002), *aff'd*, 2004 U.S. App. Lexis 10340 (6th Cir. May 24, 2004); *Kindle Building Co. v. Ford Motor Co.*, 17 F. Supp. 2d 701 705 (N.D. Ohio 1997), *aff'd*, 1998 U.S. App. Lexis 20590 (6th Cir. Aug. 13, 1998). Granting Finch's motion for leave here would be a futile gesture.

    A.    **The New Jersey Foreclosure Judgment Precludes Finch From Invoking Ohio's Fraudulent Transfer Act.**

Finch's third claim for relief arises under Ohio's Fraudulent Transfer Act, R.C. § 1336.01, *et seq.*, which "creates a right of action for a creditor to set aside an allegedly fraudulent transfer of assets." *Sanderson Farms, Inc. v. Gasbarro*, 2004 Ohio 1460, 2004 Ohio App. Lexis 1296 at *28 (Ohio Ct. App., Mar. 25, 2004).[8] To invoke the statute, the "debtor" must have "made" a "transfer" of assets. R.C. §§ 1336.04(A), 1336.05(A).[9]

Here, SII has a final and binding judgment of foreclosure issued on the assets of Group, including intellectual property assets. That foreclosure is simply not a transfer made by Group, it is a court order. Consequently, SII owns the intellectual property assets separate and apart from the Settlement Agreement that is the sole basis for the alleged fraudulent transfer claim in Finch's proposed third amended complaint.

Finch's proposed complaint does not challenge the New Jersey foreclosure judgment. Nor could it because that judgment is entitled to full faith and credit in this Court. A state judicial proceeding "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such

---

[8] Neither Finch's motion nor its proposed third amended complaint mention the statute.

[9] Under the statute, a "debtor" "means a person who is liable on a claim." R.C. § 1336.01(F). "Transfer" "means every direct or indirect, absolute or conditional, and voluntary or involuntary method of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." R.C. § 1336.01(L).

{547546:}

State, Territory or Possession from which they are taken." 17 U.S.C. § 1738 3d ¶. The full faith and credit statute requires a federal court to give the judgment the same effect as the rendering state would. *See, e.g., Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Corn v. Marks*, 192 B.R. 379, 383 (E.D. Pa. 1986), *aff'd*, 106 F.3d 386 (3d Cir. 1996); *Postma v. First Fed. Sav. & Loan Ass'n*, 1995 U.S. Dist. Lexis 20633 at *33-34 (N.D. Iowa, Mar. 28, 1995). Full faith and credit has been given to state foreclosure judgments. *See, e.g., In re Venice-Oxford Assocs.*, 236 B.R. 791 (Bankr. M.D. Fl. 1998); *Postma*, 1995 U.S. Dist. Lexis 20633. In New Jersey, a foreclosure judgment has preclusive effect. *See, e.g., Rogan Equities, Inc. v. Santini*, 672 A.2d 1281 (N.J. App. Div. 1995).

Therefore, there is a separate and independent basis for SII's ownership interest in the assets at issue that Finch's proposed third amended complaint entirely ignores. The foreclosure judgment provides SII with ownership without regard to the Settlement Agreement. The motion for leave should be denied.

**B.    The Settlement Agreement Is Not A Fraudulent Transfer.**

Finch's claim that the Settlement Agreement was a fraudulent transfer would also fail as a matter of law and would render the amendment futile. Ohio law provides that a fraudulent transfer occurs with respect to creditors whose claims arose before the transfer or obligation incurred:

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

R.C. § 1336.05(A).

Ohio law provides that a transfer made at any time is fraudulent as to a creditor when:

{547546:}

- 11 -

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
>
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor;
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:
>
> (a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
>
> (b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

R.C. § 1336.04(A).

A fraudulent transfer under these provisions require a "transfer" by the debtor, which means "disposing of or parting with an **asset** or an interest in an **asset**[.]" R.C. § 1336.01(L) (emphasis added). The statute also defines "asset" to mean "property of a debtor, but **does not include** . . . Property to the extent it is encumbered by a valid lien[.]" R.C. § 1336.01(B)(1) (emphasis added). A lien includes an interest in property to secure a debt or obligation, including a security interest created by an agreement:

> "Lien" means a charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, a judicial lien obtained by legal or equitable process or proceedings, a common law lien, or a statutory lien.

R.C. § 1336.01(H). A valid lien has been held to mean that:

> In order to be a "valid lien," the lien must be "effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." See R.C. 1336.04(M). This ordinarily means that a security interest must be perfected under R.C. 1309.20.

{547546:}

*Longo Constr., Inc. v. ASAP Technical Servs., Inc.*, 140 Ohio App. 3d 665, 673, 748 N.E.2d 1164 (Ohio Ct. App. 2000), citing *Comer v. Calim*, 128 Ohio App. 3d 599, 604, 716 N.E.2d 245 (Ohio Ct. App. 1998).

Here, SII's predecessor in interest, Platinum, and Group entered into the Factoring Agreement in March 2002, under which the parties had mutual obligations. (Ex. 7). To secure Group's performance, it entered into a Security Agreement, giving Platinum a security interest in collateral, including "Accounts, Chattel Paper, Inventory, Equipment, Instruments, Investment Property, General Intangibles, Documents and proceeds and products of the foregoing[.]"[10] (Ex. 8 §§ 1-2). Under New Jersey law (which governs the Security Agreement, Ex. 8 § 21), "a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and **against creditors**." N.J.S.A. § 12A:9-201(a).

A security interest may be perfected by filing a financing statement. N.J.S.A. §§ 12A:9-308(a), 12A:9-310(a); *Lloyds Credit Corp. v. McClain Heller Ins., Inc.*, 620 A.2d 472 (N.J. Super. Ct. 1992). Platinum filed a UCC Financing Statement on March 20, 2002 with the Delaware Secretary of State and thus perfected its security interest in the collateral, including Group's intellectual property assets. (Ex. 9). *See In re Cybernetic Services, Inc.*, 252 F.3d at 1059 (secured party perfected their security interest in debtor's patent by recording it with the Secretary of State and thus have priority over the Trustee's claim because they recorded their interest before the filing of a bankruptcy petition). After Platinum assigned to SII all right, title

---

[10] The term "general intangibles" includes personal property, patents and other intellectual property rights. N.J.S.A. 12A:9-102(42); N.J.S.A. 12A:9-106; *Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1333 n.9 (Fed. Cir. 2002); *In re Cybernetic Services, Inc.*, 252 F.3d 1039, 1045 (9th Cir. 2001), *cert. denied*, 534 U.S. 1130 (2002); *U.S. Test, Inc. v. NDE Environmental Corp.*, 196 F.3d 1376, 1382 (Fed. Cir. 1999); *In re Skaggs*, 91 B.R. 1018, 1019 (Bankr. S.D. Ohio 1988). *See also* 35 U.S.C. § 261 ("patents shall have the attributes of personal property").

{547546:}

and interest to the agreements between Platinum and Group (Ex. 11), on December 12, 2003, SII filed a UCC financing statement amendment with the Delaware Secretary of State of Delaware.[11] (Ex. 12).

Group defaulted on its obligations to Platinum and SII. (Exs. 10. 13). Upon Group's default, Platinum had "all of the rights and remedies of a secured party under the Uniform Commercial Code and shall have full power and authority to sell or otherwise dispose of the Collateral or any part thereof." (Ex. 8 § 10). The UCC provides that:

> After default, a secured party has the rights provided in this part and, except as otherwise provided in 12A:9-602, those provided by agreement of the parties. A secured party:
>
> may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure[.]

N.J.S.A. § 12A:9-601(a)(1).

SII filed a complaint in 2003 to foreclose on Group's collateral defined in the Security Agreement, including intellectual property assets, as permitted by section 12A:9-601(a)(1), and obtained a final foreclosure judgment. (Exs. 14-15). Therefore, long before the Settlement Agreement was executed in early 2004, Group's intellectual property assets, among others, were the subject of a filed and thus perfected security interest in favor of Platinum. As such, they are not "assets" of the alleged debtor, Group, and are thus not subject to the fraudulent conveyance statute. Finch's motion for leave to file such a claim against SII should be denied.

---

[11] SII was not required to file to maintain the perfected security interest. N.J.S.A. § 12A:9-310(c) ("If a secured party assigns a perfected security interest or agricultural lien, a filing under this chapter is not required to continue the perfected status of the security interest against creditors of and transferees from the original debtor."). Out of an abundance of caution, SII also filed the Platinum assignment with the PTO. (Ex. 16).

### III. GRANTING THE REQUESTED LEAVE WOULD DELAY TRIAL OF THE EXISTING AND UNRELATED CLAIMS.

Allowing Finch leave to amend to bring in a new claim and a new defendant would mean that the Court's existing Scheduling Order, under which trial is to begin on December 6, 2004, would have to be modified. (Docket No. 84). Key deadlines have passed -- April 2, 2004 for discovery; May 3, 2004 for expert reports; and July 19, 2004 for dispositive motions. (*Id.*). Adding SII as a defendant would mean a delay of several months. Moreover, the proposed amended complaint does not name as new defendants other parties to the Settlement Agreement, *i.e.*, the settling investors. Those investors have rights and obligations under the agreement and may have to be added as parties under Fed. R. Civ. P. 19.

SII understands that, for whatever reason, Finch has not taken significant, if any, discovery, identified experts or filed dispositive motions. The existing defendants would be put to the burden and expense that would result if discovery, expert reports and dispositive motions deadlines were now reopened.

In addition, the proposed new third claim against SII is based on alleged conduct that occurred in 2003 and 2004 -- having little, if anything, to do with the alleged scheme to defraud investors that is the basis for the second amended complaint on which trial is scheduled to occur. Finch expressly alleges that the investor-plaintiffs were defrauded by conduct that occurred "[a]t various times in 1998, 1999 and 2000[.]" (Docket No. 55 ¶ 98; *see also* Docket No. 105, Att. 1 ¶ 13). SII was not formed until 2003. (Oparil Decl. ¶ 2). SII has no ownership interest in defendants Group, Sanitec, Ltd., or Guardian. The individual defendants, Ventre, Quatkemeyer, and Fiorini, have no ownership interest in or other connection to SII. (*Id.* ¶ 3). SII would be unfairly prejudiced and the jury confused if both sets of claims based on different facts were joined together. There is also a real danger of guilt by association since Ventre, Quatkemeyer,

and Fiorini, have criminal records. *See, e.g.*, *United States v. Fiorini* (S.D. Ohio Case No. 03-CR-68, Docket Nos. 87, 89).

Finally, SII notes that the proposed third amended complaint is pled as a class action complaint. (Docket No. 105 Att. 1 ¶¶ 9-13). This Court has repeated rejected Finch's motions to certify. (Docket Nos. 71, 82, 96). Finch's continued class action pleading is a further reason to deny leave to amend.

## CONCLUSION

For all the foregoing reasons, Finch's motion for leave to file a third amended class action complaint should be denied.

Dated: September 10, 2004                               Respectfully submitted,

                                                         /s/    Dan L. Makee
                                                        DAN L. MAKEE (0029602)
                                                        McDonald Hopkins Co., LPA
                                                        Suite 2100
                                                        600 Superior Avenue, East
                                                        Cleveland, Ohio 44114-2653
                                                        Telephone:  (216) 348-5400
                                                        Facsimile:  (216) 348-5474
                                                        E-Mail:     dmakee@mcdonaldhopkins.com

                                                        An Attorney for Defendant Sanitec, Ltd.

*Of Counsel:*

RICHARD J. OPARIL (D.C. Bar No. 409723)
Patton Boggs LLP
2550 M Street, NW
Washington, DC 20037
Telephone:  (202) 457-6000
Facsimile:  (202) 457-6315
E-Mail:     roparil@pattonboggs.com

{547546:}

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Opposition was filed electronically with this Court on this 10th day of September, 2004 and that all parties will be served via the Court's electronic filing system with a copy also being served via regular U.S. Mail on this same date to:

>William B. Singer, Esq.
>621 East Mehring Way, #1609
>Cincinnati, Ohio 45202
>
>Attorney for Plaintiff

>/s/   Dan L. Makee
>DAN L. MAKEE (0029602)
>McDonald Hopkins Co., LPA
>Suite 2100
>600 Superior Avenue, East
>Cleveland, Ohio 44114-2653
>Telephone:  (216) 348-5400
>Facsimile:   (216) 348-5474
>E-Mail:       dmakee@mcdonaldhopkins.com

{547546:}