# NOTICE OF SETTLEMENT

This notice is sent to you because you appear in the records of Guardian Investments, LLC, as an investor or a noteholder, and your note may not have been repaid.

This notice is to inform you about a settlement that has been reached in litigation brought by some investors against George Fiorini, Terry Quinn, Guardian Investments, Steven Ventre and others. Those investors have settled the following cases with some of the named defendants (and other parties as well), but not with George Fiorini and Terry Quinn (aka Terry Quatkemeyer). Mr. Fiorini and Mr. Quinn are **not** a part of the settlement, and no claims against them are being dismissed, released or settled. The cases that contain claims that have been settled are the following:

> *Wagner, et al. v. Fiorini, et al.*, Case No. A0203262 (Hamilton County Court of Common Pleas);
> *Franz v. Fiorini*, A0200257 (Hamilton County Court of Common Pleas);
> *Fischer, et al. v. Fiorini*, A0202470 (Hamilton County Court of Common Pleas);
> *Geiger v. Fiorini, et al.*, A0201017 (Hamilton County Court of Common Pleas);
> *Robben v. Fiorini, et al.*, A0200088 (Hamilton County Court of Common Pleas);
> *Schaefer v. Guardian*, A0105906 (Hamilton County Court of Common Pleas);
> *Ploegsma v. Fiorini, et al.*, A0203762 (Hamilton County Court of Common Pleas);
> *DiMuzio v. Fiorini, et al.*, A0201812 (Hamilton County Court of Common Pleas);
> *Hamad v. Fiorini, et al.*, A0204272 (Hamilton County Court of Common Pleas);
> *Burns v. Fiorini, et al.*, A0201895 (Hamilton County Court of Common Pleas);
> *Curtis v. Fiorini, et al.*, 01-CV-831 (USDC, SD Ohio);
> *Meyer v. Guardian, et al.*, 01-CV-806 (USDC, SD Ohio);
> *Liston v. Sanitec International Holdings*, 01-CV-807 (USDC, SD Ohio);

A copy of the settlement agreement is attached to this notice. Under the terms of this settlement, you may be entitled to receive payments under certain conditions, even if you have not filed litigation. Paragraph 9 of the Settlement Agreement was revised due to the inability of Sanitec to obtain the necessary escrow funds while still maintaining sufficient operating capital to continue its operations. The revision allows Sanitec to deposit $6000 per month into the escrow account to secure the repayment of their obligations under the Settlement Agreement.

You can submit a claim for a payment from the settlement fund if you wish. In order to do so, you must follow the instructions in this notice, sign the release and claim form which is attached, and submit to the Settlement Fund Administrator evidence of your investment with Guardian Investments, as more fully described in the section of this notice titled "WHAT YOU CAN DO ABOUT IT."

**READ THE REST OF THIS NOTICE TO SEE WHAT YOU CAN DO WITH REGARD TO THE SETTLEMENT AND HOW TO SUBMIT A CLAIM FOR A PAYMENT FROM THE FUND.**

**THE LITIGATION**

The Actions settled are listed above. None of these cases was filed or is being treated as a "Class Action." This settlement fund is not being overseen by any of the Courts in

which the cases above were filed. It is a private settlement between some of the parties to those cases and with parties who are not defendants in some of the cases. Under the terms of the settlement agreement, all investors and noteholders in Guardian Investments, LLC who did not file any litigation are also entitled to a pro-rata share of any proceeds received by the settlement fund if they submit evidence of their investment and agree to the release which is enclosed. If you sign the release, you will be giving up your right to bring a suit against any of the individuals or companies who are parties to this settlement agreement.

If you do not respond to this notice by September 30, 2004, you will be deemed to have elected not to participate in the settlement fund.

Those who are entitled to participate include those who are holders of notes signed by Guardian Investments, LLC. Those investors who hold notes in IGW Trust or one of the various other George Fiorini 10% Plus Plans not associated with Guardian Investments, LLC are *not* entitled to participate in this settlement fund. Anyone whose investment was returned in full is not entitled to participate.

## WHAT YOU MAY BE ENTITLED TO RECEIVE UNDER THE PROPOSED SETTLEMENT

The plaintiffs and the settling parties have entered into a Settlement Agreement of the actions listed above. Under the terms of this settlement, investors who timely submit valid, documented claim forms may be deemed eligible to receive a pro-rata distribution from the settlement fund. The size of the share distributed to any investor will depend upon (1) the amount of your investment, and (2) the number of investors who elect to participate, and (3) the amount paid into the fund by Sanitec Industries, an amount which will depend upon the number of business transaction the company completes between now and 2008. For this reason, the amount which will be distributed to you is impossible to predict. The agreement does provide for a minimum annual payment into the fund of $50,000.00, an amount guaranteed by an escrow fund. The agreement also provides that the total amount to be paid into the fund shall not exceed $4,000,000.00. No guarantee is being made that any funds will be distributed to participants in this agreement.

To be eligible to receive any distribution under this Settlement, you MUST FILL OUT AND RETURN THE ATTACHED CLAIM FORM. ALL CLAIM FORMS MUST BE POSTMARKED NO LATER THAN SEPTEMBER 30, 2004. LATE CLAIM FORMS WILL NOT BE ACCEPTED. To facilitate the processing of your claim, you should submit the documentation requested in the claim form. Upon verification of the information provided and confirmation that you are eligible for compensation, any payments to which you are entitled will be mailed to you at the address you provide.

The Settlement Agreement provides that the pending claims which are being settled are being dismissed. Any claims pending against individuals not a party to the settlement, such as George Fiorini and Terry Quinn are not dismissed. If you sign the Release and Claim Form, you will agree not to file litigation against individuals who are parties to the settlement. The release does not effect any claim you might have against George Fiorini or Terry Quinn.

2

If you have filed bankruptcy after making your investment in Guardian, or if you are involved in any other lawsuits against any person or entity associated with George Fiorini or Guardian, you should consult your attorney concerning how the release could affect your rights.

You should consult with your own tax advisor concerning the tax effects of any settlement funds received. Neither cousel for the settling Plaintiffs nor the Settlement Fund Administrator can advise you about the tax consequences of any payment you receive from the Settlement Fund.

Counsel for the settling Plaintiffs believe that the settlement is fair and in the best interest of their clients, who have agreed to this settlement with these individuals. Plaintiffs' Counsel have investigated the facts relating to the claims which they made. That investigation has included reviewing and analyzing many documents, and includes a consideration of the funds available from the parties being released.

## ATTORNEY FEES

Under the agreement, a portion of any funds received into the Settlement Fund are allocated for attorney fees. This portion will be divided among the attorneys representing the investors who filed the cases listed above in accordance with a formula to which they and their clients have agreed. If you are represented by your own attorney, any attorney fee to be paid to your own attorney will be a matter between you and your attorney. Also, a small percentage of the funds received into the Settlement Fund are allocated to the expenses of the Settlement Fund Administrator; any portion of that percentage not needed to pay for those expenses will be added to the amount to be distributed to the investors.

## HOW YOU CAN ELECT TO PARTICIPATE

How To Submit A Claim For A Share Of The Settlement Benefits

If you wish to submit a claim for a share of the benefits under the proposed settlement, you must fill out, sign and return the accompanying Claim Form and Release ("Claim Form"), along with copies of the documentation requested in the Claim Form. If you cannot find the documentation requested, you may still be eligible to receive the settlement benefits as long as you provide the Settlement Fund Administrator with adequate information to properly verify your claim. The Claim Form must be postmarked no later than September 30, 2004, and must be mailed to: Settlement Fund Administrator, P.O. Box 9585, Cincinnati, Ohio 45209.

It is suggested that you keep a copy of the materials submitted. The Settlement Fund Administrator cannot assume responsibility for claim forms that are not received.

**NOTE THE FOLLOWING IMPORTANT RULES:** To be valid, a Claim Form must be signed by all living persons who are indicated as payees on a note. If someone who signed a note has died, the Claim Form must be signed by all living persons named on the same note. If all persons named on a note have died, the Claim Form must be signed by the authorized administrator or executor of the last person named on the note, or all of the

3

heirs of the last surviving named person.

If the persons named on a note are divorced, the Claim Form must be signed by one of the former spouses who certifies that he or she received the note as part of the decree of divorce or dissolution or other final settlement. In addition, this person must provide a copy of the court order indicating that he or she received the note with the Claim Form.

The Claim Form may also be signed by one person named on a note if that person provides a Power of Attorney indicating that he or she is authorized to sign on behalf of all persons named as holders of the note.

All payments distributed pursuant to the Settlement Agreement will be issued jointly to all holders of a note on valid Claim Forms unless all signatories sign specific instructions for some other form of distribution. If you change your address or telephone number after submitting a Claim Form, please notify the Settlement Fund Administrator, P.O. Box 9585, Cincinnati, Ohio 45209, and provide your name, new mailing address, including zip code, and telephone number.

To protect your legal rights, you may do any of the following:

>   (1) You may consult with your own attorney.
>   (2) You may examine the court files in the clerk's office of the court in which any of the settled cases were or are pending.
>   (3) You may choose not to release the parties listed on the release. If you elect to not sign and submit the Claim Form, you will not receive any distributions from the settlement fund, but your rights, if any, to sue will not be barred. If you decide to not participate you need to do nothing. Only those who submit a completed Claim Form and Release will be eligible to receive a portion of any settlement funds.

This Settlement Agreement has been reached and agreed to by investors who brought the cases listed above. The agreement has neither been reviewed, approved, nor will it be overseen by any court. It does not effect any right you may have regarding your investment. Only the submission of a completed Claim Form and Release will have that effect.

You may DISCUSS THIS WITH YOUR OWN ATTORNEY or seek other advice regarding the advisability of participating.

If you have questions, do not call any court or any counsel for the parties involved in the cases that contain claims being settled. Instead, please write to the Settlement Fund Administrator, P.O. Box 9585, Cincinnati. Ohio 45209.

Dated: August 20, 2004.

*/s/ signature*

Settlement Fund Administrator

# CLAIM FORM AND RELEASE

In order for you to share in the settlement fund, you must complete and sign the release on Page 4 of this claim form. Your completed claim form must be post marked no later than September 30, 2004, in order to be valid. Please mail all 4 pages of your claim form together with the requested documents to:

> Settlement Fund Administrator
> P.O. Box 9585
> Cincinnati, Ohio 45209

If you have any questions with regard to completing this Claim Form, write to Settlement Fund Administrator, P.O. Box 9585, Cincinnati, Ohio 45209. Do not contact any Court for advice or information about this settlement. It is also your responsibility to make sure that the Claim Form is mailed on time. It is not necessary to use Certified Mail, but you should retain a copy of your Claim Form. The Settlement Fund Administrator cannot assume responsibility for claim forms that are not received.

Please provide the following identifying information for each person listed as a note holder (investor) on any note with Guardian Investments, LLC. Attach additional sheets, if necessary, to list all persons who invested.

**NOTEHOLDER**

_____
(Name)

_____
(Present Street Address)

_____
(Present City, State and Zip Code)

_____
(Home Telephone Number)

_____
(Work Telephone Number)

_____
(Social Security Number)

**CO-NOTEHOLDER** (if any)

_____
(Name)

_____
(Present Street Address)

_____
(Present City, State and Zip Code)

_____
(Home Telephone Number)

_____
(Work Telephone Number)

_____
(Social Security Number)

If your name, address or telephone number changes at any time after submission of this form, write to Settlement Fund Administrator, P.O. Box 9585, Cincinnati, Ohio 45209, and provide your new name, mailing address or telephone number.

It is your responsibility to provide the Settlement Fund Administrator with sufficient information so that he can verify and process your claim. If you cannot find any of the documentation requested, you may still be eligible to receive the settlement benefits as long as you provide the Settlement Fund Administrator with adequate information to properly investigate your claim. If a question does not apply to your situation, please write "n/a" for "not applicable." Your signature on this form certifies that the information submitted below is true and accurate.

State your address at the time of your investment, if it is different from your current address._____
    (Street Address)                (City, State and Zip Code)

State the date and the amount of each of your investments. You should provide a copy of each note, or the cancelled check or any other documentation indicating the date and amount of your investment. Please also submit a copy of any account statement you received from George Fiorini or from Guardian Investments if you are able to do so.

_____        $_____
Date                                 Amount of Investment

_____        $_____
Date                                 Amount of Investment

_____        $_____
Date                                 Amount of Investment

_____        $_____
Date                                 Amount of Investment

**TOTAL INVESTMENT**                        $_____

List any payments you received **FROM** George Fiorini or from Guardian Investments, either as interest or as a return of your investment:

_____        $_____
Date                                 Amount of Payment Received

_____        $_____
Date                                 Amount of Payment Received

_____        $_____
Date                                 Amount of Payment Received

_____        $_____
Date                                 Amount of Payment Received

_____        $_____
Date                                 Amount of Payment Received

Are any of the persons named on the note who are deceased? _____

If YES, state his or her name and date of death: _____

If any of the persons who are named on the note are deceased and an estate has been opened for the deceased person, state below the name of such person for whom an estate has been opened, the Federal I.D. number, if any, for the estate, and the name and address of the administrator or executor of that estate:
_____

If any person who is named on the note is deceased and if no estate has been opened for such deceased person, state the name, address, phone number and Social Security number of each heir for that deceased person. (Please attach additional sheets of paper if necessary):

_____

_____

Are any of the persons who are named on the note divorced? _____

    If YES, state the name of the person who was awarded the note as part of the divorce settlement and provide a copy of the court order. _____

If you are signing this Claim Form on behalf of someone else who is named on the note, state below the basis upon which you are authorized to sign this Claim Form on behalf of that party and provide a copy of the Power of Attorney.

3

Read the following **RELEASE** language and, if you agree to release the named parties from further liability, sign and date the form below. You must sign the Release to participate in the Settlement and receive a payment from the settlement fund.

1. I understand that by signing this Release, on my behalf and on behalf of my heirs, successors, and assigns and each of them, and an behalf of all persons on whose behalf I am acting, that I am releasing the following persons and entities: Sanitec Industries, Inc., Sanitec Group LLP, Guardian Investments LLC, and Steven Ventre, (all jointly referred to as "Sanitec").

2. I, for myself and for my heirs, executors, administrators and assigns, do hereby release, discharge and covenant not to sue Sanitec, including Sanitec's officers, directors, partners (both general and limited), shareholders, agents, and employees, the Settlement Fund Administrator, the escrow agent, counsel for the settling plaintiffs and members of the Guardian Settlement Fund Corporation (including their respective heirs, executors, administrators, and assigns) (jointly referred to as "Releasee"), of, from, and for all manner of actions, suits, debts, sums of money, accounts, covenants, controversies, agreements, promises, damages, judgments, claims, warranties (express and implied), demands or causes of action, at law, in equity or otherwise, of any nature, whether known or unknown, which I had, now have or can, shall or may ever have against any Releasee occurring at any time prior to and after the date of this Release.

3. This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio.

4. This Release shall be binding upon, and inure to the benefit of, the parties and their respective successors, assigns, subsidiaries, trustees, officers, directors, partners (both general and limited), heirs, executors and administrators of the parties.

5. This Release contains and embodies the entire agreement between the parties and supersedes, replaces, cancels, nullifies, and terminates all prior agreements, understandings, warranties, assurances, or representations between or among the parties.

6. I acknowledge that I entered into this Agreement voluntarily and without duress of any kind.

By signing this Claim and Release Formform, I hereby certify that the information contained hereon and submitted herewith is true and accurate.

|  | **Investor** | **Co-Investor (if any)** |
|---|---|---|
| Signature | _____ | _____ |
| Printed Name | _____ | _____ |
| Date Signed | _____ | _____ |

**REMINDER: TO BE VALID, THIS CLAIM FORM MUST BE SIGNED AT THE SIGNATURE LINES ABOVE, SENT TO THE SETTLEMENT FUND ADMINISTRATOR, P.O BOX 9585, CINCINNATI, OHIO 45209, AND MUST BE POSTMARKED NO LATER THAN SEPTEMBER 30, 2004.**

4

# SETTLEMENT AGREEMENT

This Agreement is made among the following parties: Sanitec Industries, Inc. ("Industries"); Sanitec Group LLC ("Group"); Guardian Investments LLC ("Guardian"); Steven Ventre ("Ventre"); and the Represented Investors and noteholders in Guardian Investments, LLC ("Investors") as defined herein (collectively herein the "Parties").

**WHEREAS**, the Parties enter into this Settlement Agreement to resolve and compromise the claims and counterclaims asserted in the pending litigation, as defined herein.

**NOW, THEREFORE**, for the foregoing reasons and in consideration of the representations, warranties, covenants, and promises hereinafter stated, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

1. **Definitions.**

1.1 "Investors" as used herein shall include both of the following:

    (a) "Represented Investors," which includes those individuals and entities who are noteholders of Guardian Investments, LLC, or a subsidiary or predecessor-in-interest of Guardian Investments, LLC, and who have, as of April 30, 2003, filed litigation against any one or more of the other parties to this agreement and who are listed on Exhibit "A," attached hereto.

    (b) "Unrepresented Investors" includes all individuals and entities who are noteholders of Guardian Investments, LLC, or a subsidiary or predecessor-in-interest of Guardian Investments, LLC and who are not "Represented Investors."

    (c) "Settling Investors" shall mean the represented investors and those unrepresented investors who, upon receipt of notice, elect to join the settlement by executing a release in the form of Exhibit "C", attached hereto, as more fully set out herein.

1.2 "Litigation" shall mean the following listed pending cases: *Wagner, et al. v. Fiorini, et al.*, Case No. A0203262 (Hamilton County Court of Common Pleas); *Franz v. Fiorini*, A0200257 (Hamilton County Court of Common Pleas); *Fischer, et al. v. Fiorini*, A0202470 (Hamilton County Court of Common Pleas); *Geiger v. Fiorini, et al.*, A0201017 (Hamilton County Court of Common Pleas); *Robben v. Fiorini, et al.*, A0200088 (Hamilton County Court of Common Pleas); *Schaefer v. Guardian*, A0105906 (Hamilton County Court of Common Pleas); *Ploegsma v. Fiorini, et al.*, A0203762 (Hamilton County Court of Common Pleas); *DiMuzio v. Fiorini, et al.*, A0201812 (Hamilton

County Court of Common Pleas); *Hamad v. Fiorini, et al.*, A0204272 (Hamilton County Court of Common Pleas); *Burns v. Fiorini, et al.*, A0201895 (Hamilton County Court of Common Pleas); *Curtis v. Fiorini, et al.*, 01-CV-831 (USDC, SD Ohio); *Meyer v. Guardian, et al.*, 01-CV-806 (USDC, SD Ohio); *Liston v. Sanitec International Holdings*, 01-CV-807 (USDC, SD Ohio); *Sanitec West, et al. v. Delloiacovo, et al.*, Case No. 01-02-1582-DCN (USDC, N.D. Ohio); *Guardian Investments, LLC, et al. v. Terry Lee Quatkemeyer*, CA19851-NC (Court of Chancery, State of Delaware).

1.3   "Investors' Counsel" shall mean the attorneys who have been hired by the Represented Investors as defined above and who are listed on Exhibit "A," attached hereto.

1.4   "The sale of any new patented Sanitec medical waste treatment unit" shall be defined to mean "the transfer, encumbrance, or other alienation of any title, rights, and/or interests which Industries owns and/or has for any new, patented Sanitec medical waste treatment unit, in return for money, other consideration, or no consideration whatsoever."

1.5   As used in paragraph 6 herein, "the sale of the intellectual property" shall be defined to mean "either (i) the transfer, licensing, sub-licensing, encumbrance, and/or other alienation of any title, rights, and/or interests in the intellectual property which Industries has and/or will be acquiring under the Settlement Agreement, or (ii) the transfer, assignment, pledging, encumbrance, and/or other alienation of any Industries' shareholder's capital stock in Industries, if that transaction, separately or in combination with any previous transactions, results in a change in the identity of the person(s) and/or entities who/which has/have, either individually or collectively, the controlling interest in Industries."

1.6   As used in paragraph 1.5(ii) herein, "the controlling interest in Industries" shall be defined to mean "that number of shares which, if exercised by the shareholder(s) owning or holding them in trust, would allow such shareholder(s) to authorize the sale of all or substantially all of Industries' corporate assets or to elect the directors who could take that action."

1.7   As used in paragraph 10 herein, "purchaser(s)" shall be defined to mean "any person and/or entity that acquires any title, right, and/or interest in any new patented Sanitec medical waste treatment unit, the intellectual property referred to above, or the controlling interest in Industries".

1.8   "Trust" shall be defined to mean a trust or any other entity, including but not limited to a not-for-profit limited liability company, created or organized by Investors' Counsel to manage, account for and disburse any of the funds paid pursuant to this Agreement.

2.   Group, Guardian, and Ventre hereby assign all rights, title and interest they claim or could forever from this date forward claim in the assets (as reflected in the December 31, 2002 balance sheet of Group) of Group to Industries and intellectual property of Group to Industries.  Upon execution of the Settlement Agreement, Group shall execute and deliver to Industries an assignment of patents and/or trademarks in a form suitable for filing in the U.S. Patent and Trademark Office , and (b) a consent to foreclosure.  The assignments and consent are attached hereto as Exhibit "B".  Upon execution of this Settlement Agreement, all engineering drawings pertaining to any Sanitec equipment, machinery, technology and devices and process ("Documents") shall be forwarded to Industries.

3.   Settling Investors hereby assign to Industries all rights, title and interest they claim or could forever from this date forward claim in the assets of A.B.B. Sanitec West, Inc. ("Sanitec West"), Industries, Sanitec, Ltd. ("Limited"), and Group.

4.   Upon execution of this Settlement Agreement, any Sanitec internet website now administered by Group, Ventre or Guardian, at the sole option of Industries will either indicate "under construction" or will direct contacts to Industries or its designee rather than the current list of contacts.

5.   The represented investors or their counsel shall create a Trust which shall be initially managed and maintained by Robert C. Kranz of Cincinnati, Ohio, an independent Administrator who is acceptable and accountable to counsel for the Represented Investors.  All payments called for to be paid to Investors shall be directed to the Administrator for deposit into a Trust Account.

6.   Payments to the Trust shall be made as follows:  (a) Industries shall make an annual payment of Fifty Thousand  and 00/100 Dollars ($50,000.00) to the Trust, paid quarterly in the amount of Twelve Thousand Five Hundred and 00/100 Dollars ($12,500.00), beginning on May 1, 2004 for the months of January through March, 2004; and (b) Industries also shall make payment of Fifty Thousand and 00/100 Dollars ($50,000.00) on the sale of any new patented Sanitec medical waste treatment unit; a separate check shall be cut at the closing of any such sale and sent via overnight delivery to the Administrator within one day of the sale.  Upon sale of the intellectual property, the proceeds shall be used to pay the Investors the balance owed at the time of sale.  Industries shall supply to the Administrator copies of its annual Federal Tax Returns within 90 days of the end of each fiscal year.  At such time as the Investors are paid through the foregoing payments to the Trust, if ever, or upon the expiration of the patents, Industries shall own the assets and intellectual property free and clear of the lien held by such Trust.

7.   The payments called for herein shall terminate when the amount paid to the Trust equals Four Million and 00/100 Dollars ($4,000,000.00), or upon December 31, 2008, or upon expiration of the patent rights whichever comes first. Industries shall make a pro rata payment to the Trust for the partial period immediately prior to the expiration of this Agreement owed pursuant to paragraph 6(a).

8.   Within five days after execution of this Agreement, Industries shall provide the Trust with Five Thousand and 00/100 Dollars ($5,000.00) to expend for administrative purposes. This sum shall not be credited against any of the payments made or to be made pursuant to paragraph 6 of this Agreement, and is a separate obligation of Industries under this Agreement.

9.   Within thirty (30) days of the recordation in the U.S. Patent and Trademark Office of the assignment of all patent rights assigned to Industries pursuant to paragraph 2 of this Agreement, Industries shall provide Investors' Counsel with evidence that Industries has obtained a commitment from a reputable financial institution for financing in an amount of at least $500,000.00. In order to secure the obligation of paragraph 6(a) of this Agreement, upon the closing of such financing, Industries will create an escrow account, in favor of the Trust, in an amount the net present value of which is sufficient to pay the maximum amount required by paragraph 6(a) and any necessary escrow fees. In the event that Industries fails to make the payments required by paragraph 6(a) within ten (10) days of the date on which they are due, the Escrow Agent shall make such payments to the Trust upon receiving a written demand from the Administrator. Any balance in the escrow account remaining after the obligation under paragraph 6 has been satisfied shall belong to Industries.

9.5   In addition to the provisions set forth in paragraph 9 above, Industries, the Trust and the Escrow Agent shall enter into a separate Escrow Agreement, which provides that (a) to the extent there are any liens on the funds in the Escrow Account, the Trust shall have the first lien on said funds until all obligations contained within the Settlement Agreement are satisfied in full, (b) the Escrow Agent is an individual or entity mutually acceptable to Industries and the Trust, (c) any disputes arising under the terms of the Escrow Agreement shall be governed by Ohio law and, any claim and/or dispute arising from or relating to the Escrow Agreement shall be brought in Hamilton County, Ohio, in either the Hamilton County Court of Common Pleas or the U.S. District Court for the Southern District of Ohio, Western Division, at Cincinnati, Ohio, and the parties waive any objection which they might otherwise have as to the jurisdiction and venue of either Court.

10. Notwithstanding anything stated or implied to the contrary in paragraph 7 of the Settlement Agreement, Industries shall owe the Investors the royalties and other payments specified in the stated section for any sales of new, patented Sanitec medical waste treatment units and/or intellectual property which have been negotiated and agreed upon with any existing or prospective purchaser thereof prior to the expiration date of the Settlement Agreement, regardless of whether such transaction has been fully documented and/or closed upon, as if such sales had been completed prior to such expiration date.

11. The Administrator shall divide the funds received pursuant to this Agreement into three separate funds, an administration fund, to be used for payment of the costs of administration of the Trust, a fee fund, to be distributed to Investors' Counsel, and an investor fund, to be distributed to all Settling Investors. The percentage of the total amount to be placed into each of these three funds is as follows: 5.00% shall first be placed into the administrative fund for the payment of costs associated with the management of the Trust, 63.00% shall be placed into the investor fund, and 32.00% shall be placed into the fee fund. The Administrator, in his discretion, may open separate bank accounts for the management of these funds, or may maintain one bank account for all three, but in any event shall separately account for the sums contained within each fund.

12. Upon final execution of the Settlement Agreement, the Administrator shall notify all Unrepresented Investors of the terms of the settlement and shall allow each of them to submit a proof of claim and execute a release of claims similar to those executed by the Represented Investors. All Represented Investors and all approved Unrepresented Investors (defined as the "Settling Investors") shall be paid such sums as are available for distribution by the Administrator pro-rata, based upon the total amount of any unreturned investment, exclusive of interest, as of January 1, 2003. Such distributions shall be made by the Administrator from time to time as the Administrator deems appropriate.

13. At the time of any distribution to the Settling Investors, the Administrator shall distribute to Investors' Counsel a legal fee from the fee fund in the percentages as set out in the attached Exhibit "D".

14. The Administrator shall submit a written account of the activities of the Trust at least annually to Investors' Counsel. In the event that funds in the administration fund are not used in the administration of the Trust, such funds shall be transferred to the investor fund for distribution to the Investors.

15. Upon execution of this Settlement Agreement by all parties hereto, Investors' Counsel, or their designee(s) shall (a) prepare an appropriate notice to the Unrepresented Investors; (b) establish the criteria for participation in the settlement fund by Unrepresented Investors; (c) prepare an appropriate release to be signed by any such investors who hold unpaid notes from Guardian Investments, LLC as of January 1, 2003; (d) retain the services of the Trust Administrator; (e) direct that the Administrator mail a notice of this settlement to

5

the Unrepresented Investors, allowing them to elect to join in the distribution of the settlement funds as set out herein, upon submission of adequate evidence of their claim and upon execution of the release in the form of Exhibit "C".

16. **Mutual Release.** The Parties hereto, for themselves and for their heirs, executors, administrators and assigns, do hereby release, discharge and covenant not to sue the other Parties hereto, including their officers, directors, partners (both general and limited), shareholders, agents, and employees (including their respective heirs, executors, administrators, and assigns) (jointly referred to as "Releasee"), of, from, and for all manner of actions, suits, debts, sums of money, accounts, covenants, controversies, agreements, promises, damages, judgments, claims, warranties (express and implied), demands or causes of action, at law, in equity or otherwise, of any nature, whether known or unknown, which they had, now have or can, shall or may ever have against any Releasee occurring at any time prior to and after the date of this Release.

17. Industries shall request Sanitec West and Limited to voluntarily dismiss their claims against Barbara Sager in the action captioned *Sanitec West v. Delloiacovo*, Civil Action No. 02-1582 (N.D. Ohio). Nothing in this Settlement Agreement shall limit any claims Sanitec West and Sanitec, Ltd. have against Coolidge Wall Womsley & Lombard Co., L.P.A.

18. **Applicable Law, Jurisdiction, and Venue.** The instruction, interpretation, and enforcement of this Agreement shall be governed by Ohio law. Furthermore, any claim and/or dispute arising from or relating to this Settlement Agreement shall be brought in Hamilton County, Ohio, in either the Hamilton County Court of Common Pleas or the U.S. District Court for the Southern District of Ohio, Western Division, at Cincinnati, Ohio, and the parties waive any objection which they might otherwise have as to the jurisdiction and venue of either Court.

19. **Representations and Warranties.** The following representations and warranties shall be fully admissible as evidence in any dispute pertaining to this Settlement Agreement or the subject matter thereof

> (a) The Represented Investors and the Settling Investors represent and warrant to Industries that, prior to November 1, 2003, neither they nor their counsel, if any, were aware of a purported License Agreement dated as of April 17, 2003 ("Micro-Waste License Agreement") between Group and Micro-Waste Corporation ("Micro-Waste").
> (b) Group and Ventre represent and warrant to the other parties hereto that, as of April 2003: (i) at the time Ventre executed any agreement, contract or understanding between Group and Micro-Waste, including without limitation, any letter agreement and Micro-Waste License Agreement, Micro-Waste, including Robert Bollinger, was aware of a dispute as to the ownership of the intellectual property that is the subject of the Settlement Agreement, including litigation related thereto; (ii) prior to executing the Micro-Waste License Agreement Group did not obtain an independent economic analysis as to the amount of royalties to be paid pursuant to that agreement; (iii) Ventre

6

believed he could sign the License Agreement; (iv) in April 2003, Robert Bollinger represented to Group and Ventre that: (A) Micro-Waste was the sole bidder on a contract for a mobile microwave disinfection unit, (B) the contract would shortly be awarded to Micro-Waste for such unit, and (C) Micro-Waste would pay a $100,000 royalty; (vi) based on Bollinger's representations, Ventre executed the Micro-Wave License Agreement; and (v) despite Bollinger's representation, Micro-Waste has not make any payments, including royalty payments, to Group or Ventre.

20. **Action Against Micro-Waste.**

   (a)   The parties to the Settlement Agreement hereby assign and transfer any claim or cause of action that they have or may have had against Micro-Waste to Industries.

   (b)   Group and/or Ventre shall reasonably cooperate with Industries in connection with any litigation with Micro-Waste.

   (c)   Industries does hereby release, discharge and covenant not to sue Ventre of, from, and for all manner of actions, suits, debts, sums of money, accounts, covenants, controversies, agreements, promises, damages, judgments, claims, warranties (express and implied), demands or causes of action, at law, in equity or otherwise, of any nature, whether known or unknown, which they had, now have or can, shall or may ever have against such releasees pertaining to the Micro-Waste License Agreement. Nothing in this subparagraph shall be construed to apply to Terry Quatkemeyer, aka Terry Quinn. Industries shall cause Sanitec West to execute a comparable release to Ventre.

21.   This Agreement and the releases signed pursuant thereto shall not affect any of the claims of the Investors or any of the Parties hereto as to any individual or entity that is not a Party to this Agreement.

22.   Upon the execution of this Settlement Agreement by all parties, the Parties shall execute and file a stipulation and order of dismissal with respect to each of the pending Litigation cases, with each Party to bear its own litigation expenses and court costs, in the form of Exhibit "E" attached hereto. If claims made in those cases remain pertaining to individuals or entities who are not a party to this Agreement, or claims remain that are allowed to be maintained, then partial final dismissals with prejudice shall be entered into those cases as to the claims resolved by this Settlement Agreement, allowing the permitted claims to continue.

23.   This Settlement Agreement is an expression of intent by the parties to conclude an agreement including these terms. However, its terms are not enforceable against any party until such time as the it has been executed by all parties hereto, or their counsel. The parties hereto, or their counsel, shall execute any additional documents reasonably necessary to effectuate this Settlement Agreement.

24.  This Settlement Agreement may be signed in original or telecopied counterparts, each of which shall be considered an original, but all of which together shall be considered one Settlement Agreement. The Settlement Agreement shall be effective when such counterparts have been exchanged, by facsimile or otherwise.

25.  SIGNATURES

Sanitec Industries, Inc.
/s/

Sanitec Group, LLC
/s/

Guardian Investments, LLC
/s/ by: Steven Ventre

/s/ Steven Ventre, Individually

/s/ Timothy A. Fischer, Esq.
Attorney for Plaintiffs in Wagner v. Fiorini

/s/ Douglas Haman, Esq.
Attorney for Plaintiffs in Wagner v. Fiorini

/s/ Michael J. Bergmann, Esq.
Attorney for Plaintiffs in Franz v. Fiorini

/s/ Edward L. Hoseus, Esq.
Attorney for Plaintiffs in Fischer v. Fiorini

/s/ Barry Fagel, Esq.
Attorney for Plaintiffs in Geiger v. Fiorini

/s/ Geoffrey P. Damon, Esq.
Attorney for Plaintiffs in Robben v. Fiorini

/s/ John M. Cloud, Esq.
Attorney for Plaintiffs in Shaefer v. Guardian

/s/ Steven R. Hicks, Esq.
Attorney for Plaintiffs in Ploegsma v. Fiorini

/s/ Timothy A. Garry, Esq.
Attorney for Plaintiffs in DiMuzio v. Fiorini

/s/ Robert G. Kelly, Esq.
Attorney for Plaintiffs in Hamad v. Fiorini

/s/ Joseph M. Luken, Esq.
Attorney for Plaintiffs in Burns v. Fiorini

/s/ Stacey L. Graus, Esq.
Attorney for Plaintiffs in Murtis v. Fiorini, Meyer v. Guardian and Liston v. Sanitec

# ADDENDUM TO SETTLEMENT AGREEMENT

This Addendum to Settlement Agreement (hereinafter referred to as "this Addendum") is made by and between the undersigned parties to amend a Settlement Agreement which was made by the same parties for the purpose of resolving and compromising the claims and counterclaims asserted in certain pending litigation (which litigation is identified in the stated Settlement Agreement).

**WHEREAS,** the undersigned parties have recognized the need to clarify, add to, and/or otherwise change certain provisions of the Settlement Agreement, which is incorporated herein by reference; and

**WHEREAS,** such parties are willing to make such amendments in order to clarify, add to, and/or otherwise change the stated provisions;

**NOW, THEREFORE,** for the foregoing reasons and in consideration of the representations, warranties, covenants, and promises hereinafter stated, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereby agree as follows:

**26. Definitions.** As used in Section 7 of the Settlement Agreement, each of the following terms shall have the meaning stated as its definition:

(a) "The sale of any new patented Sanitec medical waste treatment unit" shall be defined to mean "the transfer, encumbrance, or other alienation of any title, rights, and/or interests which Industries owns and/or has for any new, patented Sanitec medical waste treatment unit, in return for money, other consideration, or no consideration whatsoever."

(b) "The sale of the intellectual property" shall be defined to mean "either (i) the transfer, licensing, sub-licensing, encumbrance, and/or other alienation of any title, rights, and/or interests in the intellectual property which Industries has and/or will be acquiring under the Settlement Agreement, or (ii) the transfer, assignment, pledging, encumbrance, and/or other alienation of any Industries' shareholder's capital stock in Industries, if that transaction, separately or in combination with any previous transactions, results in a change in the identity of the person(s) and/or entities who/which has/have, either individually or collectively, the controlling interest in Industries."

(c) As used in paragraph 1(b)(ii) of this Addendum, "the controlling interest in Industries" shall be defined to mean "that number of shares which, if exercised by the shareholder(s) owning or holding them in trust, would allow such shareholder(s) to authorize the sale of all or substantially all of Industries' corporate assets or to elect the directors who could take that action".

(d) As used in Section 2 of this Addendum, "purchaser(s)" shall be defined to mean "any person and/or entity that acquires any title, right, and/or interest in any new patented Sanitec medical waste treatment unit, the intellectual property referred to above, or the controlling interest in Industries".

**27. Pending Sales.** Notwithstanding anything stated or implied to the contrary in paragraph 7 of the Settlement Agreement, Sanitec West and Industries shall owe the Investors the royalties and other payments specified in the stated Section for any sales of new, patented Sanitec medical waste treatment units and/or intellectual property which have been negotiated and agreed upon with any existing or prospective purchaser thereof prior to the expiration date of the Settlement Agreement, regardless of whether such transaction has been fully documented and/or closed upon, as if such sales had been completed prior to such expiration date.

**28. Effective Date and Times.** The date on which the Settlement Agreement became effective or shall be deemed to have become effective shall be the date when all of the undersigned parties have executed this Addendum. Furthermore, this Addendum shall be deemed to have become effective immediately following the moment upon which the Settlement Agreement became effective.

**29. Applicable Law, Jurisdiction, and Venue.** The instruction, interpretation, and enforcement of this Addendum and the Settlement Agreement shall be governed by Ohio law. Furthermore, any claim and/or dispute arising from or relating to the Settlement Agreement or this Addendum shall be brought in Hamilton County, Ohio, in either the Hamilton County Court of Common Pleas or the U.S. District Court for the Southern District of Ohio, Western Division, at Cincinnati, Ohio, and the parties waive any objection which they might otherwise have as to the jurisdiction and venue of either Court.

**30. Representations and Warranties.** The following representations and warranties shall be fully admissible as evidence in any dispute pertaining to the Settlement Agreement, this Addendum, or the subject matter thereof.

(c) The Represented Investors and the Settling Investors represent and warrant to Industries and Sanitec West that, prior to November 1, 2003, neither they nor their counsel, if any, were aware of a purported License Agreement dated as of April 17, 2003 ("Micro-Waste License Agreement") between Group and Micro-Waste Corporation ("Micro-Waste").

(d) Group and Ventre represent and warrant to the other parties hereto that, as of April 2003: (i) at the time Ventre executed any agreement, contract or understanding between Group and Micro-Waste, including without limitation, any letter agreement and Micro-Waste License Agreement, Micro-Waste, including Robert Bollinger, was aware of a dispute as to the ownership of the intellectual property that is the subject of the Settlement

Agreement, including litigation related thereto; (ii) prior to executing the Micro-Waste License Agreement Group did not obtain an independent economic analysis as to the amount of royalties to be paid pursuant to that agreement; (iii) while Ventre was not appointed as an officer of Group by formal action of Group's board of directors, he believed he could sign the License Agreement; (iv) in April 2003, Robert Bollinger represented to Group and Ventre that: (A) Micro-Waste was the sole bidder on a contract for a mobile microwave disinfection unit, (B) the contract would shortly be awarded to Micro-Waste for such unit, and (C) Micro-Waste would pay a $100,000 royalty; (vi) based on Bollinger's representations, Ventre executed the Micro-Wave License Agreement; and (v) despite Bollinger's representation, Micro-Waste has not make any payments, including royalty payments, to Group or Ventre.

31. **Action Against Micro-Waste.**

   (a) The parties to the Settlement Agreement hereby assign and transfer any claim or cause of action that they have or may have had against Micro-Waste to Industries.

   (b) Group and/or Ventre shall reasonably cooperate with Industries in connection with any litigation with Micro-Waste.

   (c) Sanitec West, Industries, and Sanitec, Ltd. do hereby release, discharge and covenant not to sue Ventre of, from, and for all manner of actions, suits, debts, sums of money, accounts, covenants, controversies, agreements, promises, damages, judgments, claims, warranties (express and implied), demands or causes of action, at law, in equity or otherwise, of any nature, whether known or unknown, which they had, now have or can, shall or may ever have against such releasees pertaining to the Micro-Waste License Agreement. Nothing in this subparagraph shall be construed to apply to Terry Quatkemeyer, aka Terry Quinn.

32. **Claims Against Sager.** Nothwithstanding paragraph 14 of the Settlement Agreement, upon final execution of the Settlement Agreement and this Addendum, Sanitec West and Sanitec, Ltd. shall voluntarily dismiss their claims against Barbara Sager in the action captioned *Sanitec West v. Delloiacovo*, Civil Action No. 02-1582 (N.D. Ohio). Nothing in this paragraph shall limit any claims Sanitec West and Sanitec, Ltd. have against Coolidge Wall Womsley & Lombard Co., L.P.A.

**IN WITNESS WHEREOF**, we, the undersigned, have hereunto set our hands, as shown below.

## SIGNATURES

A.B.B. Sanitec West, Inc.
/s/

Sanitec Industries, Inc.
/s/

Sanitec, Ltd.
/s/

Sanitec Group, LLC
/s/

Guardian Investments, LLC
/s/

/s/ Steven Ventre

/s/ Joseph Delloiacovo

/s/ Mark Taitz

/s/ Wayne I. Danson

/s/ David Kaye

Windsor Holdings, Inc.
/s/

/s/ Timothy A. Fischer, Esq.
Attorney for Plaintiffs in Wagner v. Fiorini

/s/ Douglas Haman, Esq.
Attorney for Plaintiffs in Wagner v. Fiorini

/s/ Michael J. Bergmann, Esq.
Attorney for Plaintiffs in Franz v. Fiorini

/s/ Edward L. Hoseus, Esq.
Attorney for Plaintiffs in Fischer v. Fiorini

/s/ Barry Fagel, Esq.
Attorney for Plaintiffs in Geiger v. Fiorini

/s/ Geoffrey P. Damon, Esq.
Attorney for Plaintiffs in Robben v. Fiorini

/s/ John M. Cloud, Esq.
Attorney for Plaintiffs in Shaefer v. Guardian

/s/ Steven R. Hicks, Esq.
Attorney for Plaintiffs in Ploegsma v. Fiorini

/s/ Timothy A. Garry, Esq.
Attorney for Plaintiffs in DiMuzio v. Fiorini

/s/ Robert G. Kelly, Esq.
Attorney for Plaintiffs in Hamad v. Fiorini

/s/ Joseph M. Luken, Esq.
Attorney for Plaintiffs in Burns v. Fiorini

/s/ Stacey L. Graus, Esq.
Attorney for Plaintiffs in Murtis v. Fiorini, Meyer v. Guardian and Liston v. Sanitec