

REC'D & FILED
SUPERIOR COURT
OF NEW JERSEY

DEC 1 7 2003



CLERK

Fox ROTHSCHILD LLP
**Formed in the Commonwealth of Pennsylvania**
BY:    Roberto Rivera-Soto, Esq.
          Thomas R. Hower, Esq.
Princeton Pike Office Park
997 Lenox Drive – Building 3
Lawrenceville, New Jersey 08648-2311
(609) 896-3600

ATTORNEYS FOR PLAINTIFF SANITEC INDUSTRIES, INC.

| | | |
|---|---|---|
| SANITEC INDUSTRIES, INC., | : | SUPERIOR COURT OF NEW JERSEY |
| | : | CHANCERY DIVISION: BERGEN COUNTY |
| Plaintiff, | : | |
| | : | Docket No.: F- 22524-03 |
| v. | : | |
| | : | CIVIL ACTION |
| SANITEC GROUP, LLC; JOSEPH | : | |
| DELLOIACOVO; WAYNE DANSON; | : | **COMPLAINT IN FORECLOSURE AND** |
| GUARDIAN INVESTMENTS, LLC, | : | **DESIGNATION OF TRIAL COUNSEL** |
| | : | |
| Defendants. | : | |

Plaintiff Sanitec Industries, Inc. ("**Industries**" or "**Plaintiff**"), by and through its

attorneys, Fox Rothschild LLP, and by way of complaint in foreclosure against defendants

Sanitec Group, LLC, Joseph Delloiacovo, Wayne Danson and Guardian Investment, LLC,

(collectively, "**Defendants**") say:

## THE PARTIES

1.      Plaintiff is a California corporation with its principal place of business located at 11570 Sunshine Terrace, Studio City, California.

2.      By that certain Assignment Agreement dated November 24, 2003 (the "**Assignment Agreement**"), Plaintiff is the assignee of all of the right, title and interest in all rights of Platinum Funding Corp., not a party hereto, under that certain Factoring Agreement dated March 1, 2002 (the "**Factoring Agreement**") by and between Platinum Funding Corp. and Defendant Sanitec Group, LLC ("**Defendant Group**"); true and correct copies of the Assignment Agreement and the Factoring Agreement are attached hereto as **Exhibits "A" and "B"**, respectively, and are made a part hereof by reference.

3.      Defendant Group is a Delaware limited liability corporation with a principal place of business formerly located at 23 Fairfield Ave., West Caldwell, New Jersey.

4.      Defendant Joseph Delloiacovo ("**Defendant Delloiacovo**") is an adult individual residing at 32 Dogwood Trail, Randolph, New Jersey.

5.      Defendant Wayne Danson ("**Defendant Danson**") is an adult individual residing at 2140 Ironwood Road, Muttontown, New York.

6.      Defendant Guardian Investments, LLC, ("**Defendant Guardian**") is an Ohio limited liability company with a principal place of business located at 7454 Empire Drive, Unit 165, Florence, Kentucky.

## BACKGROUND

### THE PARTIES ENTER INTO THE FACTORING AGREEMENT.

7.      On or about March 1, 2002, Plaintiff and Defendants entered into the Factoring Agreement pursuant to which Defendant Group agreed to tender to Plaintiff invoices rendered to

- 2 -

Defendant Group's customers for, among other things, "goods sold and delivered to or services performed for" its customers.

8.    The fee due to Plaintiff under the Factoring Agreement was calculated based on the delivery by Defendant Group of a minimum of $125,000 of accounts receivables for each month of the Factoring Agreement.

9.    If Defendant Group placed less than $125,000 of accounts receivable with Plaintiff each month, then under Section 9 of the Factoring Agreement, Defendant Group owed Plaintiff an increased Fee.  Further, if Defendant Group placed no accounts receivable with Plaintiff for a month, then the increased Fee was deemed a "No Delivery Fee" and the same was calculated in a different manner under Section 9 of the Factoring Agreement.

10.    If Defendant Group placed no accounts receivable with Plaintiff for forty-five (45) days, then, under Section 9 of the Factoring Agreement, Plaintiff could terminate the Factoring Agreement on three (3) days written notice.

### DEFENDANTS DELLOIACOVO, DANSON AND GUARDIAN GUARANTEE DEFENDANT GROUP'S PERFORMANCE UNDER THE FACTORING AGREEMENT.

11.    Under Section 3(b) of the Factoring Agreement, a condition precedent of the Factoring Agreement was the execution of those certain Performance Guaranties (the "Performance Guaranties") by Defendant Delloiacovo, Defendant Danson and Defendant Guardian; true and correct copies of the Performance Guaranties executed by each of Defendant Delloiacovo, Defendant Danson and Defendant Guardian are attached hereto as Exhibits "C," "D" and "E", respectively, and are made a part hereof by reference.

12.    Section 1 of the Performance Guaranties states that: "Guarantor hereby irrevocably and unconditionally guarantees: (a) the due and punctual performance by the Company of the Representations, (b) the payment (and not merely the collectability) of any

- 3 -

loss, liability or expense incurred by [Plaintiff] in the event any of the Representations are untrue in any material respect or fail to be performed, and (c) the payment (and not merely the collectability) of any other obligation owed by [Defendant Group] to [Plaintiff] of any nature that arises hereafter under the Factoring Agreement or any Account Agreement or pursuant to any modification or amendment thereof (the "Guaranteed Obligations")."

13.    Section 3 of the Performance Guaranties states, in part, that: "Any one or more successive and/or concurrent actions may be brought against Guarantor either in the same action or proceeding, if any brought against [Defendant Group], or in separate actions, as [Plaintiff] in its sole discretion may deem advisable."

## AS FURTHER SECURITY, DEFENDANT GROUP ALSO EXECUTES A SECURITY AGREEMENT, AND PLAINTIFF PERFECTS ITS INTERESTS UNDER THE SECURITY AGREEMENT.

14.    To secure Defendant Group's performance of its obligations to Plaintiff, Defendant Group executed a Security Agreement dated March 1, 2002 (the "**Security Agreement**"); a true and correct copy of the Security Agreement is attached as **Exhibit "F"** and is made a part hereof by reference.

15.    Section 1 of the Security Agreement creates an interest in favor of Plaintiff in Defendant Group's "Accounts, Chattel Paper, Inventory, Equipment, Instruments, Investment Property, General Intangibles, Documents and proceeds and products of the foregoing (the "Collateral")."

16.    Under N.J.S.A. 12A:9-102(42), "general intangible" is defined as "any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts documents, goods, instruments, investment property, letters-of-credit rights, letters of credit, money and oil, gas, or other minerals before extraction" and includes rights in patents and rights in license agreements.

- 4 -

17.     Under Section 2 of the Security Agreement, the Security Agreement secures "[a]ny and all obligation of [Defendant Group] under the Account Agreements (but not the payment of the Accounts Receivables purchased pursuant thereto) or under any other agreement or instrument executed and delivered pursuant thereto; and (b) Any and all other liabilities and obligations of every kind and nature whatsoever of [Defendant Group] to [Plaintiff], whether such liabilities and obligations be direct or indirect, absolute or contingent, secured or unsecured, now existing or hereafter arising or acquired, due or to become due."

18.     Under Section 6 of the Security Agreement, Defendant Group agreed to maintain the Collateral under the Security Agreement by (a) making repairs, replacements, additions and improvements, (b) preserving inventory, (c) preserving all beneficial contract rights, (d) collecting accounts, (e) paying taxes, assessments and other charges on the collateral.

19.     Section 10 of the Security Agreement provides that a "Default" has occurred under the Security Agreement where "a breach or default shall be made in the due performance or observance of any provision of this Agreement and such breach or default shall continue for a period of 5 days after written notice thereof shall have been received by [Defendant Group] from [Plaintiff] . . . [Plaintiff] shall have all of the rights and remedies of a secured party under the Uniform Commercial Code and shall have full power and authority to sell or otherwise dispose of the Collateral or any part thereof."

20.     Section 17 of the Security Agreement makes Defendant Group liable for "all reasonable costs and expenses, including reasonable legal fees, of [Plaintiff] arising out of or incurred in connection with this Agreement . . . ."

21.     Plaintiff's interests created by the Security Agreement were filed with the Secretary of State of Delaware using a UCC Financing Statement on March 20, 2002; a true and

LV1 235349v1 12/17/03

correct copy of the UCC Financing Statement filed with the Secretary of State of Delaware is attached as **Exhibit "G"** and is made a part hereof by reference.

### DEFENDANT GROUP'S INTEREST IN U.S. PATENT NO. 5,270,000.

22.    On April 12, 2002, Defendant Group recorded its interest by way of assignment dated February 22, 2002 in a United States patent, bearing U.S. Patent No. 5,270,000 (the "**Patent**").

23.    On or about April 17, 2003 Defendant Group and Micro-Waste Corp. ("**Micro-Waste**") entered into that certain License Agreement (the "**License Agreement**") granting Micro Waste "a perpetual, non-exclusive, worldwide right and license to all of [Defendant Group's] patent, copyright, trade secret, know how, proprietary and intellectual property rights in the PRODUCT, along with the right and license to manufacture, have manufactured, produce, alter modify, use, market and sell the PRODUCT in all fields of use." "PRODUCT" refers to "any Sanitec Microwave Disinfection Unit;" a true and correct copy of the License Agreement is attached as **Exhibit "H"** and is made a part hereof by reference.

### DEFENDANT GROUP BREACHES BOTH THE FACTORING AGREEMENT AND THE SECURITY AGREEMENT, AND PLAINTIFF GIVES NOTICE OF THESE BREACHES.

24.    In breach of its obligations under the Factoring Agreement and the Security Agreement, Defendant Group (a) ceased placing any accounts receivable with Plaintiff, (b) failed to pay any of the fees set in the Factoring Agreement, and (c) allowed its inventory and equipment to be removed and dissipated and/or sold by third parties from its offices.

25.    By letter dated May 1, 2003, Plaintiff gave Defendant Group written notice (a) terminating the Factoring Agreement because Defendant Group did not place any accounts receivable with Plaintiff for a period of forty-five days, and (b) demanding the fees that were

- 6 -

owed under the Factoring Agreement; a true and correct copy of the May 1, 2003 letter is attached as **Exhibit "I"** and is made a part hereof by reference.

26.    By letter dated December 5, 2003, and in the manner specified in Section 19 of the Security Agreement, Plaintiff gave written notice to Defendant Group of a "breach or default" under the Security Agreement; a true and correct copy of the December 5, 2003 letter is attached hereto as **Exhibit "J"** and is made a part hereof by reference.

27.    On December 12, 2003, Plaintiff sent a UCC financing statement amendment form to the Secretary of State of Delaware for filing to record the assignment pursuant to the Assignment Agreement; a true and correct copy of the December 12, 2003 UCC financing statement amendment is attached hereto as **Exhibit "K"** and is made a part hereof by reference.

28.    Defendant Group has breached or defaulted under the terms of the Factoring Agreement and/or the Security Agreement and its Default has been noticed in writing by Plaintiff.

29.    Defendant Group's interest in, among other things, its inventory, equipment and general intangibles, including the Patent and the License Agreement, are Collateral under the Security Agreement.

30.    In light of Defendant Group's breach of the Factoring Agreement and the Security Agreement, Defendant Group's interests in all the Collateral are subordinate to Plaintiff's interests.

**WHEREFORE,** plaintiff Sanitec Industries, Inc. demands judgment in their favor and against defendants, Sanitec Group, LLC, Joseph Delloiacovo, Wayne Danson and Guardian Investments, LLC:

(a) Foreclosing and barring defendants Sanitec Group, LLC, Joseph
    Delloiacovo, Wayne Danson and Guardian Investments, LLC and all
    persons claiming by or through defendants, of all equity and right of
    redemption in and to any of the Collateral; and,

(b) Assigning all of defendant Sanitec Group, LLC's right, title and interest
    in the License Agreement to plaintiff Sanitec Industries, Inc.;

(c) Granting plaintiff Sanitec Industries, Inc. such other and further relief as
    the Court may deem equitable, just and proper consistent with this prayer
    for relief.


Respectfully submitted,


Roberto Rivera-Soto
Thomas R. Hower
**FOX ROTHSCHILD LLP**
Princeton Pike Corporate Center
997 Lenox Drive – Building 3
Lawrenceville, New Jersey 086480-2311
(609) 896-3600

**ATTORNEYS FOR PLAINTIFF
SANITEC INDUSTRIES, INC.**


**DATED:**    December **17**, 2003

- 8 -

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Roberto Rivera-Soto, Esquire, is designated as trial counsel for plaintiff Sanitec Industries, Inc.

## CERTIFICATION PURSUANT TO R. 4:5-1

I certify that the matter in controversy is not the subject of any other action or arbitration proceeding, pending or contemplated. I further certify that I am not aware of the identities of any other parties who should be joined in this action.

Respectfully submitted,

Roberto Rivera-Soto
Thomas R. Hower
FOX ROTHSCHILD LLP
Princeton Pike Corporate Center
997 Lenox Drive – Building 3
Lawrenceville, New Jersey 086480-2311
(609) 896-3600

ATTORNEYS FOR PLAINTIFF
SANITEC INDUSTRIES, INC.

DATED:     December 17, 2003