1   MICHAEL J. HARTLEY (State Bar No. 189375)
    LISA GILFORD (State Bar No. 171641)
2   SCOTT J. LEIPZIG (State Bar No. 192005)
    **WESTON BENSHOOF ROCHEFORT**
3       **RUBALCAVA & MacCUISH LLP**
    333 South Hope Street
4   Sixteenth Floor
    Los Angeles, California 90071
5   Telephone:  (213) 576-1000
    Facsimile:  (213) 576-1100
6

7   Attorneys for Plaintiff and Cross-Defendant
    **JAMES HARKESS**
8

                **CONFORMED COPY**
                **OF ORIGINAL FILED**
                Los Angeles Superior Court

                    **OCT 24 2005**
                John A. Clarke, Executive Officer/Clerk
                By _____, Deputy
                        R. Arraiga

9           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10              **FOR THE COUNTY OF LOS ANGELES**

11  JAMES HARKESS,                      Lead Case No.:  BC 311681

12          Plaintiff,                  (Assigned for All Purposes to the
                                        Honorable James R. Dunn – Dept. 26)
13      v.
                                        **NOTICE OF ENTRY OF FINAL**
14  TERRENCE QUINN aka TERRANCE LEE     **JUDGMENT IN FAVOR OF JAMES**
    QUATKEMEYER, and DOES 1 through 10, **HARKESS**
15  inclusive,

16          Defendants.

17  _____

18  AND RELATED ACTIONS.

19

20

21

22

23

24

25

26

27

28

SI 004887

1    **TO:  ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

2        PLEASE TAKE NOTICE that the Court filed and entered the Stipulation and

3    Order Re: Entry of Final Judgment on October 17, 2005.  A true and correct copy is attached

4    hereto as Exhibit A.

5

6    DATED:  October 24, 2005       MICHAEL J. HARTLEY

7                                 LISA GILFORD

                                    SCOTT J. LEIPZIG

8                                  **WESTON, BENSHOOF, ROCHEFORT,**

                                     **RUBALCAVA & MacCUISH LLP**

9

10                                 _____

                                        Lisa Gilford

11                             Attorneys for Plaintiff and Cross-Defendant

12                             **JAMES HARKESS**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

713213.1

SI 004888

**EXHIBIT A**

SI 004889

COPY

ORIGINAL FILED

OCT 1 7 2005

LOS ANGELES
SUPERIOR COURT

1  MICHAEL J. HARTLEY (State Bar No. 189375)
   LISA GILFORD (State Bar No. 171641)
2  SCOTT J. LEIPZIG (State Bar No. 192005)
   **WESTON BENSHOOF ROCHEFORT**
3    **RUBALCAVA & MacCUISH LLP**
   333 South Hope Street
4  Sixteenth Floor
   Los Angeles, California 90071
5  Telephone: (213) 576-1000
   Facsimile: (213) 576-1100
6

7  Attorneys for Plaintiff and Cross-Defendant
   JAMES HARKESS

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              FOR THE COUNTY OF LOS ANGELES

10

11  JAMES HARKESS,                      Case No.: BC 311681
                                        (Assigned for All Purposes to the
12          Plaintiff,                  Honorable James R. Dunn – Dept. 26)

13      v.                              **STIPULATION AND [PROPOSED]**
                                        **ORDER RE: ENTRY OF FINAL**
14  TERRENCE QUINN aka TERRANCE LEE     **JUDGMENT**
    QUATKEMEYER, and DOES 1 through 10,
15  inclusive,

16          Defendants.

17  ─────────────────────────────────────

    AND RELATED CROSS-ACTION.
18

19  TO: THE HONORABLE JAMES R. DUNN, ALL PARTIES IN INTEREST, AND THEIR

20  RESPECTIVE ATTORNEYS OF RECORD:

21          Plaintiff and Cross-Defendant James Harkess ("Harkess"), Defendant and

22  Cross-Complainant Terrence Quinn aka Terrance Lee Quatkemeyer ("Quinn"), and

23  Defendants and Cross-Complainants James H. Smith ("Smith") and Jeffrey Weinstein

24  ("Weinstein"), as Trustees of the purported Windsor Trust, u/d/t dated June 21, 2002

25  ("Windsor Trust") (collectively the "Parties"), by and through their counsel of record, hereby

26  stipulate as follows:

27          1.      Quinn, on behalf of himself, and Smith and Weinstein on behalf of

28  themselves and the Windsor Trust, hereby waive all rights to appeal or otherwise challenge

                                        1
694191.1

SI 004890

1  the Court's Statement of Decision and Final Judgment (copies of which are attached as
2  Exhibits A and B hereto) and stipulate to immediate entry of the Statement of Decision and
3  Final Judgment as the final judgment of the Court.

4      2.    Harkess hereby withdraws his memorandum for costs and waives his
5  right to those costs as the prevailing party, so that all parties shall bear their own costs and
6  attorneys' fees in this case.

7      **IT IS SO STIPULATED.**

8
9  DATED: ~~September~~ __, 2005

10      JAMES R. HARKESS, individually

11
12  DATED: September __, 2005

13
14      TERRANCE QUATKEMEYER,
        aka TERRY QUINN, individually

15  DATED: September __, 2005

16
17      JAMES H. SMITH, individually

18  DATED: September __, 2005

19
20      JEFFREY WEINSTEN, individually

21  DATED: September __, 2005    **THE WINDSOR TRUST**

22
23      By:_____
24      TERRANCE QUATKEMEYER,
        aka TERRY QUINN
        Its: Beneficiary

25
26  DATED: September __, 2005    **THE WINDSOR TRUST**

27
28      By:_____
        JAMES H. SMITH
        Its: Trustee

WESTON BENSHOOF ROCHEFORT RUBALCAVA MACCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071

2

694191.1

SI 004891

1   the Court's Statement of Decision and Final Judgment (copies of which are attached as
2   Exhibits A and B hereto) and stipulate to immediate entry of the Statement of Decision and
3   Final Judgment as the final judgment of the Court.

4           2.   Harkess hereby withdraws his memorandum for costs and waives his
5   right to those costs as the prevailing party, so that all parties shall bear their own costs and
6   attorneys' fees in this case.

7           IT IS SO STIPULATED.

8
9   DATED: October ___, 2005

10                                    _____
                                      JAMES R. HARKESS, individually
11
12  DATED: October 7th 2005
13                                    _____
                                      TERRANCE QUATKEMEYER,
14                                    aka TERRY QUINN, individually

15  DATED: October ___, 2005

16                                    _____
17                                    JAMES H. SMITH, individually

18  DATED: October ___, 2005

19                                    _____
20                                    JEFFREY WEINSTEN, individually

21  DATED: October 7th 2005           THE WINDSOR TRUST
22
23  By _____
                                      TERRANCE QUATKEMEYER,
24                                    aka TERRY QUINN
                                      Its: Beneficiary
25
26  DATED: October ___, 2005          THE WINDSOR TRUST

27
    By: _____
28                                    JAMES H. SMITH
                                      Its: Trustee

2

484191 1

SI 004892

1    the Court's Statement of Decision and Final Judgment (copies of which are attached as

2    Exhibits A and B hereto) and stipulate to immediate entry of the Statement of Decision and

3    Final Judgment as the final judgment of the Court.

4            2.      Harkess hereby withdraws his memorandum for costs and waives his

5    right to those costs as the prevailing party, so that all parties shall bear their own costs and

6    attorneys' fees in this case.

7            **IT IS SO STIPULATED.**

8

9    DATED: October ___, 2005

10   _____

         JAMES R. HARKESS, individually

11

12   DATED: October ___, 2005

13   _____

         TERRANCE QUATKEMEYER,

14       aka TERRY QUINN, individually

15   DATED: October 7, 2005

16

17   _____

         JAMES H. SMITH, individually

18   DATED: October ___, 2005

19

20   _____

         JEFFREY WEINSTEN, individually

21   DATED: October ___, 2005    **THE WINDSOR TRUST**

22

23   By: _____

         TERRANCE QUATKEMEYER,

24       aka TERRY QUINN

     Its: Beneficiary

25

26   DATED: October 7, 2005    **THE WINDSOR TRUST**

27   By: _____

         JAMES H. SMITH

28   Its: Trustee

                              2

SI 004893

1   the Court's Statement of Decision and Final Judgment (copies of which are attached as
2   Exhibits A and B hereto) and stipulate to immediate entry of the Statement of Decision and
3   Final Judgment as the final judgment of the Court.
4          2.    Harkess hereby withdraws his memorandum for costs and waives his
5   right to those costs as the prevailing party, so that all parties shall bear their own costs and
6   attorneys' fees in this case.
7          IT IS SO STIPULATED.
8
9   DATED: October ___, 2005
10  _____
          JAMES R. HARKESS, individually
11
12  DATED: October ___, 2005
13  _____
          TERRANCE QUATKEMEYER,
14        aka TERRY QUINN, individually
15  DATED: October ___, 2005
16
17  _____
          JAMES H. SMITH, individually
18  DATED: October 7, 2005
19
20  _____
          JEFFREY WEINSTEN, individually
21  DATED: October ___, 2005    THE WINDSOR TRUST
22
23  By: _____
          TERRANCE QUATKEMEYER,
24        aka TERRY QUINN
          Its: Beneficiary
25
26  DATED: October ___, 2005    THE WINDSOR TRUST
27
28  By: _____
          JAMES H. SMITH
          Its: Trustee

                               2
STIPULATION AND [PROPOSED] ORDER RE: ENTRY OF FINAL JUDGMENT

695191 1

SI 004894

1
2    DATED: October 2, 2005        THE WINDSOR TRUST

3                                  By: _____
4                                       JEFFREY WEINSTEN
                                        Is, Trustee
5
6                                          ORDER
7          IT IS SO ORDERED.  The clerk is directed to enter the Court's Statement of

8    Decision and Final Judgment as the final judgment in this case.  Each party shall bear its own

9    costs and attorneys' fees.

10
11                                        JAMES R. DUNN
     DATED: OCT 17 2005          _____
12                                  HONORABLE JAMES R. DUNN
13                                  Judge of the Superior Court

14   APPROVED AS TO FORM:

15
16   DATED: October ___, 2005     MICHAEL J. HARTLEY
                                  LISA GILFORD
17                                SCOTT J. LEIPZIG
                                  WESTON BENSHOOF ROCHEFORT
18                                   RUBALCAVA & MacCUISH LLP

19
20                                _____
                                         Michael J. Hartley
21                                Attorneys for Plaintiff and Cross-Defendant
                                  JAMES HARKESS
22
23   DATED: October ___, 2005     THE LAW OFFICES OF PETER J. BABOS

24
25                                _____
                                         Peter J. Babos
26                                Attorney for Defendant and Cross-Complainant
                                  TERRENCE QUINN aka TERRANCE LEE
27                                QUATKEMEYER and Cross-Complainants JAMES H.
                                  SMITH and JEFFREY WEINSTEN, as Trustees of THE
28                                WINDSOR TRUST

                                         3
                 STIPULATION AND [PROPOSED] ORDER RE: ENTRY OF FINAL JUDGMENT
     694191 1

SI 004895

DATED: October ___, 2005      **THE WINDSOR TRUST**

By: _____
                JEFFREY WEINSTEN
     Its: Trustee

### ORDER

IT IS SO ORDERED. The clerk is directed to enter the Court's Statement of Decision and Final Judgment as the final judgment in this case. Each party shall bear its own costs and attorneys' fees.

DATED: _____

_____
HONORABLE JAMES R. DUNN
Judge of the Superior Court

**APPROVED AS TO FORM:**

DATED: October 1, 2005        MICHAEL J. HARTLEY
                              LISA GILFORD
                              SCOTT J. LEIPZIG
                              **WESTON BENSHOOF ROCHEFORT
                                RUBALCAVA & MacCUISH LLP**

_____
                Michael J. Hartley
Attorneys for Plaintiff and Cross-Defendant
JAMES HARKESS

DATED: October___, 2005       **THE LAW OFFICES OF PETER J. BABOS**

_____
                Peter J. Babos
Attorney for Defendant and Cross-Complainant
TERRENCE QUINN aka TERRANCE LEE
QUATKEMEYER and Cross-Complainants JAMES H.
SMITH and JEFFREY WEINSTEN, as Trustees of THE
WINDSOR TRUST

3

STIPULATION AND [PROPOSED] ORDER RE: ENTRY OF FINAL JUDGMENT

694191.1

SI 004896

DATED: October ___, 2005    THE WINDSOR TRUST

By: _____
IEFFREY WEINSTEN

Its: Trustee

### ORDER

IT IS SO ORDERED. The clerk is directed to enter the Court's Statement of Decision and Final Judgment as the final judgment in this case. Each party shall bear its own costs and attorneys' fees.

DATED: _____

HONORABLE JAMES R. DUNN
Judge of the Superior Court

APPROVED AS TO FORM:

DATED: October ___, 2005    MICHAEL I. HARTLEY
LISA GILFORD
SCOTT I. LEIPZIG
WESTON BENSHOOF ROCHEFORT
RUBALCAVA & MacCUISH LLP

_____
Michael I. Hartley
Attorneys for Plaintiff and Cross-Defendant
JAMES HARKESS

DATED: October 7, 2005    THE LAW OFFICES OF PETER J. BABOS

_____
Peter J. Babos
Attorney for Defendant and Cross-Complainant
TERRENCE QUINN aka TERRANCE LEE
QUATKEMEYER and Cross-Complainants JAMES H.
SMITH and JEFFREY WEINSTEN, as Trustees of THE
WINDSOR TRUST

3

STIPULATION AND [PROPOSED] ORDER RE: ENTRY OF FINAL JUDGMENT

694191.1

SI 004897

**EXHIBIT  A**

SI 004898

**ORIGINAL FILED**

AUG 1 8 2005

**LOS ANGELES SUPERIOR COURT**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JAMES HARKESS,<br><br>Plaintiff,<br><br>v.<br><br>TERRENCE QUINN aka TERRANCE LEE QUATKEMEYER, and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTION. | Case No.: BC 311681<br><br>**JUDGMENT IN FAVOR OF JAMES HARKESS** |

This action came on regularly for trial before the Court on March 28, 2005, at 8:30 a.m. in Department 26 of the above court. Michael Harley and Scott Leipzig of Weston Benshoof Rochefort Rubalcava & MacCuish LLP appeared on behalf of Plaintiff and Cross-Defendant James Harkess ("HARKESS"). Mark Hathaway of Slater Hathaway LLP and Peter Babos of the Law Offices of Peter Babos appeared on behalf of Defendants and Cross-Complainants Terrance Lee Quatkemeyer aka Terrence Quinn ("QUINN") and James H. Smith, as Trustee of The Windsor Trust, dated June 21, 2002 ("SMITH" and "TRUST") and Jeffrey Weinsten ("WEINSTEN"), as Co-Trustee of the TRUST.

The Court having heard and considered testimony, documentary evidence, and arguments

1

JUDGMENT IN FAVOR OF JAMES HARKESS

SI 004899

1   presented by or on behalf of the parties, and having issued a Statement of Decision (hereinafter,

2   "Decision"), hereby orders the following Judgment to be entered in favor of HARKESS consistent

3   with the Statement of Decision, with specific reference to the following findings of the Court:

4

5       (1)    The purported TRUST "was not legally in existence and had no assets at the time

6   of the transfer" of Windsor Holdings, LLC ("Windsor") from David Kaye ("Kaye") to HARKESS.

7   (Decision, p. 1.) Any purported ownership of Windsor claimed by SMITH and WEINSTEN "is

8   purely derivative based on their status as trustees of the Trust, and the court has found that the Trust

9   was not legally in existence during the time of the transfer from Kaye to Harkess." (Decision, p.

10  2.)

11

12      (2)    The transfer of Windsor from "Kaye to Harkess was effective to transfer ownership

13  of Windsor to Harkess." (Decision, p. 1.) Windsor was formed in July 2001 and David Kaye

14  became the managing member, and sole owner, of Windsor; Quinn set up the Windsor structure in

15  such a way as to create apparent authority/ownership in Kaye; Harkess became the managing

16  member, and sole owner, of Windsor upon transfer from Kaye in July 2003.   The undisputed

17  evidence presented by both sides, which constituted the underlying premise for the need for this

18  Court to determine ownership of Windsor, was that since July 2001, Windsor owned Sanitec

19  Worldwide, Ltd. ("Worldwide"), and Worldwide was the majority shareholder of Sanitec, Ltd.

20  ("Limited").

21

22      (3)    QUINN and those acting on his behalf, including SMITH and WEINSTEN, "are

23  barred by the equitable doctrines of unclean hands and equitable estoppel from asserting ownership

24  in Windsor." (Decision, p. 2.) "In the exercise of its equitable powers, this court will not permit

25  Quinn to now assert an ownership interest in Windsor." (Decision, p. 7.)

26

27      NOW THEREFORE, IT IS HEREBY ADJUDGED AND DECREED THAT:

28

2

JUDGMENT IN FAVOR OF JAMES HARKESS

(1)     Judgment is entered FOR Plaintiff and Cross-Defendant HARKESS and AGAINST Defendants and Cross-Complainants QUINN, SMITH and WEINSTEN on Plaintiff's Complaint for Declaratory Relief and on Defendants' Cross-Complaint for Declaratory Relief. The Court declares that HARKESS is the sole owner of Windsor and Windsor's assets, including but not limited to, Windsor's ownership interests in Worldwide and Limited. Neither QUINN, SMITH, WEINSTEN, nor any successor trustees or beneficiaries of the purported TRUST have any right, title or interest in Windsor and/or any Windsor asset, including but not limited to, Windsor's ownership interests in Worldwide and Limited;

(2)     QUINN, SMITH, WEINSTEN and the successor trustees and beneficiaries of the purported TRUST, and each of them, as well as anyone acting on their behalf or in concert with them (hereinafter, "ENJOINED PARTIES"), are restrained and permanently enjoined from claiming any right, title or interest in Windsor and/or any Windsor asset, including but not limited to, Windsor's ownership interests in Worldwide and Limited. The ENJOINED PARTIES are specifically restrained and permanently enjoined from making any representations that they have any ownership interest in or control

////.

////

3

JUDGMENT IN FAVOR OF JAMES HARKESS

06

SI 004901



1  over Windsor and/or any Windsor asset, including but not limited to, Windsor's

2  ownership interests in Worldwide and Limited.

3

4  DATED: _AUG 1 8 2005_

5
                        **JAMES R. DUNN**

6                       JAMES R. DUNN
                        Judge of the Superior Court
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JRD:cr     26
Harkess.jmt
8/18/05    27

28

4

JUDGMENT IN FAVOR OF JAMES HARKESS

07

SI 004902

**EXHIBIT B**

SI 004903

**ORIGINAL FILED**

· AUG 1 8 2005

**LOS ANGELES**
**SUPERIOR COURT**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JAMES HARKESS, | ) Case No.: BC 311681 |
| Plaintiff, | ) |
| v. | ) |
| TERRENCE QUINN aka TERRANCE LEE | ) **STATEMENT OF DECISION** |
| QUATKEMEYER, and DOES 1 through 10, inclusive, | ) |
| Defendants. | ) |
| AND RELATED CROSS-ACTION. | ) |

The court finds FOR PLAINTIFF/CROSS-DEFENDANT AND AGAINST DEFENDANTS/CROSS-COMPLAINANTS on Plaintiff's Complaint for Declaratory Relief and on Defendants' Cross-Complaint for Declaratory Relief. The court declares that plaintiff James Harkess ("Harkess" herein) is the rightful owner of Windsor Holdings, LLC, ("Windsor" herein) and that defendants have no right, title or interest therein. Further, defendants, and each of them, are permanently enjoined from claiming any right, title or interest in Windsor.

The court finds that the Windsor Trust ("Trust" herein) was not legally in existence and had no assets at the time of the transfer of Windsor from David Kaye ("Kaye" herein) to Harkess. Defendant Terrence Quinn aka Quatkemeyer ("Quinn" herein), in July 2001, through a series of

1

STATEMENT OF DECISION

SI 004904

1  companies and transactions, none of which bear his name or other indicia of his ownership,

2  transferred ownership and apparent authority to Kaye as managing member of Windsor. Thereafter,

3  back-dated documents were created virtually overnight, transferring ownership of Windsor from

4  Kaye to Harkess in July 2003. This transfer of ownership of Windsor was relied on not only by

5  Harkess, but by many other parties and attorneys, including a federal judge. The court finds that

6  the transfer from Kaye to Harkess was effective to transfer ownership of Windsor to Harkess in July

7  2003. The court further finds that, in any event, Quinn and those acting on his behalf are barred by

8  the equitable doctrines of unclean hands and equitable estoppel from asserting ownership in

9  Windsor. Any purported ownership claimed by James H. Smith ("Smith" herein) or Jeffrey

10  Weinsten ("Weinsten" herein) is purely derivative based on their status as trustees of Trust, and the

11  court has found that the Trust was not legally in existence during the time of the transfer from Kaye

12  to Harkess.

13

14  FACTUAL BACKGROUND

15        There are many different companies and individuals involved in the various lawsuits here,

16  in Ohio and elsewhere, but the essential entities for purposes of this lawsuit are Windsor, Sanitec

17  Worldwide ("Worldwide" herein) and Sanitec Limited ("Limited" herein). Windsor is a California

18  limited liability company formed on July 17, 2001. The undisputed evidence at trial was that,

19  through a series of transfers and a corporate re-organization by Quinn, in late July 2001, Windsor

20  became the sole owner of Worldwide. It was also undisputed at trial that Worldwide was the

21  majority owner of Limited and that Mr. Weinsten's company, Salem Associates, owned a minority

22  interest in Worldwide. (Ex. 189, 223) The basic premise argued by both parties at trial was that

23  whoever owns Windsor controls the other two by virtue of this ownership structure.

24

25        This court has been asked to make a ruling on a single, narrow question: who owns

26  Windsor? The court is mindful that there are other lawsuits in Ohio, and perhaps elsewhere, which

27  may be impacted by this decision, and that there may be issues between various parties impacted

28  by what the court decides here. Beyond the findings that support the Court's decision, however,

2
STATEMENT OF DECISION

SI 004905

1  this court makes no findings regarding the merits of any other lawsuits or any purported claims that

2  the parties may have against one another or others.

3

4      Plaintiff contends that he is the owner of Windsor by virtue of a transfer from Kaye, the

5  managing member of Windsor.  Defendants contend that the Trust is the owner of Windsor.

6  Defendants presented evidence that in June 2002, defendant/cross-complainant Quinn was suffering

7  from a terminal illness and was facing an impending prison term, and therefore set up the Trust with

8  cross-complainant Smith and Weinsten as the trustees, and concurrently therewith transferred all

9  the assets of Windsor to Trust.  Therefore, at the time of transfer of Windsor from Kaye to Harkess,

10  defendants assert that Windsor had already been transferred to the Trust and there was nothing to

11  transfer.

12

13  THE TRUST

14      The circumstances in existence in or about June 2002, that is the illness and the impending

15  sentencing, are consistent with a desire by Mr. Quinn to form a trust to hold his property.  What is

16  missing, however, is a signed original trust document and any credible evidence that such a

.17  document was ever signed by Quinn in June 2002, or at any time before he was released from prison

18  in late September 2003.  Also, like the ownership structure that Quinn set up for Windsor, the

19  structure he set up for his Trust was also incomplete.  The final, and necessary, steps were never

20  taken to consummate the Trust.

21

22      The court makes the following findings which support its conclusion that no Trust was

23  formed in June 2002 or at any time before the Kaye-Harkess transfer.

24

25  1.    The court found Smith to be a credible witness, but by his own testimony and that of others,

26       he was only a figurehead.  It was Weinsten that wrote all the letters for him to sign, and it

27       was Weinsten that monitored the litigation in Ohio.  Virtually everything that Smith knew,

28       he knew because Weinsten told him.  He had virtually no firsthand knowledge of facts.

3

STATEMENT OF DECISION

10

SI 004906

2.    There is no original Trust signed by Quinn which bears a date in June 2002. In fact, no signed original at all was offered in evidence.

3.    While there is evidence that the Litwin law firm prepared drafts of a trust in June 2002, and Smith signed some version of a trust, Smith testified that he does not know whether Quinn signed it. (Ex. 265)

4.    Weinsten testified that he sent the Trust document which had been signed by others to Quinn for him to sign. He did not see Quinn sign the Trust document. Weinsten claims that he received a signature back from Mr. Quinn in June 2002, but the Court does not find this claim credible in light of Mr. Weinsten's other testimony in depositions and pleadings regarding ownership of Windsor (see below), and his prior conviction introduced for purposes of impeachment.  No one had personal knowledge about whether Quinn ever signed before he was released.

5.    Quinn testified that he did sign it in June 2002, but the court does not find his testimony to be credible. On the stand Mr. Quinn repeatedly shifted responsibility for various actions from himself to his attorneys, and said he would sign virtually anything his lawyers told him to sign. This, along with his observed demeanor while testifying, and his two felony convictions for fraud-related offenses, cause the court to disregard his testimony. Thus, there is no independent, corroborating evidence that Quinn ever signed before he got out of prison.

6.    There is no credible evidence that shares or other indicia of ownership of Windsor were ever transferred to the Trust.

7.    Quinn testified that he fired Kaye as managing member of Windsor in June 2002 by letter,

STATEMENT OF DECISION

SI 004907

1    but there is no evidence other than the testimony of Quinn himself that the letter was ever
2    sent, and court does not find his testimony credible. Kaye denies ever receiving it, and the
3    only copy introduced in evidence apparently came from Weinstein's file.
4
5        In addition to these points, Weinstein who along with Smith was a co-trustee, denied twice
6    in depositions in other cases that he knew who owned Windsor. One can infer from this that he
7    either knew the trust had never been signed by Quinn, or that there was never any transfer of
8    Windsor assets to the Trust. It was Weinstein who was monitoring the Ohio litigation and
9    apparently was concerned enough about protecting his 48% interest in Worldwide that he attempted
10   to intervene in the Ohio litigation. In several pleadings filed in connection therewith he never
11   mentioned the Trust. (Ex. 118, 122) Even when Smith sent the letter to John Climaco, Ohio
12   counsel for Limited, et al., he did not mention the Trust. And finally, the two independent
13   witnesses who may have been able to corroborate the Trust, attorney Litwin who drafted it, and
14   attorney Mark Geragos (who was allegedly present when the Trust was signed in his office) were
15   not called by the defendants to testify.
16
17       The defendants have not met their burden of showing that the Trust was legally formed and
18   in existence at the time of the Kaye-Harkess transfer.
19
20   THE TRANSFER TO HARKESS
21       By virtue of the failure of the Trust to be formed in June 2002, the assets of Windsor were
22   still in Windsor at the time of the transfer from Kaye to Harkess. In July 2003, never referencing
23   the Trust in his letter, Smith wrote to John Climaco, Esq., Ohio counsel for Limited and Windsor
24   ("Climaco" herein), claiming that Harkess had no authority to represent Limited in the Ohio
25   litigation and that he (Climaco) was discharged as counsel. (Apparently this was one of the letters
26   written for him by Weinstein.) (Ex. 210) In response to this letter Climaco sent an urgent message
27   to Babos demanding to know who had authority to speak for Limited and who he should listen to.
28   (Ex. 211.1, 212) He was obviously very agitated and wanted answers immediately. He was

5
STATEMENT OF DECISION

12

SI 004908

1 particularly upset over the fact that he was being put in a position to embarrass himself before a
2 federal judge. In response to that inquiry, within hours Babos, with the concurrence of Harkess and
3 Kaye, created back-dated documents that showed that Harkess was the owner of Limited. (Ex. 168)
4 Kaye (for Limited) and Harkess (for Sanitec West) had been managing the Ohio litigation and they
5 needed to show they had authority to do so. (It is not altogether clear which parties Babos was
6 actually representing as counsel in all these transactions; Climaco had repeatedly asserted that
7 Quinn needed separate counsel due to a perceived conflict of interest; Babos had served as corporate
8 counsel for some of the Sanitec companies and Quinn individually over the years.) (Ex. 212) These
9 hastily created documents showed that Kaye, acting as managing member and owner of Windsor,
10 transferred his member/owner status to Harkess. Babos continued to reaffirm that Harkess was the
11 owner of Windsor for weeks after Quinn was released from prison in September 2003. He testified
12 that it was only later he realized that he had made a mistake in having the documents prepared and
13 started making efforts to reverse position. By then, however, the representations to the Ohio federal
14 court and counsel had already been made and actions had been taken in reliance on Harkess'
15 apparent authority to represent Limited, (based on his ownership of Windsor) and commitments had
16 been made and documents signed.

17

18      Quinn is responsible for creating the environment and business structure that made this
19 possible. Windsor was formed on July 17, 2001, at Quinn's direction, with the filing of Windsor's
20 Articles of Organization with the Secretary of State, showing Kaye as the manager. This was the
21 only documentation for Windsor. Nowhere did Quinn's name appear. In late July 2001, he then
22 asked Kaye to front for him in an attempt to sell Limited and in fact Kaye acted as managing
23 member/owner in the Eden transaction and in dealing with Stericycle. He also was sent by Quinn
24 to Limited back East to monitor operations and represent himself as the managing member of
25 Windsor. Quinn claims that Kaye was only appointed to deal with specific sales or activities, but
26 Quinn is the one who put him in a position to represent himself as owner of Windsor. It was Quinn
27 who set up Windsor but never set up any formal ownership structure or had any documents prepared
28 which identified him as being involved in Windsor. All of the assets that went through the various

6

STATEMENT OF DECISION

SI 004909

1   re-organizations ended up in Windsor. Windsor became a holding company with no ownership

2   structure, and no connnection with Quinn. When it was to his advantage in having Kaye step

3   forward for specified transactions that benefitted Quinn, he validates his authority. The court does

4   not recognize, however, such selective delegations of authority, especially in a case where there is

5   no documentation showing an owner of Windsor at all. Mr. Babos and Mr. Mitchell R. Miller (a

6   corporation lawyer who drew up the Windsor documents for the Secretary of State) both testified

7   that Quinn never set up any ownership structure because he wasn't sure how he wanted to do it.

8   The only person placed in a position of apparent authority/ownership was Kaye. There is no

9   evidence that either Quinn, or Babos or Miller did anything at all to remedy this uncompleted

10  ownership structure after Quinn went to prison, thus enabling the later events to occur. The Court

11  finds that Mr. Kaye was the sole managing member, and therefore sole owner, of Windsor Holdings

12  from its inception in July 2001 through the transfer to Mr. Harkess in July 2003.

13

14       When the Climaco emergency came, Mr. Kaye did not step forward to act as owner/

15  manager, rather he wanted out, so it was agreed that he would transfer his member/owner status to

16  Harkess. Rather than explain the dilemma to Mr. Climaco and seek a resolution with the Ohio

17  court, counsel Babos, with the concurrence of Harkess and Kaye prepared the back-dated

18  documents within a matter of hours and sent them to Climaco. Those documents were sent to Ohio

19  with the knowledge that they were to be presented by Mr. Climaco, an officer of the court, to a

20  federal judge representing that Mr. Harkess was the owner of Windsor. And then everyone sat back

21  and allowed others to rely on that representation. This court finds that Mr. Harkess is the owner

22  of Windsor and became the owner with the transfer from Mr. Kaye in July 2003. That entire chain

23  of events was created by the anonymous and incomplete creation of Windsor by Quinn, and the

24  attempt to selectively assign ownership/authority to Kaye.

25

26       The court is mindful that defendant contends that there was an agreement that Harkess was

27  only taking the shares of Windsor temporarily and that he was to give them back after Quinn was

28  released. Mr. Babos supports this purported agreement, as does Quinn, but Harkess vehemently

7
STATEMENT OF DECISION

SI 004910

1   denies it.  There is evidence that Harkess said "If I own Limited by virtue of my ownership of

2   Windsor, then I want the documents."  This would suggest, however, that Harkess did indeed

3   believe he owned Windsor although had some question as to what impact it had on ownership of

4   Limited.  Whether there was or was not such a private agreement between Quinn and Harkess is

5   between them.  As far as the rest of the world is concerned, Mr. Kaye transferred ownership of

6   Windsor to Harkess and Harkess, Kaye and Babos represented to the federal court and the litigants

7   that Harkess was the owner of Windsor.  The transfer to Harkess was effective.

8

9   UNCLEAN HANDS AND EQUITABLE ESTOPPEL

10        Further, in the exercise of its equitable powers, this court will not permit Quinn to now

11   assert an ownership interest in Windsor.  Plaintiff spent a great deal of the trial laying out the series

12   of transactions involving the original purchase of Limited by Quinn with investor money and the

13   use of various corporations to do so.  Plaintiff made the point that Mr. Quinn's name personally did

14   not appear on any of the documentation of these companies.  For the most part the court found that

15   to be true, based on the limited evidence presented on those issues.  This court is being asked to take

16   note of a pattern of ownership and apparent evasion of accountability to creditors and suppression

17   of identity in order to establish the defense of unclean hands.  This court is not making any findings

18   as to whether Mr. Quinn defrauded the original investors in connection with his use of their funds

19   to purchase Limited.  This court does take note, however, of this trail of companies, re-

20   organizations and the resultant anonymity of Quinn for purposes of whether Quinn was attempting

21   to hide his assets, (i.e., Windsor's controlling interest in Worldwide and through Worldwide,

22   ownership of Limited) in order to avoid any claims these investors might have, and comes before

23   this Court with unclean hands.  The court also takes note of the fact that Quinn never used any of

24   his own money to purchase these companies.  The court did not find credible his testimony that he

25   also put his own money into Limited from the sale of luxury cars.  No documentary or other

26   evidence was presented to support that assertion.

27

28        All of this is corroboration for the testimony of Mr. Quinn himself.  Quinn testified on the

8

STATEMENT OF DECISION

SI 004911

1  stand that he created Windsor to "keep the assets of Sanitec away from Barbara Sager, Steve Ventre,

2  Joe Delloiacovo and the investors in Ohio that were laying claim to those assets." He further

3  testified that he asked Mr. Kaye to be the managing member because he was "having difficulties"

4  and "troubles" at the time. It is clear that Quinn did not want his assets in his own name and in fact

5  his apparent 80% interest in Sanitec West was in the name of his friend Mary Reidiger rather than

6  himself. This is sufficient evidence for the court to conclude that Quinn was secreting his assets

7  to defeat the claims of his creditors and that he comes to this court with unclean hands. (See

8  Allstead vs. Laumeister (1911) 16 Cal.App. 59 and Belling vs. Croter (1943) 57 Cal.App.2d 296.)

9

10      In addition, the court invokes the doctrine of equitable estoppel. While Mr. Quinn himself

11  did not make the representations to those who relied and acted on them (the Ohio federal court and

12  counsel and others related to that litigation), he is directly responsible for setting in motion the chain

13  of events that led to those representations. He put Kaye and Harkess in the position of having

14  apparent authority for and ownership of Windsor, from the point of view of the court and the parties

15  in the East, to accomplish his own ends of selling off Limited without having his name in any way

16  associated with the sale. Many have relied on the resulting representations about Harkess'

17  ownership of Windsor to their potential detriment in the event that transactions consummated in

18  reliance thereon were to be overturned. Quinn is estopped from now claiming that the

19  representations regarding ownership of Windsor are false, or that Kaye did not have authority to

20  transfer the company to Harkess.

21

22      Plaintiff/Cross-Defendant Harkess to prepare the judgment consistent with this Tentative

23  Ruling. This Tentative Ruling shall be the Statement of Decision unless within ten days either party

24  specifies controverted issues or makes proposals not covered in the Tentative Ruling.

JRD:cr
Harkess.sd
8/18/05

25

26  Dated:  AUG 1 8 2005

27

28

**JAMES R. DUNN**

JAMES R. DUNN
Judge of the Superior Court

9
STATEMENT OF DECISION

16

SI 004912

# PROOF OF SERVICE

1

I, Yolanda S. Ramos, declare:

2

3    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is c/o Weston Benshoof Rochefort Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, California, 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

4

5

6    On October 24, 2005, I served the document(s) described as NOTICE OF ENTRY OF FINAL JUDGMENT IN FAVOR OF JAMES HARKESS on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows:

7

8                            SEE ATTACHED SERVICE LIST

9    ☒    BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Weston Benshoof Rochefort Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071.

10

11

12

13

14    ☐    BY FEDERAL EXPRESS    ☐ UPS NEXT DAY AIR    ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☐ FEDERAL EXPRESS ☐ UPS ☐ Overnight Delivery [specify name of service: ] with delivery fees fully provided for or delivered the envelope to a courier or driver of ☐ FEDERAL EXPRESS ☐ UPS ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Weston Benshoof Rochefort Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

15

16

17

18    ☐    BY FACSIMILE: I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

19

20    ☒    [State]    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

21

22    ☐    [Federal]    I declare under penalty of perjury that the foregoing is true and correct.

23

24    Executed on October 24, 2005, at Los Angeles, California.

25

26                                                YOLANDA S. RAMOS

27

28

SI 004913

1

*Harkess v. Quinn, et al.*
Los Angeles Superior Court, Case No. BC 311681

2

3

SERVICE LIST

4

5

| | |
|---|---|
| Mark M. Hathaway, Esq.<br>Slater Hathaway LLP<br>200 South Los Robles Avenue<br>Suite 530<br>Pasadena, California 91101-2432 | Attorneys for TERRENCE QUINN aka TERRANCE LEE QUATKEMEYER; JAMES H. SMITH, as Trustee of THE WINDSOR TRUST, u/d/t dated June 21, 2002; SANITEC WORLDWIDE<br>Telephone:    (626) 795-1600<br>Facsimile:    (626) 795-1616 |

6

7

8

9

10

**Courtesy Copy:**
Mark Hathaway, Esq.
801 South Figueroa Street, 11th Floor
Los Angeles, CA 90015

11

Telephone:    (213) 624-7200
Facsimile:    (213) 624-7220

12

13

Mark Overland, Esq.
Overland Borenstein Scheper & Kim LLP
300 South Grand Avenue
Suite 2750
Los Angeles, CA 90071-3144

Telephone:    (213) 613-4655
Facsimile:    (213) 613-4656

14

15

16

17

Mark Jay Richardson, Esq.
Laura Murtaugh, Esq.
Richardson & Associates
Attorneys at Law
233 Wilshire Boulevard, Suite 820
Santa Monica, CA 90401

Telephone:    (310) 393-9992
Facsimile:    (310) 393-2004

18

19

20

21

Joel Thvedt, Esq.
Knott & Glazier LLP
601 South Figueroa Street
Suite 1950
Los Angeles, CA 90017

Telephone:    (213) 312-9200
Facsimile:    (213) 312-9201

22

23

24

25

Joseph Delloiacovo
32 Dogwood Trail
Randolph, NJ 07869

Telephone:    (973) 989-2680
Facsimile:    (973) 989-2681

26

27

28